UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **BRETT TORNGREN**<br><br>    **Plaintiff**<br><br>**v.**<br><br>**TEXAS INSTRUMENTS INCORPORATED**<br> **and JOHN DOE**<br><br>    **Defendants** | **CIVIL ACTION NO.**<br>**1:16-cv-12345-DPW** |

**DEFENDANT TEXAS INSTRUMENTS INCORPORATED'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS AND FOR SUMMARY JUDGMENT</u>**

Dated: March 17, 2017

TEXAS INSTRUMENTS INCORPORATED
By its attorneys,

Mark O. Denehy | BBO No. 120380
Katharine S. Perry | BBO No. 634167
Brian R. Birke | BBO No. 652720
ADLER POLLOCK & SHEEHAN P.C.
175 Federal Street
Boston, MA 02110
T: 617 482 0600

**INTRODUCTION**

Defendant Texas Instruments Incorporated ("TI") submits this Memorandum of Law in support of its Motion to Dismiss and for Summary Judgment ("Motion") as to all counts contained in Plaintiff's Second Amended Complaint ("Complaint"): Count I (negligence and gross negligence), Count II (as to negligence relating to Plaintiff's employment period and alleged disposal of hazardous materials), Count III (negligence per se), Count IV (ultra-hazardous activity-strict liability), Count V (willful and wanton misconduct), Count VI (breach of fiduciary duty), Count VII (premises liability), and Count VIII ("injury resulting from injury not contemplated under Workers Compensation Act").

There are multiple bases to dismiss the subject counts or enter judgment against Plaintiff. The claims are barred by the Massachusetts Workers' Compensation Act, M.G.L. c. 152, § 1, *et seq.* (the "Act"). Such claims are predicated on personal injuries arising out of Plaintiff's employment with TI and covered under the Act and, therefore, cannot be asserted against TI. Moreover, Counts III (negligence per se), VI (breach of fiduciary duty), and Count VIII ("injury resulting from injury not contemplated under Workers Compensation Act") should be dismissed because they are not cognizable claims as pleaded. As a result, and pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, the Court should dismiss or enter summary judgment as to Counts I, II, III, IV, V, VI, VII, and VIII.

## PLAINTIFF'S ALLEGATIONS AND SUMMARY OF FACTS[1]

Plaintiff alleges that he is a former employee of Texas Instruments Incorporated.[2] Exhibit 1, Complaint at ¶¶ 2, 43. Specifically, Plaintiff alleges that he was employed by Texas Instruments Incorporated from August 1, 1984 to October 31, 1987, and that his job was located at the "Forest Street manufacturing facility ("Forest Street Facility") in Attleboro, Massachusetts." *Id.* Plaintiff claims that during his period of employment with TI, TI owned the Forest Street Facility. *Id.* at ¶¶ 136-141.

With regard to TI's operations, Plaintiff alleges that between 1952 and 1981 TI fabricated for the United States Government radioactive fuel elements using enriched uranium, and also used and supplied thorium foil strips, radium-containing equipment, and depleted and processed uranium at the Forest Street Facility. Exhibit 1, Complaint at ¶¶ 28-39. Plaintiff alleges that TI improperly deposited its radioactive waste inside and around various buildings located at its Forest Street Facility. *Id.* at ¶¶ 39-40, 65-66. And, as a direct result of his employment with TI, Plaintiff claims that he was exposed daily to radioactive, toxic, and hazardous substances. *Id.* at ¶¶ 46, 56, 63-64, 66-68, 82. Plaintiff further claims that, as a direct and proximate result of his employment with TI, he developed cancer and related harms associated with his workplace exposure to uranium and other toxic materials. *Id.* at ¶¶ 3-4; 28-74; 82-83, 151.

More specifically, Plaintiff alleges that TI caused his occupational cancer, because: (1) TI failed to maintain and keep safe the Forest Street Facility, *id.* at ¶¶ 26, 28-35, 40-42, 44, 48-49, 51, 58, 60, 66; (2) TI failed to inform Plaintiff of his exposure to radioactive materials, *id.* at ¶¶ 28-

---

[1] All exhibits referenced herein are to the exhibits attached to the Declaration of Brian R. Birke in Support of Texas Instruments Incorporated's Motion to Dismiss and for Summary Judgment, and which is incorporated herein by reference. The relevant undisputed material facts are set forth, for purposes of summary judgment only, in TI's LR. 56.1 Statement accompanying this Memorandum, and should be read in conjunction with this summary.

[2] Plaintiff identifies TI throughout his Complaint as "Defendant," which he collectively refers to as TI and all if its "companies acquired." Exhibit 1, Complaint at ¶ 16. TI adopts this convention for purposes of its Motion.

35, 40-42, 44, 49-50, 67, 72-74; (3) TI failed to warn Plaintiff of the dangers of exposure to radioactive materials and toxins, *id*. at ¶¶ 45, 61, 67-70; (4) TI failed to establish adequate radiation health safety methods and/or protocols, *id*. at ¶¶ 46, 52, 54, 59, 63; (5) TI failed to employ health safety personnel trained in radiation health physics to ensure the safety of Plaintiff, *id*. at ¶ 53; (6) TI failed to regularly monitor radiation and limit Plaintiff's exposure to same via appropriate protective gear, *id.* at ¶¶ 56-58; (7) TI employed policies and protocols that increased Plaintiff's exposure to radioactive materials, *id*. at ¶ 64; and (8) TI failed to properly dispose of radioactive materials at the Forest Street Facility, *id*. at ¶¶ 65-66.

Based on these allegations, Plaintiff asserts eight (8) counts that are subject to dismissal and/or adverse judgment - negligence and gross negligence (Count I), negligence relating to alleged disposal of hazardous materials (Count II), negligence per se (Count III), ultra-hazardous activity-strict liability (Count IV), willful and wanton misconduct (Count V), breach of fiduciary duty (Count VI), premises liability (Count VII), and "injury resulting from injury not contemplated under Workers Compensation Act" (Count VIII). *Id.* at ¶¶ 84-150. Plaintiff seeks monetary damages of $10,000,000 in compensatory damages and $50,000,000 in punitive damages. *Id.* at P. 40.

## STANDARD OF REVIEW

Rule 12(b)(6), applied under TI's Motion to Dismiss, requires Plaintiff to plead "enough facts to state a claim to relief that is plausible on its face," and requires dismissal when a plaintiff cannot. *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations that are "unembellished by any supporting facts" are insufficient, because "the plausibility standard demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim."

*Id.* at 81.  Moreover, if the Complaint proposes causes of action that are barred or precluded by law, they are subject to a motion to dismiss.  *See Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008); *Sarocco v. Gen. Elec. Co.*, 879 F. Supp. 156, 159-60 (D. Mass. 1995).

Insofar as TI moves for summary judgment, Rule 56 makes judgment appropriate "when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ponte v. Steelcase, Inc.*, 741 F.3d 310, 319 (1st Cir. 2014); Fed. R. Civ. P. 56(a).  This standard applies with equal force when the motion for summary judgment results from the conversion of a motion to dismiss.  *See Paredes v. Princess Cruises, Inc.*, 1 F. Supp. 2d 87, 89 (D. Mass. 1998).  If the party moving for summary judgment has demonstrated the absence of a genuine issue of material fact, the burden shifts, and "the nonmoving party … must come forward with specific, admissible facts showing that there is a genuine issue for trial." *Ins. Co. of the State of Pa. v. Great N. Ins. Co.*, 43 F. Supp. 3d 76, 78 (D. Mass. 2014).  In considering evaluating a motion for summary judgment, a court "need not credit" any "conclusory, self-serving testimony" by the nonmoving party or its representatives.  *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 20 (1st Cir. 1999).

**ARGUMENT**

It is well-settled law in Massachusetts that the issue of Workers' Compensation Act exclusivity and employer immunity turns on the nature of the personal injury alleged to have arisen out of and in the course of employment.  *See Estate of Moulton v. Puopolo*, 467 Mass. 478, 483 (2014); *Saab v. Massachusetts CVS Pharmacy, LLC*, 452 Mass. 564, 566 (2008); *Foley v. Polaroid Corp.*, 381 Mass. 545, 548 (1980).  Here, Plaintiff's claims pertain to his alleged development of occupational cancer and, therefore, are compensable only under the Act.  *See Sarocco*, 879 F. Supp. at 160-161.  Further, Counts III (negligence per se), VI (breach of fiduciary duty), and VIII

("injury resulting from injury not contemplated under Workers Compensation Act") as pleaded are not cognizable claims. As a result, Plaintiff's claims are barred and should be dismissed with prejudice or judgment entered against them pursuant to Federal Rules of Civil Procedure 12(b)(6) or 56.

**I.     Plaintiff's claims are excluded under the Workers' Compensation Act.**

The Massachusetts Workers' Compensation Act, M.G.L. c. 152, § 1, *et seq.*, provides employees broad protections in the form of guaranteed payment for any workplace personal injuries suffered. *Estate of Moulton*, 467 Mass. at 483. To effect this broad protection, all worker personal injuries fall within the Act's coverage only so long as they arise out of and in the course of employment. *Id.* at 483-484, *citing* M.G.L. c. 152, § 26; *Green v. Wyman–Gordon Co.*, 422 Mass. 551, 558 (1996), *quoting Foley*, 381 Mass. at 548-549. Consistent with its all-encompassing protections, "personal injury" is liberally defined solely by the nature of the employee's actual injury and irrespective of the employer's fault or intention. *Foley*, 381 Mass. at 553; *Sarocco,* 879 F. Supp. at 160, *citing Kelly's Case*, 17 Mass. App. Ct. 727, 729 (1984). Similarly construed, an injury "arises out" of employment if it is related to "the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects." *Doe v. Purity Supreme, Inc.*, 422 Mass. 563, 566 (1996).

In exchange for guaranteed payment for such broad-based injuries, employees waive their right to pursue any other remedies against their employer for compensation for the same personal injuries. *Id.*; *Saab*, 452 Mass. at 570; *Fleming v. Nat'l Union Fire Ins. Co.*, 445 Mass. 381, 383-84 (2005). The breadth and reach of the employee's waiver is such that it binds an injured employee's family and dependents, as well as the estate of a deceased employee; they, too, are precluded by the Act from pursuing claims against an employer. M.G.L. c. 152, § 24; *Estate of*

*Moulton*, 467 Mass. at 484; *Saab*, 452 Mass. at 568; *Russell v. Boston Wyman, Inc.*, 410 Mass. 1005, 1007 (1991); *Berger v. H.P. Hood, Inc.*, 416 Mass. 652 (1993).

As a result, the Act's exclusivity immunizes employers from suit predicated upon workplace injuries. *Saab*, 452 Mass. at 567.[3] This was the specific intent of the Legislature in promulgating the Act – to take "away from employees who should become subject to its provisions all other remedies that they had against their employers for injuries happening in the course of their employment and arising therefrom, and to substitute for such remedies the wider right of compensation given by the [A]ct." *Id.* at 567, *citing* L.Y. Nason, C.W. Koziol, & R.A. Wall, WORKERS' COMPENSATION § 26.1 (3d ed. 2003), *quoting King v. Viscoloid Co.*, 219 Mass. 420, 422 (1914); *Estate of Moulton*, 467 Mass. at 483-484.  Compensation under the Act, therefore, is the exclusive remedy for workers with covered personal injuries. *Estate of Moulton*, 467 Mass. at 482-83, *citing Foley*, 381 Mass. at 551–552.  This exclusivity is set forth at M.G.L. c. 152, § 24, which provides, in relevant part, as follows:

> An employee shall be held to have waived his right of action at common law … to recover damages for personal injuries … [and] the employee's spouse, children, parents and any other member of the employee's family or next of kin … shall also be held to have waived any right created by statute, at common law, or under the law of any other jurisdiction against such employer, including, but not limited to claims for damages due to emotional distress, loss of consortium, parental guidance, companionship or the like, when such loss is a result of any injury to the employee that is compensable under this chapter.

Purposefully expansive, the "Legislature has had opportunities to narrow its scope, and has not done so." *Berger*, 416 Mass. at 656.  Consequently, so long as a work-related injury is compensable, (*i.e.,* covered) under the Act, employers are immune from suit pursuant to Section

---

[3] An employee can opt-out or waive her or his right to receive compensation payments under the Act, but must notify the employer of same in writing at the time of hire. M.G.L. c. 152, § 24; *Foley*, 381 Mass. at 548–549.  Plaintiff can produce no signed writing that he did not waive his right to commence suit to recover for his injuries in lieu of the exclusivity of the Act.  TI LR. 56.1 Statement, ¶ 10.

24. *See, e.g., Saab*, 452 Mass. at 570. This is the case irrespective of whether compensation actually is available (*e.g.*, paid) under the Act. *Id*. at 570-71.[4]

### A.     The Act's exclusivity provision bars Plaintiff's claims.

Consistent with the focus on the nature of the "personal injury" under the Act, Massachusetts courts apply Section 24 to immunize employers regardless of wrongfulness or intent and to preclude the same claims that Plaintiff asserts here, including, among others, negligence, recklessness, gross negligence, willful and wanton misconduct, emotional harm, intentional conduct, and breach of fiduciary duty. *See Estate of Moulton*, 467 Mass. at 484; *Case of Kelly*, 17 Mass. App. Ct. 727, 729 (1984), *aff'd sub nom., Kelly's Case*, 394 Mass. 684 (1985); *In re Fitzgibbons' Case*, 374 Mass. 633, 637-38 (1978); *Sarocco*, 879 F. Supp. at 161. *See also* M.G.L. c. 152, § 28 (remedy for employee injuries resulting from serious and willful workplace misconduct is award of double damages under the Act). Plaintiff's counts are based on an alleged personal injury (cancer) purportedly arising out of the "incidences" and "conditions" associated with his employment with TI at TI's Forest Street Facility and at which radioactive and toxic materials were handled. Exhibit 1, Complaint at ¶¶ 84-151. Plaintiff extensively and repeatedly alleges that such cancer is a direct and proximate result of his workplace exposure to enriched uranium and other radioactive and toxic materials. *Id.* at ¶¶ 43-73, 82-83, 151.

Occupational cancer from exposure to toxic substances has consistently been held to be compensable under the Act, regardless of the legal theory of recovery or the alleged causative acts.

---

[4] The *Saab* court cited, among others, the following in establishing that a claim need only be compensable to trigger immunity under the Act: *Crews v. Memorex Corp.*, 588 F. Supp. 27, 30 (D. Mass. 1984); *Doe v. South Carolina State Hosp.*, 285 S.C. 183, 191-192, 328 S.E.2d 652 (1985) ("[T]he fact that no actual monetary award can be made pursuant to the [workers' compensation act] ... has no bearing whatever on the Act's exclusivity.... [T]he Act provides the exclusive remedy … whether or not the particular injury may be compensated by a monetary award under the Act"); L.Y. Nason, C.W. Koziol, & R.A. Wall, WORKERS' COMPENSATION § 26.1 (3d ed. 2003) ("The cases nationwide bar a tort action against the employer" where the act "clearly covers the injury and thereby bars a common law remedy, but the act provides no compensation for the particular harm suffered").

*See, e.g., King v. Williams Indus., Inc.*, 724 F.2d 240, 241-42 (1st Cir. 1984), *cert. denied*, 466 U.S. 980 (1984) (the Act bars dependents from bringing claims against employer for negligence, loss of consortium, and wrongful death based on decedent's cancer allegedly caused by workplace exposure to a chemicals); *Sarocco*, 879 F. Supp. at 161 (the plaintiffs' claim of breach of fiduciary duty against employer was barred by the Act because the nature of the harm underlying the claim was cancer caused by workplace); *Cullinan v. Monsanto Co.*, No. CIV.A. 85-0378-F, 1986 WL 8418 (D. Mass. July 29, 1986) (the Act barred the plaintiffs' claims against an employer for wrongful death, deceit, loss of consortium, conscious pain and suffering, negligence, and breach of warranty based on cancer allegedly caused by workplace exposure). Because Plaintiff's claimed injury is allegedly caused by his employment with TI, his claims are covered exclusively by the Act. As a result, the Act bars Counts I, II, III, IV, V, VI, VII, and VIII.[5]

To be sure, as to each of Plaintiff's claims based on his alleged occupational injuries, Massachusetts courts have held that they are precluded by the Act's exclusivity. For example, as to negligence and gross negligence (Counts I, II, and VII), Massachusetts courts have repeatedly held the Act to be the exclusive remedy.[6] *See Estate of Moulton*, 467 Mass. at 484 (negligence and gross negligence actions precluded by the Act's exclusivity); *Fredette v. Simpson*, 440 Mass. 263, 268 (2003) (negligence action governed exclusively by the Act); *Dean v. Raytheon Corp.*,

---

[5] TI's Workers' Compensation Act argument does not address the portion of Plaintiff's Count II that alleges TI was negligent for exposing Plaintiff to radioactive materials from the purportedly improper disposal of hazardous materials at the Forest Street Facility post-employment and at the Shpack Landfill. TI reserves all rights to move to dismiss, for judgment on the pleadings, or for summary judgment with respect to this portion of Count II.

[6] Count III fails as a matter of law for the reason that it is not a cognizable claim in Massachusetts. Under Massachusetts law, violations of a statute, regulation, or the like do not constitute negligence per se; rather they are only some evidence of negligence. *St. Germaine v. Pendergast*, 411 Mass. 615, 620 (1992); *Dean v. Leonard*, 323 Mass. 606, 608 (1949); *Rice v. James Hanrahan & Sons*, 20 Mass. App. Ct. 701, 708 (1985). It has long been the rule in Massachusetts that a violation of a statute or regulation does not by itself establish a breach of duty, for it cannot constitute negligence per se. *Ulwick v. DeChristopher*, 411 Mass. 401, 408 (1991). *See Roberts v. Southwick*, 415 Mass. 465, 477, 614 N.E.2d 659, 665 (1993) (O'Connor, J., concurring) ("This court has never held that safety statutes, ordinances, or regulations are admissible to prove causation. Negligence and causation are separate matters.").

399 F.Supp.2d 27, 33 (D. Mass. 2005) (gross negligence action barred because the Act's exclusivity). As to ultra-hazardous activity – strict liability (Count IV), the Act has been held to be the exclusive remedy. *See Niles-Robinson v. Brigham & Women's Hosp., Inc.*, No. CIV. A. 96-4260-D, 1997 WL 11735, at *1 (Mass. Super. Jan. 2, 1997), *aff'd*, 47 Mass. App. Ct. 203 (1999) (strict liability action barred pursuant to the Act's exclusivity). Similarly, as to willful and wanton misconduct (Count V), Massachusetts courts have held that the Act is the exclusive remedy. *See Estate of Moulton*, 467 Mass. at 484 (actions based on willful and wanton misconduct precluded by the Act's exclusivity); *Sarocco*, 879 F. Supp. at 161-62 (action based on serious, willful, or egregious misconduct barred by the Act's exclusivity). As to Plaintiff's breach of fiduciary duty claim (Count VI), Massachusetts courts likewise have held that the Act is the exclusive remedy.[7] *See Sarocco*, 879 F. Supp. at 161 (action for breach of fiduciary duty related to personal injury is barred by the Act's exclusivity).

As to Plaintiff's eighth count, titled "injury resulting from injury not contemplated under Workers Compensation Act," it does not set forth a recognized cause of action and complains of personal injuries solely compensable under the Act. Exhibit 1, Complaint at ¶¶ 145-150. It claims occupational cancer and associated harms as the personal injuries resulting from TI's alleged

---

[7] Count VI also fails because it is not a cognizable claim as pleaded. Plaintiff claims that TI owed him a fiduciary duty based solely on the conclusory allegation that Plaintiff was an invited guest of TI. *See* Exhibit 1, Complaint at ¶ 128. As a matter of law, this is insufficient to state a claim. *See A.G. ex rel. Maddox*, 732 F.3d at 80-81 (allegations that are "unembellished by any supporting facts" are insufficient because "the plausibility standard demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim."). More importantly, TI did not owe Plaintiff a fiduciary duty. A fiduciary duty exists "when one reposes faith, confidence, and trust in another's judgment and advice." *Van Brode Grp., Inc. v. Bowditch & Dewey*, 36 Mass. App. Ct. 509, 516 (1994) (citations omitted). Even then, a fiduciary duty does not arise unless the party to be charged had knowledge of being entrusted with another's faith, confidence, and trust. *Id.* (citations and quotations omitted). For these reasons, Massachusetts recognizes fiduciary relationships in only very limited circumstances. *See, e.g., Patsos v. First Albany Corp.*, 433 Mass. 323, 333–334 (2001) (stockbroker is fiduciary of customer when entrusted with discretion); *Merola v. Exergen Corp.*, 423 Mass. 461, 464 (1996) (stockholders in close corporation owe one another fiduciary duty); *Matter of Pressman*, 421 Mass. 514, 518 (1995) (attorneys owe fiduciary duty to clients). *Cf. Estate of Moulton*, 467 Mass. at 493 (employers owe no fiduciary duties to their employees). Plaintiff cannot (and does not) allege that a special relationship existed with TI (and that TI knew of same) that could give rise to a fiduciary duty.

"wanton and willful conduct of intentionally concealing" Plaintiff's exposure to radiation, thereby "exacerbating the health consequences." *Id.* at ¶¶ 145-149.  Those injuries, however, are either the same occupational cancer and associated harms for which Plaintiff seeks redress, or arise directly from those injuries, which, in either case, are covered under the Act. *Id.* at ¶¶ 149-150.

Faced with similar allegations of concealment and intentional conduct, the *Sarocco* court recognized that the employer's conduct, no matter how unsavory, cannot be a factor in determining whether an injury is compensable under the Act.  879 F. Supp. at 161.  As a result, the *Sarocco* court held that claims concerning an employer's alleged concealment (fraudulent or otherwise) of the existence, severity, or nature of cancer-causing harms are barred by the Act.  *Id*. at 163. Specifically, retired workers (and families of deceased employees) sued their employer, General Electric Co. ("GE"), on a theory that the Act did not cover GE's fraudulent concealment and misrepresentation of the severity and nature of their exposure to toxins, which "enhanced" their injury. *Id.* at 158, 162-163.  The court, however, ruled that, irrespective of GE's alleged conduct or the plaintiffs' legal theories, however pleaded, it was "inescapable" that the plaintiffs' claim was based on occupational cancer, which is "unquestionably a personal injury as defined by the Act." *Id.* at 161.  Accordingly, the *Sarocco* court ruled that, notwithstanding the plaintiffs' theory regarding their employer's intentional concealment that caused an "enhanced" injury, the Act provided their sole and exclusive remedy. *Id.* at 163.

Because Plaintiff's claims as set forth above are based on his alleged cancer and related harms arising out of his employment with TI, they are precluded by the Act's exclusivity.

**B.     TI's merger history does not affect its immunity under the Act.**

Plaintiff claims that TI's history of mergers and ownership of the Forest Street Facility exposes it to liability despite the Act's immunity.  Alleging successor liability and ostensibly

relying on the extremely limited and rarely used "dual persona" theory exception to immunity under the Act, Plaintiff argues as follows: TI and its predecessor entities (Metals & Controls Corporation, Metals & Controls Inc., and Texas Instruments Inc.) that employed Plaintiff were different that those that but owned the Forest Street Facility and, therefore, TI is subject to liability because it owed him distinctly different employer and landowner duties.  TI's broad immunity under the Act, however, remains intact notwithstanding its merger and property ownership history because, as discussed below, the dual persona theory is inapplicable.  Consequently, Plaintiff's attempt to avoid the Act's preclusive effect should be disregarded.

### 1. The dual persona theory has not been accepted in Massachusetts and has been applied only in limited circumstances.

Under the dual persona theory, an "employer *may* become a third person, vulnerable to tort suit by an employee [notwithstanding the Act's exclusivity], if – and only if – it possesses a second persona so completely independent from and unrelated to its status as employer that by established standards the law recognizes that persona as a separate legal person." *Braga v. Genlyte Grp., Inc.*, 420 F.3d 35, 39 (1st Cir. 2005), *quoting* 6 Arthur Larson & Lex K. Larson, LARSON'S WORKERS' COMPENSATION LAW § 113.01[1], at 113–2 (2005) ("LARSON").  If that second persona exists, liability outside of Act can be imposed "*only* if the 'nonemployer persona' owed the injured employee duties 'totally separate from and unrelated to' duties arising out of the employment relationship." *Braga*, 420 F.3d at 40 (emphasis added), *quoting* LARSON § 113.01[4], at 113–10 (2005).  *See Barrett v. Rodgers*, 408 Mass. 614, 619 (1990) ("a second function of a single entity results in a second persona only when that function generates obligations unrelated to the entity's status as employer.").

The dual persona theory has not been formally adopted in Massachusetts and, even if it had, would nonetheless not apply.  While the Supreme Judicial Court ("SJC") "'alluded favorably

11

to the [dual persona] theory' in *Gurry v. Cumberland Farms, Inc.*, 406 Mass. 615, 620-21 (1990), it has 'never explicitly adopted' it, much less established its scope or set parameters for it[s application]." *Braga*, 420 F.3d at 42, *citing Barrett*, 408 Mass. at 616. Consequently, "Massachusetts's courts have been extremely hesitant to apply the dual persona theory." *Hoy v. Nat'l Sch. Bus Serv., Inc.*, No. CIV.A. 04-2238-G, 19 Mass.L.Rptr. 429, 2005 WL 1473776, *4 (Cratsley, J.) (Mass. Super. June 15, 2005). The very limited application of the dual persona theory is because the exclusivity provision of the Act has been its cornerstone and is interpreted very broadly. *See Braga*, 420 F.3d at 42.[8] The fact that the "Legislature has had opportunities to narrow [the Act's] scope, and has not done so" lends support to restricting judicially created exceptions like the dual persona theory in favor of broad employer immunity. *Berger*, 416 Mass. at 656.

Indeed, the SJC recognized that the Legislature protected employers under the Act with broad tort immunity in exchange for guaranteed worker compensation, and only the Legislature should be permitted to reshape the Act's boundaries. *Saab*, 452 Mass. at 572, *citing, among others, Correia v. Firestone Tire & Rubber Co.*, 388 Mass. 342, 349 (1983) (ruling that workers' compensation laws are "economic regulations representing the Legislature's balance of competing societal interests and ... the courts have no place in reshaping public policy in the face of such comprehensive legislation"). Consonant with the Act's purpose and to limit the vagaries of the

---

[8] As the First Circuit found in *Braga:*

> The [SJC] has described the "very broad" exclusivity provision of the [Act] as its "cornerstone." *Berger v. H.P. Hood, Inc.,* 416 Mass. 652, 624 N.E.2d 947, 949 (1993). It has also cautioned courts against creating "[a]ny change in compensation law which would permit a covered employee to recover compensation benefits and, in addition, permit litigation by the employee against his employer to recover for an injury clearly covered by the Workmen's Compensation Act." *Longever v. Revere Copper & Brass Inc.,* 381 Mass. 221, 408 N.E.2d 857, 860 (1980).

*Braga*, 420 F.3d at 42 (finding that courts should "exercise considerable caution when considering the adoption of a new application" of state law that could "expand [its] present reach"), *quoting Doyle v. Hasbro, Inc.*, 103 F.3d 186, 192 (1st Cir. 1996) (alteration in original).

12

dual persona theory to the particular facts in *Gurry*, *infra,* the First Circuit noted that "[i]t is important that the dual persona doctrine 'not be used for the purpose of simply evading the exclusivity provision of the [Act].'" *Braga*, 420 F.3d at 42-43, *citing Kimzey v. Interpace Corp.*, 10 Kan. App. 2d 165, 694 P.2d 907, 912 (1985); *Gurry*, 406 Mass. at 621.

### 2. The limited scope and application of the dual persona theory precludes Plaintiff's claims.

When confronted with the dual persona theory, Massachusetts courts have applied it only when an employer (1) possesses a separate legal identity that (2) gives rise to duties to its employee that are completely distinct and unrelated from those that it owes as employer. In the absence of a duty distinct and unrelated to the employment relationship, immunity is preserved.

For example, the SJC held in *Barrett* that, to apply the dual persona theory, a non-employer persona must have an obligation that is "unrelated" to its employer persona. *Barrett*, 408 Mass. at 619. In *Barrett*, the SJC considered the circumstance of an employee who was bitten by her employer's dog at her place of employment; the dog was present solely for the convenience of the employer. *Id.* at 615. The Plaintiff advanced the dual persona theory based on the claim that her employer had two personas – one as employer and one as dog owner with a separate statutory duty (M.G.L. c. 140, §155, liability relating to dogs) to prevent any dog-related damage. *Id.* at 615 n.1, 616-617. The SJC declined to apply the dual persona theory because the obligations generated by the employer in his capacity as dog owner were related to his obligations as an employer – to provide a safe work environment and free from dog attacks. *Id.* at 619. Thus, the SJC established that, where an entity has a second persona with a duty that is *related* to that entity's duty as an employer, the dual persona cannot destroy the legislatively created immunity provided in the Act.

Following *Barrett*, then-Superior Court Judge Sosman in *Wade v. Hutchins*, No. 940039, 4 Mass.L.Rptr. 174, 1995 WL 809542 (Mass. Super. June 22, 1995), considered the dual persona

13

theory in the premises liability context and declined to extend it based on an employer's separate legal existence that owned the work premises. In *Wade,* the defendants as individuals owned the premises out of which they operated a legally distinct trust business, which they were the trustees of and for which the plaintiff worked. *Id.* at *1. While departing work for the trust, the plaintiff fell on the subject premises and injured herself. *Id.* The plaintiff then sued the defendants in their individual capacities as landowners, relying on the dual persona theory. *Id.* In evaluating the application of the dual persona theory, Judge Sosman found that, while the defendants' dual and separate status as employer and landowners were "legally distinguishable," their obligation to provide a safe work place as employer completely overlapped their obligation as landowners to maintain the premises in a reasonably safe condition. *Id.* at *2. Consequently, Judge Sosman held the dual personal theory inapplicable because the respective duties owed by the defendants as landowners and employers were so closely related. *Id.*

Distinct from the landowner, premises liability context, Massachusetts courts have applied the dual persona theory in limited situations involving the manufacture or sale of injurious equipment or otherwise active tortious conduct – and not the mere, passive ownership of property. For example, the court in *Gurry* permitted suit against an employer that was the successor of a corporation that designed and manufactured a sanding "buggy" that malfunctioned and killed the plaintiff-decedent employee. *Gurry*, 406 Mass. at 617, 621. Further, in *Roberts v. Delta Air Lines, Inc.*, this Court held that Delta Air Lines, Inc. ("Delta") could be held liable, notwithstanding its subsequent merger with Song Airways, LLC ("Song"), for an injury to a Song flight attendant caused by a Delta pilot's abrupt stop of a Song commercial flight. No. CIV.A. 07-CV12154DPW, 2008 WL 5156654, **4, 10-11 (D. Mass. Dec. 4, 2008), *aff'd*, 599 F.3d 73 (1st Cir. 2010).

Alluding to this passive/active distinction, the First Circuit in *Braga* ruled that the dual persona theory did not eliminate the Act's immunity for a successor entity employer based on its predecessor's "mere ownership" of defective equipment that subsequently injured an employee. 402 F.3d at 42.  The *Braga* court began its analysis with the premise that the SJC has cautioned courts against creating "[a]ny change in compensation law which would permit a covered employee to recover compensation benefits and, in addition, permit litigation by the employee against his employer to recover for an injury clearly covered by the Workmen's Compensation Act."  *Id., citing Longever*, 381 Mass. at 226.  The court then found that mergers in and of themselves cannot increase or create liability where none existed.  *Id.*  It also distinguished the passive acquisition and ownership of defective equipment by a predecessor entity from the active design and manufacture of defective equipment by a predecessor entity.  *Id.* at 44 and n.2, *citing, among others, Gurry*, 406 Mass. at 620-621.  The court consequently held that, notwithstanding a predecessor entity's "mere ownership" of defective equipment when it merged with an employer, the dual persona theory could not vitiate the employer's immunity from suit caused by the defective equipment.  *Id.* at 43.

Consistent with *Barrett, Wade*, and *Braga*, the Act immunizes TI as an employer even if TI's predecessors as landowners may have been legally distinct because any duties owed to TI's employees by such predecessors were passive, related to, or overlapped TI's duties as employer.

### 3. The dual persona theory does not affect TI's immunity under the Act.

Assuming arguendo the veracity of the merger and property ownership allegations in the Complaint and the viability of the dual persona theory in Massachusetts, against the backdrop of the limitations and constraints of the dual persona theory TI is still entitled to immunity under the Act.  The Complaint alleges only duties and obligations of TI (and its predecessors) – whether as

landowner or employer – that completely overlap and directly relate to one another. As a result, the dual persona theory is inapplicable. *See Barrett*, 408 Mass. 619; *Wade*, 1995 WL 809542 at *2. *See also Braga*, 402 F.3d at 43-44.

When alleging the duties that TI and its predecessors purportedly owed to Plaintiff to keep the Forest Street Facility safe and free from environmental hazards, Plaintiff does not and cannot distinguish among the TI entities or their capacities as employer or landowner.[9] For example, Plaintiff generally alleges that he was exposed to hazardous materials during his employment at the Forest Street Facility by TI and its predecessor entities, which also variously owned the Forest Street Facility. *See* Exhibit 1, Complaint at ¶¶ 2-16, 43, 50, 62, 149; TI LR. 56.1 Statement, ¶¶ 11-12.[10] Further, as both landowner and employer, Plaintiff alleges that TI and its predecessor entities "failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of … unsafe materials, failing to disclose same, and inform and protect all occupants." Exhibit 1, Complaint at ¶¶ 26, 28-35, 40-42, 44, 49, 58. *See id.* at ¶¶ 85-88 (Count I) (claimed duties to warn, prevent exposure, appropriately handle and store materials, and monitor exposure), ¶¶ 100-102 (Count II) (claimed duties to exercise care in disposing of materials at the Forest Street Facility and warn), ¶ 107 (Count III) (claimed duty to adhere to regulations), ¶ 112 (Count (IV) (claimed duty to prevent abnormally risky dangers or activities), ¶ 121 (Count V) (claimed duties to monitor, prevent exposure, and not dispose of materials), ¶¶ 128-131 (Count VI) (claimed fiduciary duties to protect, monitor, employ health

---

[9] Plaintiff alleges in conclusory fashion throughout the Complaint that Texas Instruments Incorporated and its subsidiary entities had a landlord/tenant relationship regarding the Forest Street Facility. There is no evidence, however, of a lessor/lessee relationship among Texas Instruments Incorporated and its subsidiaries.

[10] As both parties represented in the Joint Statement Pursuant to Local Rule 16.1 and the September 20, 2016 Bench Order of the Court (ECF No. 28): "Plaintiffs allege that they or their decedents were employees of TI for various lengths of time over a span of more than fifty (50) years. Plaintiffs further allege that they developed various cancers … as a result of exposure to toxic substances at multiple buildings and sites located on TI's manufacturing facility in Attleboro, Massachusetts and during the course of their employment by TI." TI LR. 56.1 Statement, ¶ 12.

safety personnel and safety procedures and protocols, warn, and disclose exposure), ¶¶ 137-141 (Count VII) (claimed duties to exercise reasonable care to safely maintain property, warn, and prevent exposure), ¶ 145 (Count VIII) (claimed duties to disclose and warn).

Based on Plaintiff's own allegations and claims, the same duties allegedly owed him by TI and its predecessor entities cannot give rise to TI having a second, or dual, persona. Rather, as set forth above, the duties allegedly owed to him by TI and its predecessor entities are identical whether imposed upon (1) TI individually, (2) TI's predecessor entities, (3) TI and its predecessor entities as mere landowner, or (4) TI and its predecessor entities as employer. These alleged duties of TI as landowner and employer, irrespective of any separate legal existence of predecessors, are not (and cannot be) in any way separate from and unrelated to one another; they completely overlap. The dual persona theory, therefore, is inapplicable. TI, therefore, is immune under the Act from Plaintiff's claims, as set forth above.

## CONCLUSION

For the foregoing reasons, TI respectfully requests that this Court grant TI's Motion and either dismiss with prejudice, or enter judgment in favor of TI on, Counts I, II, III, IV, V, VI, VII, and VIII, as set forth above.

                                    Respectfully submitted,

                                    TEXAS INSTRUMENTS INCORPORATED
                                    By its attorneys,

Dated: March 17, 2017         /s/ Brian R. Birke_____
                                    Mark O. Denehy | BBO No. 120380
                                     mdenehy@apslaw.com
                                    Katharine S. Perry | BBO No. 634167
                                     kperry@apslaw.com
                                    Brian R. Birke | BBO No. 652720
                                     bbirke@apslaw.com
                                    ADLER POLLOCK & SHEEHAN P.C.
                                    175 Federal Street
                                    Boston, MA 02110
                                    T: 617 482 0600

---

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via First-Class U.S. Mail to those indicated as non-registered participants, on March 17, 2017.

Dated:  March 17, 2017  /s/ Brian R. Birke
                                  Brian R. Birke