# EXHIBIT 1

# UNITED STATES FEDERAL COURT
## FOR
## THE DISTRICT OF MASSACHUSETTS

**Civil Complaint No**.

**Brett Torngren,**

**PLAINTIFF**

**VS.**

**Texas Instruments Incorporated**

and

**John Doe,**

**DEFENDANTS**

_____

## SECOND AMENDED COMPLAINT

_____

NOW COMES the Plaintiff, Brett Torngren and alleges as follows:

## PLAINTIFF

## BRETT TORNGREN

1. The Plaintiff, Brett Torngren, currently resides at 56 Sherman Avenue North Providence, RI 02911.

2. Brett Torngren was employed by Defendant Texas Instruments Incorporated from August 1, 1984 to October 31, 1987, and, as a direct and proximate result of the Defendant's conduct, was exposed to enriched uranium and other radioactive materials while occupying the property to attend his job at the

Forest Street manufacturing facility ("Forest Street Facility") in Attleboro, Massachusetts.

3. As a direct and proximate result of the Defendant's conduct, Brett Torngren developed testicular cancer and abdominal cancer which was diagnosed on December 1, 2012.

4. Brett Torngren suffered these injuries as a direct and proximate result of the Defendant's conduct.


**DEFENDANT**

5. The Defendant, Texas Instruments Incorporated, is a Delaware corporation with a principal place of business at 12500 TI Boulevard, Dallas, Texas 75243.

6. Texas Instruments Incorporated, a Delaware corporation was organized December 23, 1938.

7. Texas Instruments, Inc., was a Massachusetts corporation organized in January 1970.

8. General Plate was a company located in Attleboro, Massachusetts as early as the late 1920's.   General Plate Company was acquired by Spencer Thermostat Company.

9. Spencer Thermostat Company was located in Cambridge, Massachusetts as at least as early as the 1930's. Spencer Thermostat Company was acquired by Metals and Controls Corporation.

2

10.     Metals & Controls Corporation was a Massachusetts corporation organized on or before January 6, 1931.

11.     Metals and Controls Corporation was merged into Texas Instruments Incorporated on April 10, 1959.

12.     M & C Nuclear Inc. was a Massachusetts corporation organized on December 9, 1957.  A name change was made on December 30, 1960 to Metals & Controls Inc.  The corporate name was again changed to Texas Instruments Inc. on January 1, 1970.

13.     Texas Instruments Inc. merged into parent corporation Texas Instruments Incorporated on or about December 31, 1971, with Texas Instruments Inc. referencing its organization under the name of M & C Nuclear and a later name change to Metals and Controls Inc. on December 31, 1960 and then Texas Instruments Inc. on January 1, 1970.

14.     The Texas Instruments Inc. and Texas Instruments Incorporated Merger documents conflict with the Massachusetts Secretary of States records which indicate Metals and Controls Inc. was organized on June 25, 1959 and later involuntarily dissolved on December 31, 1990.

15.     Texas Instruments Inc., Metals & Controls Corporation, Metals & Controls Inc., M & C Nuclear, Inc., Spencer Thermostat Company and General Plate are all predecessors of the Texas Instruments Incorporated.

16.     Texas Instruments Incorporated received all assets and assumed all liabilities of the companies acquired and herein are referred to collectively as "Defendant".

17.     Defendant John Doe ("Doe") is unknown entities that acted in concert with Defendant Texas Instruments Incorporated to improperly handle and dispose of radioactive materials and other hazardous substances.


## JURISDICTION AND VENUE

18.     This Court has jurisdiction over the subject matter of this action over the Defendants pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) as the matter in controversy exceeds $75,000, exclusive of interest and costs, and because the Defendant is a foreign corporation based outside of the Commonwealth of Massachusetts.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1395, because a substantial part of the events that give rise to these claims have occurred in this district and the threatened or actual releases of radiation and hazardous substances occurred in this district.

20.     All the parties named herein have sufficient minimum contacts with the Commonwealth of Massachusetts to render them subject to its jurisdiction.


## GENERAL FACTUAL ALLEGATIONS FOR ALL COUNTS

21.     Metals and Controls Corporation acquired a large portion the Forest Street manufacturing facility (hereinafter referred to as the "Forest Street Facility"), consisting of over ten buildings on over two hundred and sixty acres in Attleboro, Massachusetts, on March 18, 1932.   Metals and Controls Corporation acquired additional portions of the Forest Street Facility on January 15, 1948, February 3, 1948, April 12, 1950 and June 30, 1950

22.     Metals & Controls Inc. acquired the Forest Street Facility on or about January 3, 1961 by deed recorded in the Taunton Registry of Deeds in Book 1376 at Page 300 from Texas Instruments Incorporated claiming title through Articles of Consolidation with Metals & Controls Corporation recorded in Book 1316 at Page 152.

23.     Texas Instruments Inc. claims to acquire the Forest Street Facility on January 1, 1970 as a result of its name change from Metals & Controls Inc. to Texas Instruments Inc.

24.     Texas Instruments Incorporated acquires the Forest Street Facility on December 31, 1971 through its merger with Texas Instruments Inc.

25.     Texas Instruments Incorporated re-acquires the Forest Street Facility on February 28, 1980 by deed recorded in the Taunton Registry of Deeds in Book 1995 at Page 170.

26.     Metals and Controls Corporation, Metals and Controls Inc., M & C Nuclear Inc., General Plate Company and Spencer Thermostat Company, Texas Instruments Incorporated and Texas Instruments Inc. were all separate and

5

distinct legal entities that at various times conducted their business operations out the Forest Street Facility. Although these entities were eventually merged with or acquired by Texas Instruments Incorporated, prior to the time of each merger, the Defendant was the property owner and landlord of the Plaintiff's employer. The Defendant as landowner and landlord failed to maintain the property and take reasonable steps to avoid injury to the Plaintiff.

27.  Metals and Controls Corporation, Metals & Controls Inc., Texas Instruments Inc. and Texas Instruments Incorporated were at various pertinent times hereto, the landowners of the Forest Street Facility and the landlord to the other corporate tenants of the Forest Street Facility during their respective terms of ownership.

28.  The Defendant was aware of the operations with radioactive materials that began at the Forest Street facility in 1952, when Metals & Controls Inc. began fabricating enriched uranium foils at its manufacturing facility on Forest Street in Attleboro, Massachusetts. Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

29.  The Defendant was aware that from 1952 through 1965, under a variety of government contracts, the Forest Street Facility was use to fabricate enriched

uranium fuel elements for the U.S. Naval Reactors Program, the U.S. Air Force, other U.S. Government funded research, as well as commercial customers. Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

30.   The Defendant was aware that from 1965 through 1981, fuel for the High Flux Isotope Reactor at Oak Ridge National Laboratory and other Government owned research reactors was also fabricated at the Forest Street facility. Depleted uranium and processed natural uranium was also present and used at the Forest Street Facility for research and development.  Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

31.   The Defendant was aware that Thorium foil strips were also present at the Forest Street facility for criticality experiments, source tests, and reactivity tests. The Thorium was vacuum-melted and cast into flat ingots and subsequently the ingots were rolled to the desired thickness at the Forest Street facility. Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to

disclose same, and inform and protect all occupants.

32.  The Defendant was aware of the various contracts with the United States, including the Atomic Energy Commission ("AEC") and its contractors were performed at the Forest Street Facility. Under these contracts, nuclear fuel core components were manufactured at the Forest Street facility in Attleboro, Massachusetts.  Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

33.  The Defendant was aware that radioactive materials were present at the Forest Street Facility under various commercial contracts as well as contracts with the United States until approximately 1981. Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

34.  The Defendant was aware that work under these contracts involved the use of radioactive materials such as Uranium-234 (U-234), Uranium-235 (U-235), and Uranium-238 (U-238). Depleted uranium and U-235 in varying levels of enrichment and thorium were also used and generated by the Defendant and its merged entities at the Forest Street Facility. Despite its knowledge, the Defendant failed to keep the property safe and take

reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

35. Defendant was aware of operations at the Forest Street Facility that also involved the manufacturing of items such as thermostats and circuit breakers that contained Radium-226 (R-226). Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

36. The Defendant was aware that the work related to radioactive materials was conducted in at least three buildings at the Forest Street Facility.

37. The Defendant was aware that operations took place which involved housing radioactive materials in the Forest Street Facility Building 4 and Building 3.

38. The Defendant, in 1956, constructed Building 10 to also house the manufacturing work involving radioactive materials. In 1957, the work involving radioactive materials was consolidated to that location.

39. The Defendant was aware that waste, processed scraps of metal and other residues, including those from the treatment with waste acids and water resulted in contamination of these areas both inside and outside the areas known as the Metals Recovery Area and the Stockade. The Defendant was aware that a waste evaporator and incinerator was operated in Building 5.

40. The Defendant was aware that scrap and waste was generated by the

manufacturing processes that took place on the property and that these waste materials were supposed to be returned to the U.S. Government. The Defendant was aware that waste materials were negligently buried on the Forest Street Facility and thereby contaminated property in a burial area adjacent to Building 11 with levels of radioactivity. Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

41.    The Defendant was aware that one or more tenants at the Forest Street Facility held U-234, U-235, and U-238 at the Forest Street Facility. Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

42.    The Defendant was aware that one or more tenants of the Forest Street Facility used R-226 in its manufacturing processes at the Forest Street Facility. Despite its knowledge, the Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

43.    The Plaintiff agreed to take his job in the Forest Street Facility to further his

career and family.

44.     The Plaintiff was never informed by the landowners of the presence of any

of these toxic and hazardous substances and in fact was deliberately and

intentionally not informed of the presence of these substances at the Forest

Street facility. The Defendant failed to keep the property safe and take

reasonable steps to protect all occupants and intentionally kept secret the

existence of these unsafe materials, failing to disclose same, and inform and

protect all occupants.

45.     The Defendant never warned the Plaintiff of the dangers of being exposed to

enriched uranium, thorium, and other radioactive materials on the Forest

Street Facility.

46.     The Plaintiff was exposed to toxic and hazardous substances due to careless

radiation health safety protection protocols and program.

47.     The Defendant was aware that one or more of the tenants were at times cited

for its negligent practices as they were in violation of the Atomic Energy

Commission and Nuclear Regulatory Commission regulations.

48.     The Defendant was negligent and breached its duty to keep the grounds of

the Forest Street facility safe for the Plaintiff to occupy as an employee of its

tenant.

49.     The Plaintiff had no reason to believe that there was any danger in going to

and from and entering onto the Forest Street facility and had no knowledge

of the enriched uranium and other radioactive materials stored there.  The

Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.

50.   The Plaintiff had no reason to believe that the property where his job was located, posed a potential threat to his health, as the Defendant never warned him of the health risks present on the property.

51.   The Defendant never took adequate steps to maintain the property in a safe condition and protect the Plaintiff from the dangers of being present around enriched uranium and other radioactive materials, and thus the Defendant was grossly negligent and breached its duty to the Plaintiffs.

52.   The Defendant, as landowner had a duty to ensure that all occupants employed radiation Health Safety methods and protocols that minimized radiation doses and the release of radioactive materials safeguarding the other tenants and occupants of the property.

53.   The Defendant failed to employ or require its tenant to employ Health Safety personnel adequately trained in radiation health physics to insure the safety of the Plaintiff, and thus it was grossly negligent and breached its duty to the Plaintiff.

54.   The Defendant failed to establish and enforce an adequate radiation health physics protocol in accordance with Atomic Energy Commission ("AEC"), Nuclear Regulatory Commission ("NRC"), and other applicable regulatory

body regulations, and thus the Defendant was grossly negligent and breached its duty to the Plaintiff as an occupant of the property.

55.   At the time of the Plaintiffs occupancy at the Forest Street Facility, basic radiation health safety policies and applicable regulations required that all those persons exposed to radiation be monitored with appropriate dosimeter techniques and use appropriate bioassays to ensure that the radiation dose exposure levels allowed for exposed individuals was limited.

56.   The Plaintiff was exposed daily to radioactive material and contamination and other toxic chemicals daily going and coming to the Forest Street Facility.  The Defendant did not regularly monitor the radiation exposure of occupants of the Forest Street Facility, its grounds, and thus the Plaintiff, all passersby, invited guests and other nearby landowners were exposed radioactive material and contamination and other toxic chemicals daily and thus the Defendant was grossly negligent and breached its duty to the Plaintiff.

57.   The Defendant was aware that basic radiation health safety policies and applicable regulations required those individuals exposed to radioactive material to wear protective clothing and use shielding to decrease the exposure of radiation and to reduce radioactive contamination.

58.   The Defendant was aware that protective clothing and shielding apparatus was not provided to occupants of the Forest Street Facility, passersby, or other invited guests in an effort reasonably and effectively decrease exposure

to radiation and to reduce radioactive contamination.  The Defendant failed to keep the property safe and take reasonable steps to protect all occupants and intentionally kept secret the existence of these unsafe materials, failing to disclose same, and inform and protect all occupants.  The Defendant failed to ensure such techniques were employed by all tenants to protect occupants of the Forest Street Facility, passersby, other invited guests or nearby landowners.

59.   The Defendant was aware that basic radiation health safety policies and applicable regulations required radiation workers to increase their distance to radioactive sources to decrease the exposure of radiation workers. The Defendant failed to ensure such techniques were employed by all tenants to protect occupants of the Forest Street Facility, passersby, other invited guests or nearby landowners.

60.   The Defendant failed to protect occupants of the Forest Street Facility, passersby, other invited guests or nearby landowners as it allowed the Plaintiff to come in direct contact with radioactive sources, increasing his exposure to radiation and increasing radioactive contamination, and thus they were grossly negligent and breached its duty to the Plaintiff.

61.   The Defendant was aware of the areas where radioactive material was located but failed to warn the Plaintiff or provide proper warnings or restrictions.

62.    Basic radiation health safety policies and applicable regulations required radiation workers to minimize the time of exposure to radioactive sources and to reduce the exposure of radiation workers.

63.    The Defendant never employed protocols that minimized the time of the Plaintiffs' exposure to radioactive sources to thereby reduce the Plaintiffs' exposure to radiation, and thus they were grossly negligent and breached its duty to the Plaintiff.

64.    The Defendant employed policies and protocols that were contrary to the health and safety of the Plaintiff who was being exposed to radioactive material, and, in fact increased his radiation doses, breaching its duty to maintain the property in a safe condition for the Plaintiff.

65.    The Defendant as landowner never made any attempts to stop the improper disposal of radioactive material on the grounds of the Forest Street Facility despite the property being occupancy by thousands of unknowing victims.

66.    The Defendant was aware that one or more of its tenants buried wastes from their manufacturing operations and improperly disposed of radioactive materials by burying them in an outdoor area next to Building 11 and at the Building 1 location. The Defendant failed to take any steps taken to remove the buried radioactive material. Because of the Defendant's failure to maintain the property in a safe condition, the Defendant was grossly negligent and breached its duty to the Plaintiff. The Plaintiff was exposed

daily to radioactive material and contamination and other toxic chemicals daily going and coming to the Forest Street Facility.

67. The Defendant was aware that all parts of the Forest Street Facility were exposed to unmonitored radioactive materials. The roadways in the Forest Street Facility were used by the occupants to not only enter and exit the property for purposes of reporting to work, but were often used daily to pass from the Forest Street area to the Pleasant Street area. The Defendant failed to post warning signs or notify the Plaintiff as to the danger and exposure to radiation which resulted from his daily use of these roadways.

68. The Defendant was aware that there was extensive radioactive contamination at the Forest Street Facility in addition to significant concentrations of PCB's volatile organic compounds and dangerous heavy metals. The Defendant failed to post warning signs or notify the Plaintiff as to the danger and exposure to radiation and significant concentrations of PCB's which resulted from his daily use of these roadways.

69. Despite being aware of the extensive radioactive contamination at the Forest Street Facility in addition to significant concentrations of PCB's volatile organic compounds and dangerous heavy metals, the Defendant failed to take steps to begin until 1981 when the nuclear operations ceased, and the site's government license to manufacture nuclear materials lapsed. The Defendant continued to fail to post warning signs or notify the Plaintiff as to the danger and exposure to radiation and significant concentrations of PCB's which

resulted from his daily use of the grounds and the roadways despite its knowledge of the dangers to the Plaintiff.

70.   The decontamination of the Forest Street Facility by the Defendant was not completed until at least 1997.   The Defendant continued to fail to post warning signs or notify the Plaintiff as to the danger and exposure to radiation and significant concentrations of PCB's which resulted from his daily use of the grounds and the roadways despite its knowledge of the dangers to the Plaintiff.

71.   Despite the Defendant's clean-up of the grounds of the Forest Street Facility, the Plaintiff, including, but not limited to those who handled and fabricated nuclear fuels and switches, disposed of scrap and performed laboratory testing, and others who simply frequented the grounds of the Forest Street facility, long after carried in his body the effect of his exposure to radioactive materials and other substances at the Forest Street Facility, grounds and roadways.

72.   The Defendant did not inform the Plaintiff of his exposure to enriched uranium and other radioactive materials at the time of his exposure or at any date reasonably soon thereafter, thereby exacerbating the health consequences and thus the Defendant was grossly negligent and breached its duty to the Plaintiff.

73.   The Defendant did not make adequate attempts to reach out to the Plaintiff to inform him of his exposure to enriched uranium and other radioactive

materials, thereby exacerbating the health consequences and thus the Defendant was grossly negligent and breached its duty to the Plaintiff.

74. The Defendant sold the Forest Street Facility and manufacturing complex in 2004 but has never made adequate attempts to contact the Plaintiff or his family members to disclose the Plaintiffs exposure to radioactive materials or other substances.

75. The Shpack Landfill (hereinafter "Landfill") located in the City of Attleboro and the Town of Norton is comprised of approximately eight acres of land. The landfill received residential and commercial water until approximately 1966.

76. The Defendant dumped radioactive waste, cancer causing chemicals, and other toxic substances from the Defendant's Forest Street Facility at the Shpack landfill on the Norton-Attleboro line as well as at various other sites throughout the City of Attleboro.

77. The Landfill is set in a rural area and surrounded by ponds and wetland areas approximately one and a half miles from the Texas Instruments Forest Street Facility.

78. The Landfill was entirely open without fences or warning signs of the dangers present. There were no fences or warning signs of warning of the toxic waste at the site.

79. The Nuclear Regulatory Commission and Oak Ridge National Laboratories began an investigation after a nearby resident discovered radioactive material

in the landfill. Extensive radioactive contamination, including but not limited to Uranium and Radon was found at the Shpack Landfill. In 1981, the Department of Energy removed over nine hundred pounds of material contaminated with radioactive waste and other toxic chemicals with significant concentrations of PCBs, vinyl chloride, arsenic and other volatile compounds and heavy metals.

80.   In 1990, the Environmental Protections Agency reached an agreement with the Defendant would was deemed one of the responsible parties for the remediation of the site.

81.   The Plaintiff lived a short distance from both the Shpack Landfill and the Forest Street Facility. The Plaintiff often walked and played in the Shpack Landfill as a child through his adulthood. As a child, the Plaintiff road motorcycles, swam in the ponds, ice skated and played hockey on the ponds in the winter, and gathered in the pit area adjacent to the Shpack Landfill. The Plaintiff picked and ate blueberries that grew in abundance in the area. The Plaintiff searched through the landfill and collected used treasures and antiques discarded by other residents. The Plaintiff was further exposed to the radioactive waste dumped at the former Shpack Landfill on his regular visits to the landfill to dispose of unwanted personal property, while at the same time collecting other old furniture and household items previously discarded to bring home. Open fires were often burning at the landfill and produced a thick smoke in the area.

82.     The Forest Street facility served as a short cut from Forest Street to Pleasant Street by the Plaintiff and many area residents.  The Plaintiff was exposed to radioactive waste and other toxic chemicals with significant concentrations of PCBs, vinyl chloride, arsenic and other volatile compounds and heavy metals while going to and from work as well as when using the Forest Street facility as a short cut from Forest Street to Pleasant Street.

83.     The Defendant invited the Plaintiff and his family to family outings held at the Forest Street facility.  During these outings, the Defendant did not display warning signs of the radiation exposure to the attendees of these events held at the Forest Street Facility and its grounds, and thus the Plaintiff, and all invited guests were exposed radioactive material and contamination and other toxic chemicals and thus the Defendant was grossly negligent and breached its duty to the Plaintiff.

I.      **FIRST CLAIM FOR RELIEF NEGLIGENCE/GROSS NEGLIGENCE**

84.     The preceding Paragraphs are alleged and incorporated herein by reference as though set forth here in their entirety.

85.     At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care for the Plaintiff by preventing his exposure to radioactive materials and other toxic and hazardous substances while occupying its property at the Forest Street Facility.

86.   At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care for the Plaintiff by appropriately warning them of the risks and hazards of their exposure to radioactive materials and other toxic and hazardous substances while occupying its property.

87.   At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care for the Plaintiff by appropriately handling and storing the radioactive materials and other toxic and hazardous substances at the Forest Street Facility.

88.   At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care for the Plaintiff by appropriately monitoring his exposure to radioactive materials and other toxic and hazardous substances occupying its property.

89.   The Defendant is grossly negligent and liable for failing to prevent the Plaintiffs' exposure to the radioactive materials and other toxic and hazardous substances at the Forest Street Facility.

90.   The Defendant is grossly negligent and liable for failing to warn the Plaintiff of the risks and hazards of their exposure to the radioactive materials and other toxic and hazardous substances at the Forest Street Facility.

91.   The Defendant is grossly negligent and liable for its careless and improper handling and storing radioactive materials and other toxic and hazardous substances at the Forest Street Facility.

92.   The Defendant is grossly negligent and liable for its careless and improper handling and storing radioactive materials and other toxic and hazardous substances at the Forest Street Facility.

93.    The Defendant is grossly negligent and liable for its careless and improper monitoring of the Plaintiff's exposure to radioactive materials and other toxic and hazardous substances while occupying its property.

94.   The Defendant is grossly negligent and liable for improperly disposing of radioactive materials and other toxic and hazardous substances, including but not limited to, burying said substances on the grounds of the Forest Street Facility and elsewhere in the City of Attleboro.

95.   The Defendant is grossly negligent and liable for failing to take reasonable and prompt action to contain and clean up the radioactive materials and other toxic and hazardous substances buried on the grounds of the Forest Street Facility.

96.   Defendant knowingly continued to manufacture, handle and dispose of radioactive materials, in an improper manner, and in willful, wanton, and reckless disregard for the safety and health of the Plaintiff while occupying the Forest Street Facility, as well as while using the grounds and roadways for his personal use.

97.   The Defendant's pattern of conduct occurred over a lengthy period, evidencing a deliberate and intentional pattern and practice of failing to use reasonable care to protect all occupants of the Forest Street facility as well

as passersby using the grounds, was with willful, wanton, and reckless disregard for the safety and health of the Plaintiff.

98.    As a direct and proximate cause of the Defendant's foregoing acts and omissions, the Plaintiff was unknowingly exposed to radioactive materials and other toxic and hazardous substances resulting in the Plaintiffs' development of devastating and debilitating cancer.

## II.    SECOND CLAIM FOR RELIEF NEGLIGENCE

99.    The preceding Paragraphs are alleged and incorporated herein by reference as though set forth here in their entirety.

100.    At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care when disposing of toxic materials, radioactive materials and other hazardous substances to prevent the residents in the Attleboro/Norton area from being exposed to these dangerous substances.

101.    At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care while disposing of materials at the Forest Street Facility and the Shpack Landfill, to post appropriate warning signs and segregate areas by fence or otherwise to contain the hazardous waste and make it inaccessible by the public.

102. At all relevant times, it was the duty of the Defendant to warn nearby residents of the dangers and hazards posed by the radioactive and toxic chemicals disposed of at the Forest Street Facility and the Shpack Landfill.

103. The Defendant is liable for improperly transporting the radioactive and toxic chemicals to the Forest Street Facility and the Shpack Landfill in violation of Atomic Energy Commission regulations and Nuclear Regulatory Commission regulations.

104. The Defendant is liable for failing to warn the residents who frequented the landfill or lived nearby, for failing to provide the necessary safeguards and security at the Forest Street Facility and the Shpack Landfill.

105. As a direct and proximate result of the Defendant's negligent acts and omissions, the Plaintiff was exposed to hazardous substances, including radioactive material, vinyl Chloride, and dangerous heavy metals because of which he developed devastating and debilitating cancer.

### III.   THIRD CLAIM FOR RELIEF NEGLIGENCE PER

106. The preceding Paragraphs are alleged and incorporated herein by reference as though set forth here in their entirety.

107. At all relevant times, it was the duty of the Defendant to exercise a reasonable degree of care for the Plaintiff by ensuring all its tenants followed the rules and regulations of the AEC, the NRC, and other regulatory bodies with

respect to radioactive materials and other toxic and hazardous substances being stored at its Forest Street Facility.

108.   During the 1950s, 1960s, 1970s, and 1980s, the Office of the AEC, the NRC, and other regulatory bodies found dissatisfaction with the criticality control, production control, and health physics administration employed by the Defendant and its tenants and cited the Defendant and its tenants for, including but not limited to, failing to comply with relevant radiation protection standards and nuclear reactor safety, public health and safety standards, and environmental protection.

109.   The Defendant's failure to abide by and ensure all tenants abide by the aforesaid rules and regulations is negligence per se.

110.    As a direct and proximate cause of the Defendant's foregoing acts and omissions, the Plaintiff was not properly informed or monitored, and thus, was exposed to radioactive materials and other toxic and hazardous substances, resulting in the Plaintiff's development of devastating and debilitating cancer.

## IV.         FOURTH CLAIM FOR RELIEF ULTRA-HAZARDOUS ACTIVITY-STRICT LIABILITY

111.   The preceding Paragraphs are alleged and incorporated herein by reference as though set forth here in their entirety.

112.   The Defendant act of allowing the manufacture, handling, and disposal of radioactive materials and other toxic and hazardous substances on its property located at the Forest Street facility constituted an ultra-hazardous activity.

113.   Because of the Defendant's act of allowing the manufacture, handling, and disposal of radioactive materials and other toxic and hazardous substances on its property located at the Forest Street facility, the Plaintiff was exposed to radioactive materials and other toxic and hazardous substances while occupying, passing by and otherwise frequenting the roadways and grounds located at the Forest Street Facility.

114.   Defendant is strictly liable for any harm caused by the abnormally dangerous activity described above pursuant to the doctrine of strict liability set forth in the *Restatement (Second) of Torts*.

115.   The manufacture, handling, and disposal of radioactive materials and other toxic and hazardous substances is an unreasonably dangerous activity, because exposure to these substances more likely than not caused the development of radiogenic cancers in humans.

116.   As a direct and proximate result of the Defendant's highly dangerous activity, as set forth above, the Plaintiff was not properly warned, monitored, or protected and thus, was exposed to radioactive materials and other toxic and hazardous substances.

117.   As a direct and proximate result of the Defendant's highly dangerous activity, as set forth above, the Plaintiff has developed devastating and debilitating cancer.

## V.        FIFTH   CLAIM   FOR   RELIEF   WILLFUL   AND WANTON MISCONDUCT

118.   The preceding Paragraphs are alleged and incorporated herein by reference as though set forth here in their entirety.

119.   At all times, relevant, the Defendant knew that the occupants of the facility were being exposed to radioactive materials and other toxic and hazardous substances.

120.   At all times, relevant, the Defendant was aware of the associated dangers and risks to the Plaintiff and the occupants and was aware exposure to radioactive materials and other toxic and hazardous substances was inadequately monitored.

121.   Despite knowledge of the associated dangers and risks to the Plaintiff and the occupants of the Forest Street facility from the inadequately monitored exposure to radioactive materials and other toxic and hazardous substances, the Defendants continued to allow tenants to manufacture, handle, and dispose of radioactive materials in an improper manner, and in willful, wanton, and reckless disregard for the safety and health of the Plaintiff and the occupants of the Forest Street facility.

122.   Despite knowledge of the associated dangers and risks to the Plaintiff and the occupants from the inadequately monitored exposure to radioactive materials and other toxic and hazardous substances, Defendant failed to warn the Plaintiff of the risks and hazards of his exposure to the radioactive materials and other toxic and hazardous substances at the Forest Street Facility.

123.   As a direct and proximate result of the willful, wanton and reckless acts and/or omissions of the Defendant, the Plaintiff was not properly warned, monitored or protected and thus was exposed to radioactive materials and other toxic and hazardous substances.

124.   As a direct and proximate result of the willful, wanton, and reckless acts and/or omissions of the Defendant, the Plaintiff has developed devastating and debilitating cancers.

125.   Punitive damages are warranted where, as here, the Defendant's conduct was reckless and without due regard for the health, safety, and well-being of the Plaintiff and the Forest Street facility occupants.

126.   Punitive damages are warranted where, as here, the Defendant's conduct is such that damages to punish and to deter in the future are indicated and appropriate.

## VI.   SIXTH CLAIM FOR RELIEF BREACH OF FIDUCIARY DUTY

127.   The preceding Paragraphs are alleged and incorporated herein by reference as though set forth here in their entirety.

128.   At all times, relevant, the Defendant owed a fiduciary duty of care to the Plaintiff as an invited guest of its tenants to protect him from unreasonable dangers and risks, keep him safe from injury on the Defendant's property, as well as inform him of any potential dangers while on the Defendant property.

129.   At all times, relevant, the Defendant possessed the knowledge and expertise to protect the Plaintiff from the unreasonable dangers and risks associated with their unmonitored and unknowing exposure to radioactive materials and other toxic and hazardous substances.

130.   At all times, relevant, the Defendant failed to maintain the property to a reasonable safety standard by ensuring all tenants employed properly trained radiation health safety officers or to employ the necessary procedures or protocols to protect the Plaintiff from the associated dangers and risks associated with his unmonitored and unknowing exposure to radioactive materials and other toxic and hazardous substances.

131.   At all times, relevant, the Defendant kept the Plaintiff's exposure to radioactive materials and other toxic and hazardous substances a secret from the Plaintiff, thereby exacerbating his injury and breaching its fiduciary duty to the Plaintiff.

132.   At all times, relevant, the Defendant failed to ensure its tenants complied with standards, rules, and regulations issued by the Atomic Energy

Commission (AEC), the Nuclear Regulatory Commission (NRC), and other agencies, thereby breaching its fiduciary duty to the Plaintiff.

133. As a direct and proximate result of the Defendant's breach its fiduciary duty to the Plaintiff, the Plaintiff was not properly informed, monitored, or protected and thus, he was exposed to radioactive materials and other toxic and hazardous substances.

134. As a direct and proximate result of the Defendant's breach of its fiduciary duty to the Plaintiff, the Plaintiff has developed devastating and debilitating cancers.

## VII.       SEVENTH CLAIM FOR RELIEF PREMISE LIABILITY

135. The preceding paragraphs are incorporated herein by reference as though set forth here in their entirety.

136. Metals and Controls Corporation, Metals & Controls Inc., Texas Instruments Inc. and Texas Instruments Incorporated were at various pertinent times hereto, the landowners of the Forest Street Facility and the landlord to the other corporate tenants of the Forest Street Facility during their respective terms of ownership.

137. Metals and Controls Corporation acquired a large portion the Forest Street manufacturing facility (hereinafter referred to as the "Forest Street Facility"), consisting of over ten buildings on over two hundred and sixty acres in Attleboro, Massachusetts, on March 18, 1932.    Metals and Controls

Corporation acquired additional portions of the Forest Street Facility on January 15, 1948, February 3, 1948, April 12, 1950 and June 30, 1950. From March 18, 1932 to April 10, 1959, Metals and Controls Corporation owned the Forest Street facility. During this time, it was the duty of Metals and Controls Corporation to exercise reasonable care maintain the property in a safe condition with respect to individuals lawfully on the premises. During this time, Metals and Controls Corporation had a duty to warn individuals lawfully on the premises of unreasonable dangers present on the land of which Metals and Controls Corporation was aware. Metals and Controls Corporation was negligent and liable for its failure to exercise reasonable care with respect to the Plaintiff by allowing his continued exposure to radioactive materials as well as to other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Metals and Controls Corporation was negligent and liable for its failure to warn the Plaintiff of the risks and hazards associated with his exposure to radioactive materials as well as other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Metals and Controls Corporation was negligent and liable for its failure to take reasonable and prompt action to contain and clean up the radioactive materials as well as other toxic and hazardous substances present at the Forest Street Facility.

138.  Texas Instruments Incorporated claimed title of the Forest Street Facility through Articles of Consolidation with Metals & Controls Corporation on or

about April 10, 1959. From April 10, 1959 to January 3, 1961, Texas Instruments Incorporated owned the Forest Street facility. During this time, it was the duty of Texas Instruments Incorporated to exercise reasonable care maintain the property in a safe condition with respect to individuals lawfully on the premises. During this time, Texas Instruments Incorporated had a duty to warn individuals lawfully on the premises of unreasonable dangers present on the land of which Texas Instruments Incorporated was aware. Texas Instruments Incorporated was negligent and liable for its failure to exercise reasonable care with respect to the Plaintiff by allowing his continued exposure to radioactive materials as well as to other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Texas Instruments Incorporated was negligent and liable for its failure to warn the Plaintiff of the risks and hazards associated with his exposure to radioactive materials as well as other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Texas Instruments Incorporated was negligent and liable for its failure to take reasonable and prompt action to contain and clean up the radioactive materials as well as other toxic and hazardous substances present at the Forest Street Facility.

139. Metals & Controls Inc. acquired the Forest Street Facility on or about January 3, 1961 by deed recorded in the Taunton Registry of Deeds in Book 1376 at Page 300 from Texas Instruments Incorporated and owned the Forest Street

Facility until January 1, 1970.  From January 3, 1961 to January 1, 1970, Metals & Controls Inc. owned the Forest Street facility. During this time, it was the duty of Metals & Controls Inc. to exercise reasonable care maintain the property in a safe condition with respect to individuals lawfully on the premises. During this time, Metals & Controls Inc. had a duty to warn individuals lawfully on the premises of unreasonable dangers present on the land of which Metals & Controls Inc. was aware. Metals & Controls Inc. was negligent and liable for its failure to exercise reasonable care with respect to the Plaintiff by allowing his continued exposure to radioactive materials as well as to other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Metals & Controls Inc. was negligent and liable for its failure to warn the Plaintiff of the risks and hazards associated with his exposure to radioactive materials as well as other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Metals & Controls Inc. was negligent and liable for its failure to take reasonable and prompt action to contain and clean up the radioactive materials as well as other toxic and hazardous substances present at the Forest Street Facility.

140.    Texas Instruments Inc. claims to acquire the Forest Street Facility on January 1, 1970 because of its name change from Metals & Controls Inc. to Texas Instruments Inc. and owned the Forest Street property until December 31, 1971. During this time, it was the duty of Texas Instruments Inc. to exercise

reasonable care maintain the property in a safe condition with respect to individuals lawfully on the premises. During this time, Texas Instruments Inc. had a duty to warn individuals lawfully on the premises of unreasonable dangers present on the land of which Texas Instruments Inc. was aware. Texas Instruments Inc. was negligent and liable for its failure to exercise reasonable care with respect to the Plaintiff by allowing his continued exposure to radioactive materials as well as to other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Texas Instruments Inc. was negligent and liable for its failure to warn the Plaintiff of the risks and hazards associated with his exposure to radioactive materials as well as other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Texas Instruments Inc. was negligent and liable for its failure to take reasonable and prompt action to contain and clean up the radioactive materials as well as other toxic and hazardous substances present at the Forest Street Facility.

141. Texas Instruments Incorporated acquired the Forest Street Facility on December 31, 1971 through its merger with Texas Instruments Inc. and owned the Forest Street property until December 29, 2004. During this time, it was the duty of Texas Instruments Incorporated to exercise reasonable care maintain the property in a safe condition with respect to individuals lawfully on the premises. During this time, Texas Instruments Incorporated had a duty to warn individuals lawfully on the premises of unreasonable dangers present

on the land of which Texas Instruments Incorporated was aware. Texas Instruments Incorporated was negligent and liable for its failure to exercise reasonable care with respect to the Plaintiff by allowing their continued exposure to radioactive materials as well as to other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Texas Instruments Incorporated was negligent and liable for its failure to warn the Plaintiff of the risks and hazards associated with his exposure to radioactive materials as well as other toxic and hazardous substances while the Plaintiff was lawfully present at the Forest Street Facility. Texas Instruments Incorporated was negligent and liable for its failure to take reasonable and prompt action to contain and clean up the radioactive materials as well as other toxic and hazardous substances present at the Forest Street Facility.

142.   As a direct and proximate result of the Defendant's negligence, the Plaintiff developed devastating, debilitating, and fatal cancers.

143.   When Defendant, Texas Instruments Incorporated, merged with Metals and Controls Corporation, Metals and Controls Inc., M & C Nuclear, Inc., General Plate Company, Spencer Thermostat Company and Texas Instruments, Inc., it assumed all their liabilities and obligations in accordance with Mass. Gen. Laws c. 156B, § 80.

## VIII.  EIGHTH CLAIM FOR INJURY RESULTING FROM INJURY NOT CONTEMPLATED UNDER WORKERS COMPENSATION ACT

144. The preceding paragraphs are incorporated herein by reference as though set forth here in their entirety.

145. The Defendant, despite clear knowledge of the Plaintiff's exposure to radiation, intentionally concealed that exposure and made no attempt to warn the Plaintiff. These acts by the Defendant were both intentional and unjustified.

146. The Defendant did not inform the Plaintiff of his exposure to enriched uranium and other radioactive materials and toxic chemicals at the time of his exposure or at any date reasonably soon thereafter, thereby exacerbating the health consequences and thus the Plaintiff was restrained by the Defendant from obtaining lifesaving medical treatment.

147. The Defendant did not make adequate attempts to reach out to the Plaintiff to inform him of his exposure to enriched uranium and other radioactive materials, thereby exacerbating the health consequences and thus the Plaintiff was restrained by the Defendant from obtaining lifesaving medical treatment.

148. The Defendant sold the Forest Street Facility and manufacturing complex in 2006 but has never made adequate attempts to contact the Plaintiff or his family members to disclose the Plaintiffs exposure to radioactive materials or other substances.

149.   As a direct result of the Defendant's wanton and willful conduct of intentionally concealing the Plaintiff's exposure to radiation and its harmful and fatal effects, and the mounting number of former employees of the Defendant diagnosed with cancer, the Plaintiff was effectively retrained from seeking lifesaving medical treatment.   This type of injury by an employer is not one contemplated under the Workers Compensation Act and is an interference with the Plaintiff's freedom and right to appropriate medical care.

150.   As a direct result of this restraint, the Plaintiffs did not receive the necessary medical treatment in a timely manner that would have helped prevent, mitigate, or cure the myriad diseases and cancers to which the Plaintiff has been subjected.

## IX.                    DAMAGES

### All Claims for Relief

151.   As a result of his exposure to radioactive contaminants and other toxic and carcinogenic substances, his being prevented from seeking medical assistance, and as a consequence of have contracted cancer, the Plaintiff suffered devastating injuries and losses, including, but not limited to

a.   Development of cancer;

b.   Medical treatment and costs associated therewith;

c.   Future medical treatment and costs associated therewith;

37

d.     Diminished life expectancy;

e.     Lost opportunity for earlier diagnosis and treatment of his injuries had the Plaintiff had knowledge of their exposure to radioactive contaminants and other toxic and carcinogenic substances and dangers associated therewith;

f.     Lost opportunity for cure of their injuries had the Plaintiff had knowledge of his exposure to radioactive contaminants and other toxic and carcinogenic substances and dangers associated therewith;

g.     Loss of availability of treatment modalities had the Plaintiff had knowledge of his exposure to radioactive contaminants and other toxic and carcinogenic substances and dangers associated therewith;

h.     Past pain and suffering;

i.     Future pain and suffering;

j.     Past mental anguish;

k.     Future mental anguish;

l.     Past lost earnings;

m.     Future loss of earnings and earning capacity;

n.     Disfigurement;

o.     Humiliation;

p.     Embarrassment;

q.     Out-of-pocket costs;

r.     Loss of life's pleasures;

s.      Loss of companionship; and

t.      Loss of consortium.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays this Court

1.    Award Plaintiff the sum of Ten Million Dollars ($10,000,000) as
compensatory damages and Fifty Million Dollars ($50,000,000) as punitive
damages, as well as attorney's fees and costs; and

2.    That the Plaintiff be granted such other relief as the Court deems just and
proper.

**DEMAND IS HEREBY MADE FOR A JURY TRIAL ON ALL ISSUES.**

Respectfully submitted,
/s/ Fiore Porreca
Fiore Porreca, Esquire
BBO #651019
Email: pilawpc@gmail.com

PI Law PC
184 North Main Street
Attleboro, MA 02703
(401) 300-9189
Facsimile: (401) 764-0138

Dated:  November 20, 2016

Certificate of Service

I, Fiore Porreca, hereby certify that this Complaint filed through the CM/ECF system will
be served electronically to the registered participants as identified on the Notice of
Electronic Filing and paper copies will be served via First-Class U.S. Mail to those
indicated as non-registered participants  on November 21, 2016.

/s/ Fiore Porreca

Dated: November 21, 2016

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  | CIVIL ACTION NOS. |
|---|---|
| JAMES W. CAUGER | 1:16-cv-10358-DPW |
|  | 1:16-cv-12338-DPW |
| Plaintiff | 1:16-cv-12339-DPW |
|  | 1:16-cv-12341-DPW |
| v. | 1:16-cv-12342-DPW |
|  | 1:16-cv-12343-DPW |
| TEXAS INSTRUMENTS INCORPORATED | 1:16-cv-12345-DPW |
| and JOHN DOE | 1:16-cv-12352-DPW |
|  | 1:16-cv-12353-DPW |
| Defendants | 1:16-cv-12354-DPW |
|  | 1:16-cv-12355-DPW |
|  | 1:16-cv-12356-DPW |
|  | 1:16-cv-12357-DPW |
|  | 1:16-cv-12358-DPW |
|  | 1:16-cv-12359-DPW |
|  | 1:16-cv-12360-DPW |
|  | 1:16-cv-12361-DPW |
|  | 1:16-cv-12362-DPW |
|  | 1:16-cv-12363-DPW |
|  | 1:16-cv-12364-DPW |
|  | 1:16-cv-12365-DPW |
|  | 1:16-cv-12366-DPW |
|  | 1:16-cv-12367-DPW |
|  | 1:16-cv-12368-DPW |
|  | 1:16-cv-12369-DPW |
|  | 1:16-cv-12373-DPW |

## TEXAS INSTRUMENTS INCORPORATED'S
## RESPONSE TO PLAINTIFFS' LIMITED DISCOVERY REQUEST

In accordance with the Federal Rules of Civil Procedure 26, 33, and 34, and Local Rules 33.1 and 34.1, and pursuant to the Order of the Court dated December 23, 2016 (ECF No. 36) and the bench orders of the Court issued at the December 23, 2016 Status and Scheduling Conference, Defendant Texas Instruments Incorporated ("TI"), hereby responds and objects to the Plaintiffs' Limited Discovery Request consisting of five (5) interrogatories and seven (7) requests for production of documents ("Requests").[1]  TI submits this response subject to the

---

[1] TI does not consent to the consolidation of any of the 26 individual actions set forth in the caption above, and reserves all rights regarding same. TI's response is captioned as such because Plaintiffs' Requests are captioned without identifying a Plaintiff or civil action number.

Preliminary Statement and General Objections contained herein without waiving, and expressly
preserving, such statements and objections.

## Preliminary Statement

1.   On January 31, 2017, and in accordance with the limited discovery ordered by the Court
     at the December 23, 2016 Status and Scheduling Conference, TI produced employment
     records of workers identified in the operative complaints filed in the Related Actions.
     Those records are bates-numbered as follows: BALSER-0000001-BALSER-0000031;
     BOZEK-0000001-BOZEK-0000026;CAUGER-0000001-CAUGER-0000004;DIIORIO-
     0000001-DIIORIO-0000017;DIRENZO-0000001-DIRENZO-0000034;DRATWINSKI-
     0000001-DRATWINSKI-0000024;ELLERY-0000001-ELLERY-0000017;GABOURY-
     0000001-GABOURY-0000004;GARNEAU-0000001-GARNEAU-0000020;
     GILMORE-0000001-GILMORE-0000018;GORMAN-0000001-GORMAN-0000020;
     GRENIER-0000001-GRENIER-0000032;GUIMOND-0000001-GUIMOND-0000014;
     LATIMER-0000001-LATIMER-0000029;LEARY-0000001-LEARY-0000021;
     MCCRETTON-0000001-MCCRETTON-0000004;MOITOZA-0000001-MOITOZA-
     0000004;NEVEU-0000001-NEVEU-0000004;PHILLIPS-0000001-PHILLIPS-0000004;
     SCHULZE-0000001-SCHULZE-0000031;SHELDON-0000001-SHELDON-0000019;
     SULLIVAN-0000001-SULLIVAN-0000004;THORNHILL-0000001-THORNHILL-
     0000022l;TORNGRENB-0000001-TORNGRENB-0000040;TORNGRENF-0000001-
     TORNGRENF-0000019; TURGEON-0000001-TURGEON-0000004.

## General Objections

1.   TI objects to the Requests to the extent that they exceed the scope of the Order of the
     Court dated December 23, 2016 (ECF No. 36) and the bench orders of the Court issued at
     the December 23, 2016 Status and Scheduling Conference limiting discovery to the
     employment status of the workers identified in the operative complaints filed in the
     Related Actions and certain, specifically-identified corporate documentation.

2.   TI objects to the Requests to the extent that they seek information and/or identification or
     production of documents falling within the purview of the attorney-client privilege, the
     work product doctrine, and/or any other applicable privilege, doctrine, or protection,
     including, but not limited to, attorney and/or any other of its representatives' mental
     impressions, conclusions, opinions, computations, calculations, projections, reasons, legal
     theories, other work product, or the like.

3.   TI may produce information that consists of documents that contain proprietary business
     information or other confidential or sensitive United States government information only
     with an appropriate protective order approved by the Court. TI objects to the Requests to
     the extent that they seek documents or information in the aforementioned categories that
     belong to a third party and are protected by confidentiality, non-disclosure, or other
     agreement or law.

4.    TI objects to the definition of "Defendant" because it is overly broad and would cause the Requests to exceed the scope and conflict with the Federal Rules of Civil Procedure, as it includes "all" entities of "any kind" that "operated" within Massachusetts and that have been merged or consolidated with or a predecessor of TI "at any time since its inception."

## Specific Responses

TI incorporates by reference its General Objections set forth above to the extent applicable herein.

### Interrogatories

1.    Identify every entity, whose operations were at any time located within the Commonwealth of Massachusetts, that has become a part of Texas Instruments Incorporation [sic] since its inception because of purchase, consolidated, merged or otherwise and provide the dates of said purchase, consolidation or merger.

### Answer No. 1:

TI objects to the interrogatory on the grounds that it is vague, ambiguous, and overbroad with respect its use of the terms "every entity," "operations," "any time," "that has become a part of Texas Instruments Incorporation [sic] since its inception because of ... or otherwise," and, therefore, seeks voluminous information in that it calls upon TI to hypothesize and speculate with respect to specifically what information Plaintiffs seek as to the nature and scope of TI's business and corporate history.   Consequently, this interrogatory is overbroad in time, geographical reach, and the scope of the TI businesses at which this interrogatory is ostensibly directed, as opposed to Plaintiffs' allegations, which are limited to Attleboro and Norton, Massachusetts and TI's facilities and business located in Attleboro during the period of 1952 through 2002.

TI also objects to this interrogatory because it seeks voluminous information not relevant or reasonably calculated to lead to the discovery of admissible evidence and is disproportional to the needs of the limited discovery in the present procedural posture of this litigation and pursuant to the Order of the Court dated December 23, 2016 (ECF No. 36) and the bench orders of the Court issued at the December 23, 2016 Status and Scheduling Conference, as well as because information and documents identifying TI's corporate history are publicly and equally available to Plaintiffs by way of land records, U.S. Securities and Exchange Commission filings, and filings with the offices of the Secretary of the Commonwealth of Massachusetts and the Delaware Secretary of State, Division of Corporations.

Subject to and without waiving its specific and General Objections, and based on information and belief after review of publicly available information produced in response to Plaintiffs' Request for Production, TI answers as follows:

Metals & Controls Corporation was incorporated on or about January 6, 1931, as the merged entity of General Plate Company and Spencer Thermostat Company.  Thereafter, General Plate

and Spencer Thermostat continued to operate as subsidiaries of Metals & Controls Corporation, with General Plate and Spencer Thermostat becoming divisions of Metals & Controls Corporation in 1936 and 1949, respectively. On or about December 9, 1957, M & C Nuclear, Inc. was organized as a wholly-owned subsidiary of Metals & Controls Corporation. On or about April 17, 1959, Metals & Controls Corporation merged and/or consolidated with Texas Instruments Incorporated. Thereafter, on or about June 25, 1959, Metals & Controls Corporation was organized. On or about December 30, 1960, M & C Nuclear, Inc., changed its name to Metals & Controls Inc. On or about May 1, 1961, Metals & Controls Corporation changed its name to Texas Instruments Inc., a subsidiary of Texas Instruments Incorporated. On or about January 1, 1970, Metals & Controls Inc. changed its name to Texas Instruments Inc. and Texas Instruments Inc. changed its name to Metals & Controls Inc. On or about December 31, 1971, Texas Instruments Inc. merged into Texas Instruments Incorporated.

TI's investigation into this action and the issues involved herein remains ongoing and, therefore, TI reserves the right to amend, revise, clarify, supplement, or alter its answer. TI also reserves its right to rely, at the time of trial, upon documents, responses, and evidence, in addition to those provided or referred to in response to the Requests, regardless of whether, *inter alia*, such documents, responses, and evidence are newly discovered or are currently in existence. Finally, and pursuant to Federal Rule of Civil Procedure 33(d) and Local Rule 33.1(b), the answer to the interrogatory may be ascertained through U.S. Securities and Exchange Commission filings, and filings with the offices of the Secretary of the Commonwealth of Massachusetts and the Delaware Secretary of State, Division of Corporations, which will be produced by TI in response to Plaintiffs' Request for Production.

2.      Identify all real property located within the Commonwealth of Massachusetts in which the Defendant since its inception had a beneficial interest in by deed, trust or otherwise and state its legal form of beneficial or ownership interest in said property.

### Answer No. 2:

TI objects to the interrogatory on the grounds that it is vague, ambiguous, and overbroad with respect its use of the terms "since its inception had a beneficial interest … or otherwise" and "its legal form of beneficial or ownership interest" and, therefore, calls upon TI to hypothesize and speculate with respect to specifically what information Plaintiffs seek as to the interest of any of TI's businesses in any and all real property located anywhere within Massachusetts. Moreover, this interrogatory is unlimited in time and overbroad in geographical reach and the nature of the real property at which this interrogatory is ostensibly directed, as opposed to Plaintiffs' allegations, which are limited to Attleboro and Norton, Massachusetts and TI's facilities and business located in Attleboro during the period of 1952 through 2002.

TI also objects to this interrogatory because it seeks voluminous information not relevant or reasonably calculated to lead to the discovery of admissible evidence and is disproportional to the needs of the limited discovery in the present procedural posture of this litigation and pursuant to the Order of the Court dated December 23, 2016 (ECF No. 36) and the bench orders of the Court issued at the December 23, 2016 Status and Scheduling Conference, as well as because information and documents identifying TI's ownership interest in real property located in

Massachusetts is publicly and equally available to Plaintiffs by way of Massachusetts land records.

Subject to and without waiving its specific and General Objections, TI answers that it has had an ownership interest by and through its predecessor or merged entities in the following real property in Attleboro, Massachusetts:

(1)  The parcels identified in the deed at the Bristol County (Northern District) Registry of Deeds, Book 812, Page 115 and further identified in the deeds located at Book 862, Page 489; Book 866, Page 93; Book 894, Page 319; Book 913, Page 5; Book 937, Page 149; Book 1376, Page 300; Book 1762, Page 96; Book 1995, Page 166; Book 1995, Page 170; Book 9187, Page 145; Book 14732, Page 48; and Book 15610, Page 197, and located generally near Forest Street, the Taunton Branch Rail Line, Perry Avenue, and Horton Street;

(2)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 868, Page 257 and Book 1439, Page 169, and located on Falmouth Street;

(3)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1174, Page 83 and Book 1433, Page 256, and located on Falmouth Street;

(4)  The parcels identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1174, Page 84 and Book 1433, Page 256, and located generally along Falmouth Street;

(5)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 894, Page 15 and Book 895, Page 460, and located generally near Perry Avenue and Horton Street;

(6)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 940, Page 33; Book 1995, Page 166; Book 1995, Page 170; and Book 14732, Page 48, and located generally near Pleasant Street;

(7)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 940, Page 34; Book 1009, Page 484; Book 1995, Page 166; Book 1995, Page 170; and Book 14732, Page 48, and located generally near Horton Street;

(8)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 949, Page 414; Book 1995, Page 166; Book 1995, Page 170; and Book 14732, Page 48, and located generally near Field Road;

(9)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1013, Page 62; Book 1995, Page 166; Book 1995, Page 170; and Book 14732, Page 48, and located generally near Pleasant Street;

(10) The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 894, Page 15 and Book 1097, Page 487, and located generally near Perry Avenue and Horton Street;

(11) The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1127, Page 54 and Book 1375, Page 504, and located near Pleasant Street;

(12)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1164, Page 143 and Book 1375, Page 504, and located near Pleasant Street;

(13)  The parcels identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1190, Page 289; Book 1995, Page 166; Book 1995, Page 170; Book 8354, Page 29; Book 14732, Pages 25, 48, 66, and located near Pleasant Street;

(14)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1238, Page 101; Book 1995, Page 166; Book 1995, Page 170; and Book 14732, Pages 25, 48, and located near Field Road and the Taunton Branch Rail Line;

(15)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1244, Page 374; Book 1995, Page 166; Book 1995, Page 170; and Book 14732, Page 48, and located near Perry Avenue;

(16)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1264, Page 398 and Book 1303, Page 262, and located near Eldridge Street;

(17)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1462, Page 45; Book 1995, Page 166; Book 1995, Page 170; and Book 14732, Pages 25, 48, 66, and located near Pleasant Street;

(18)  The parcels identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Books 1462, Page 596; Book 1995, Page 166; Book 1995, Page 170; Book 8354, Page 29; and Book 14732, Pages 25, 48, 66, and located near Pleasant Street;

(19)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1469, Page 830; Book 1995, Page 166; Book 1995, Page 170; and Book 8354, Page 29, and located near Pleasant Street;

(20)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1471, Page 740; Book 1995, Page 166; Book 1995, Page 170; and Book 8354, Page 29, and located near Pleasant Street;

(21)  The parcels identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1472, Page 384; Book 1995, Page 166; Book 1995, Page 170; and Book 14732, Page 48, and located near Perry Avenue;

(22)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1472, Page 394; Book 1995, Page 166; Book 1995, Page 170; and Book 14732, Page 48, and located near Pleasant Street;

(23)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1476, Page 269; Book 1995, Page 166; Book 1995, Page 170; and Book 14732, Pages 25, 48, and located near the Taunton Branch Rail Line;

(24)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1476, Page 639; Book 1995, Page 166; Book 1995, Page 170; and Book 14732, Page 66, and located near the Taunton Branch Rail Line;

(25)  The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1493, Page 230; Book 1995, Page 166; Book 1995, Page

170; and Book 14732, Page 66, and located between Pleasant Street and the Taunton Branch Rail Line;

(26) The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1499, Page 524; Book 1995, Page 166; Book 1995, Page 170; and Book 14732, Pages 25, 48, 66, and located near Pleasant Street;

(27) The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1536, Page 884; and Book 1536, Page 885, and located near Pleasant Street;

(28) The parcels identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1536, Page 890; Book 1995, Page 166; Book 1995, Page 170; Book 14732, Page 66; and Book 15577, Page 69, and located between Pleasant Street and the Taunton Branch Rail Line;

(29) The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1552, Page 655; Book 1995, Page 166; Book 1995, Page 170; and Book 14732, Page 66, and located between Pleasant Street and the Taunton Branch Rail Line;

(30) The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1555, Pages 8, 9, 11; Book 1995, Page 166; Page 1995, Page 170; and Book 14732, Page 25, and located near the Taunton Branch Rail Line;

(31) The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1563, Page 102; Book 1995, Page 166; Book 1995, Page 170; and Book 14732, Page 48; and located near Horton Street and Forest Street.

(32) The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 1762, Page 96; Book 1995, Page 166; Book 1995, Page 170; and Book 14732, Page 48, and located near Horton Street;

(33) The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 2603, Page 173 and Book 14732, Page 48, and located near Horton Street;

(34) The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 2847, Page 100 and Book 14732, Page 48, and located near Gustin Avenue;

(35) The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 3739, Page 231 and Book 14732, Page 48, and located near Perry Avenue and Pleasant Street;

(36) The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 7881, Page 340 and Book 14732, Page 66, and located near Pleasant Street;

(37) The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 13775, Pages 252, 255 and Book 14732, Pages 25, 48, and located near the Taunton Branch Rail Line; and

(38) The parcel identified in the deeds at the Bristol County (Northern District) Registry of Deeds, Book 15072, Pages 294, 296, 298 and Book 16029, Pages 289, 291, located near the Taunton Branch Rail Line.

Pursuant to Federal Rule of Civil Procedure 33(d) and Local Rule 33.1(b), the answer to the interrogatory may be ascertained through the TI-related land records, which will be produced by TI in response to Plaintiffs' Request for Production.

3.      Provide the dates of each event of criticality or sub-criticality which involved the Defendant in the Commonwealth of Massachusetts, as well as a description of the event and all action taken by the Defendant as a result of the event.

### Answer No. 3:

TI objects to this interrogatory at this time because it is disproportional to the needs of the limited discovery in the present procedural posture of this litigation and seeks information beyond the scope of the Order of the Court dated December 23, 2016 (ECF No. 36) and the bench orders of the Court issued at the December 23, 2016 Status and Scheduling Conference.

TI also objects to the interrogatory on the grounds that it seeks voluminous information not relevant or reasonably calculated to lead to the discovery of admissible evidence and is vague, ambiguous, and overbroad with respect to its use of the terms "each event of criticality or sub-criticality" and, therefore, calls upon TI to hypothesize and speculate as to such terms in order to provide a description of "each event of criticality or sub-criticality."    Moreover, this interrogatory is unlimited in time and overbroad in geographic reach and the scope of the TI businesses at which this interrogatory is ostensibly directed, as opposed to Plaintiffs' allegations, which are limited to Attleboro and Norton, Massachusetts and TI's facilities and business located in Attleboro during the period of 1952 through 2002.

4.      Identify all entities and their address with whom the Defendant was contracted to manufacture any product that involved radioactive materials or toxic substances from 1945 to present, but limited to when said production or manufacture took place in Massachusetts.

### Answer No. 4:

TI objects to this interrogatory at this time because it is disproportional to the needs of the limited discovery in the present procedural posture of this litigation and seeks information beyond the scope of the Order of the Court dated December 23, 2016 (ECF No. 36) and the bench orders of the Court issued at the December 23, 2016 Status and Scheduling Conference.

TI also objects to the interrogatory on the grounds that it seeks voluminous information not relevant or reasonably calculated to lead to the discovery of admissible evidence and is vague, ambiguous, and overbroad with respect to its use of the terms "all entities" "any product" "radioactive materials or toxic substances" and, therefore, calls upon TI to hypothesize and speculate as to such terms. Moreover, this interrogatory is overbroad in time, geography, and the scope of the TI businesses at which this interrogatory is ostensibly directed, as opposed to Plaintiffs' allegations, which are limited to Attleboro and Norton, Massachusetts and TI's facilities and business located in Attleboro during the period of 1952 through 2002.

5.    Identify all steps and precautions taken by the Defendant to warn any guest, invitees, employees, trespassers or abutting property owners, of the existence of radioactive materials, toxic materials or nuclear waste on the Defendant's property or at any location within fifteen miles of Attleboro, Massachusetts, including how and when these warnings were made.

## Answer No. 5:

TI objects to this interrogatory at this time because it is disproportional to the needs of the limited discovery in the present procedural posture of this litigation and seeks information beyond the scope of the Order of the Court dated December 23, 2016 (ECF No. 36) and the bench orders of the Court issued at the December 23, 2016 Status and Scheduling Conference.

TI also objects to the interrogatory on the grounds that it seeks voluminous information not relevant or reasonably calculated to lead to the discovery of admissible evidence and is vague, ambiguous, and overbroad with respect to its use of the terms "radioactive materials, toxic materials or nuclear waste" and "any location within fifteen miles of Attleboro, Massachusetts" and, therefore, calls upon TI to hypothesize and speculate as to such terms.  Moreover, this interrogatory is overbroad in time, geography, and the scope of the TI businesses at which this interrogatory is ostensibly directed, as opposed to Plaintiffs' allegations, which are limited to Attleboro and Norton, Massachusetts and TI's facilities and business located in Attleboro during the period of 1952 through 2002.

## Requests for Production

1.    All documents, including but not limited to certificates of incorporation, articles of organization, organizational minutes and bylaws, shareholder agreements, minutes of corporate meetings, articles of merger, merger agreements, article of consolidation, consolidation agreements, operating agreements, records of dissolution, corporate votes, annual or other periodic reports, correspondence issuing employer identification for tax identification number, for the Defendant and each of its divisions and subsidiaries, and any of its prior entities.

## Response No. 1:

TI objects to the request on the grounds that it seeks voluminous documents and information not relevant or reasonably calculated to lead to the discovery of admissible evidence (e.g., "minutes," "bylaws," "corporate votes," and "reports") and is vague, ambiguous, and overbroad with respect to its use of the terms "all documents," "other periodic reports," and "any of its prior entities," and, therefore, calls upon TI to hypothesize and speculate with respect to specifically what information Plaintiffs seek by way of "all documents … for the Defendant and each of its divisions and subsidiaries, and any of its prior entities."  Consequently, this request imposes obligations on TI that exceed the requirements of Rules 26 and 34 of the Federal Rules of Civil Procedure.

9

Moreover, this request is overbroad in time, geographical reach, and the scope of the TI businesses at which this request is ostensibly directed, as opposed to Plaintiffs' allegations, which are limited to Attleboro and Norton, Massachusetts and TI's facilities and business located in Attleboro during the period of 1952 through 2002. TI also objects to this request because it is disproportional to the needs of the limited discovery in the present procedural posture of this litigation and pursuant to the Order of the Court dated December 23, 2016 (ECF No. 36) and the bench orders of the Court issued at the December 23, 2016 Status and Scheduling Conference. Finally, TI also objects to this request because information and documents identifying TI's corporate history are publicly and equally available to Plaintiffs by way of U.S. Securities and Exchange Commission filings, and filings with the offices of the Secretary of the Commonwealth of Massachusetts and the Delaware Secretary of State, Division of Corporations.

Subject to and without waiving its specific and General Objections, TI will produce responsive U.S. Securities and Exchange Commission filings, and filings with the offices of the Secretary of the Commonwealth of Massachusetts and the Delaware Secretary of State, Division of Corporations.

2. All documents, including but not limited to warranty deeds, quitclaim deeds, or other trust documents, evidencing an interest in real property held by the Defendants, each of its divisions and subsidiaries, and any of its prior entities in the Commonwealth of Massachusetts since their inception.

### Response No. 2:

TI objects to the request on the grounds that it is vague, ambiguous, and overbroad with respect to its use of the terms "all documents ... evidencing an interest in real property ... by the Defendants ... divisions and subsidiaries, ... and any prior entities ... since their inception," and calls upon TI to hypothesize and speculate with respect to specifically what Plaintiffs mean by "Defendants" and the information Plaintiffs seek as to the interest of any of TI's businesses in any and all real property located anywhere within Massachusetts.

Moreover, this request is unlimited in time and overbroad in geographical reach and the nature of the real property and TI's businesses at which this request is ostensibly directed, as opposed to Plaintiffs' allegations, which are limited to Attleboro and Norton, Massachusetts and TI's facilities and business located in Attleboro during the period of 1952 through 2002. TI also objects to this request because it seeks documents and information not relevant or reasonably calculated to lead to the discovery of admissible evidence and is disproportional to the needs of the limited discovery in the present procedural posture of this litigation and pursuant to the Order of the Court dated December 23, 2016 (ECF No. 36) and the bench orders of the Court issued at the December 23, 2016 Status and Scheduling Conference. Finally, TI also objects to this request because information and documents identifying TI's ownership interest in real property located in Massachusetts is publicly and equally available to Plaintiffs by way of Massachusetts land records.

Subject to and without waiving its specific and General Objections, TI will produce responsive TI-related land records.

3.  All documents that evidence any warning given by the Defendant to any guest, invitees, employees, trespassers or abutting property owners, of the existence of radioactive materials, toxic materials or nuclear waste on the Defendant's property or at any location within fifteen miles of Attleboro, Massachusetts.

### Response No. 3:

TI objects to this request at this time because it seeks voluminous documents not relevant or reasonably calculated to lead to the discovery of admissible evidence and is disproportional to the needs of the limited discovery in the present procedural posture of this litigation and seeks information beyond the scope of the Order of the Court dated December 23, 2016 (ECF No. 36) and the bench orders of the Court issued at the December 23, 2016 Status and Scheduling Conference.

TI also objects to the request on the grounds that it is vague, ambiguous, and overbroad with respect to its use of the terms "radioactive materials, toxic materials or nuclear waste" and "any location within fifteen miles of Attleboro, Massachusetts." Moreover, this request is overbroad in time, geography, and the scope of the TI businesses at which this request is ostensibly directed, as opposed to Plaintiffs' allegations, which are limited to Attleboro and Norton, Massachusetts and TI's facilities and business located in Attleboro during the period of 1952 through 2002.

4.  All correspondence, reports, inspection reports, testing, records or notes from or to the Defendant and Atomic Energy Commission, Nuclear Regulatory Commission, Environmental Protection Agency, Department of Energy, Occupational Safety and Health Administration, and Department of Transportation, City of Attleboro Building Department, City of Attleboro Health Department, involving its operations within the Commonwealth of Massachusetts, including but not limited to (1) those citing any violations or alleged violations of any rules or regulations or (2) concerning the transport, handling, holding or storage of materials.

### Response No. 4:

TI objects to this request at this time because it seeks voluminous documents not relevant or reasonably calculated to lead to the discovery of admissible evidence and is disproportional to the needs of the limited discovery in the present procedural posture of this litigation and seeks information beyond the scope of the Order of the Court dated December 23, 2016 (ECF No. 36) and the bench orders of the Court issued at the December 23, 2016 Status and Scheduling Conference.

TI also objects to the request on the grounds that it is vague, ambiguous, and overbroad with respect to its use of the terms "[a]ll correspondence" "testing" "records" and "operations within the Commonwealth of Massachusetts." Moreover, this request is overbroad in time, geography, and the scope of the TI businesses at which this request is ostensibly directed, as opposed to Plaintiffs' allegations, which are limited to Attleboro and Norton, Massachusetts and TI's facilities and business located in Attleboro during the period of 1952 through 2002.

5.    All contracts with the Defendant and any entity or agency to manufacture any product in any location in the Commonwealth of Massachusetts that involved radioactive materials or toxic substances from 1945 to present.

### Response No. 5:

TI objects to this request at this time because it seeks voluminous documents not relevant or reasonably calculated to lead to the discovery of admissible evidence and is disproportional to the needs of the limited discovery in the present procedural posture of this litigation and seeks information beyond the scope of the Order of the Court dated December 23, 2016 (ECF No. 36) and the bench orders of the Court issued at the December 23, 2016 Status and Scheduling Conference.

TI also objects to the request on the grounds that it is vague, ambiguous, and overbroad with respect to its use of the term "radioactive materials or toxic substances." Moreover, this request is overbroad in time, geography, and the scope of the TI businesses at which this request is ostensibly directed, as opposed to Plaintiffs' allegations, which are limited to Attleboro and Norton, Massachusetts and TI's facilities and business located in Attleboro during the period of 1952 through 2002.

6.    All contracts, agreements and orders from any agency regarding the cleanup of any toxic or radioactive substances as well as all documents relating to the Defendant's compliance with or violation of said rules, regulations or inspections by any agency from 1945 to present at any location within the Commonwealth of Massachusetts.

### Response No. 6:

TI objects to this request at this time because it seeks voluminous documents not relevant or reasonably calculated to lead to the discovery of admissible evidence and is disproportional to the needs of the limited discovery in the present procedural posture of this litigation and seeks information beyond the scope of the Order of the Court dated December 23, 2016 (ECF No. 36) and the bench orders of the Court issued at the December 23, 2016 Status and Scheduling Conference.

TI also objects to the request on the grounds that it is vague, ambiguous, and overbroad with respect to its use of the term "toxic or radioactive substances" and "said rules, regulations or inspections." Moreover, this request is overbroad in time, geography, and the scope of the TI businesses at which this request is ostensibly directed, as opposed to Plaintiffs' allegations,

which are limited to Attleboro and Norton, Massachusetts and TI's facilities and business located in Attleboro during the period of 1952 through 2002.

7.    All records contained in each of the Plaintiff's Human Resources file, Departmental Records file, and Environmental, Safety and Health Department file, including but not limited to:

   employment applications; employment contracts; payroll records; achievements; awards; records of training and education; medical information, exams, reports and records, including but not limited to blood tests, X-rays, physicals and other medical records; health care plans, claims, benefits and costs; reports of injuries, illnesses or incidents; radiological monitoring data, including but not limited to records related to exposure to toxic substances and pathogens; personal dosimetry film badge data; urinalysis data; whole body dose measurements; material safety data sheets (MSDA) for all substances during the term of each Plaintiff's employment, safety records or any kind; workers compensation record; grievance and investigation records; letters, correspondence, and emails with the Plaintiff or concerning the Plaintiff; layoff, recall, termination and discharge record; notes and intercorporate communications of all kinds concerning the Plaintiff;

### Response No. 7:

TI objects to the request on the grounds that it seeks voluminous documents and information not relevant or reasonably calculated to lead to the discovery of admissible evidence (e.g., "material safety data sheets (MSDA) for all substances during the term of each Plaintiff's employment, safety records or any kind" and "notes and intercorporate communications of all kinds concerning the Plaintiff"). Consequently, this request imposes obligations on TI that exceed the requirements of Rules 26 and 34 of the Federal Rules of Civil Procedure as well as being burdensome, oppressive, and seeking documents that that are not described with reasonable particularity.

TI also objects to this request because it is disproportional to the needs of the limited discovery in the present procedural posture of this litigation and pursuant to the Order of the Court dated December 23, 2016 (ECF No. 36) and the bench orders of the Court issued at the December 23, 2016 Status and Scheduling Conference.

Subject to and without waiving its specific and General Objections, TI interprets Plaintiffs' use of "each Plaintiff" to mean each worker identified in the operative complaints filed in the Related Actions; as such TI refers to the personnel files produced to Plaintiffs by TI on January 31, 2017 and bates-numbered as follows: BALSER-0000001-BALSER-0000031; BOZEK-0000001-BOZEK-0000026;CAUGER-0000001-CAUGER-0000004;DIIORIO-0000001-DIIORIO-0000017;DIRENZO-0000001-DIRENZO-0000034;DRATWINSKI-0000001-DRATWINSKI-0000024;ELLERY-0000001-ELLERY-0000017;GABOURY-0000001-GABOURY-0000004;GARNEAU-0000001-GARNEAU-0000020;GILMORE-0000001-GILMORE-0000018;GORMAN-0000001-GORMAN-0000020;GRENIER-0000001-GRENIER-0000032;GUIMOND-0000001-GUIMOND-0000014;LATIMER-0000001-LATIMER-0000029;

13

LEARY-0000001-LEARY-0000021;MCCRETTON-0000001-MCCRETTON-0000004;
MOITOZA-0000001-MOITOZA-0000004;NEVEU-0000001-NEVEU-0000004;PHILLIPS-
0000001-PHILLIPS-0000004;SCHULZE-0000001-SCHULZE-0000031;SHELDON-0000001-
SHELDON-0000019;SULLIVAN-0000001-SULLIVAN-0000004;THORNHILL-0000001-
THORNHILL-0000022I;TORNGRENB-0000001-TORNGRENB-0000040;TORNGRENF-
0000001-TORNGRENF-0000019;TURGEON-0000001-TURGEON-0000004.

### Answers to Interrogatories Verification

I, Bryan Booker, Manager of Americas Real Estate of Texas Instruments Incorporated, sign the
answers to interrogatories for and on behalf of Texas Instruments Incorporated and am
authorized to do so for and on behalf of Texas Instruments Incorporated; and state under the
penalties of perjury that I have read the foregoing answers to interrogatories, that the facts stated
therein are either known to me personally or have been assembled on behalf of Texas
Instruments Incorporated from public records, and that, to the best of my knowledge and belief
the above responses are true and correct.

Dated: February 14, 2017

Bryan Booker

Manager, Americas Real Estate, Texas Instruments
Incorporated

Dated: February 14, 2017

Texas Instruments Incorporated [as to Answers to Interrogatories, objections only]

By its attorneys,

Mark O. Denehy | BBO No. 120380
mdenehy@apslaw.com
Katharine S. Perry | BBO No. 634167
kperry@apslaw.com
Brian R. Birke | BBO No. 652720
bbirke@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
175 Federal Street
Boston, MA 02110
T: 617 482 0600

**CERTIFICATE OF SERVICE**

I hereby certify that this document will be served electronically and via First Class Mail to the registered participants as identified on the Notice of Electronic Filing for the CM/ECF system on February 14, 2017.

Dated: February 14, 2017

# EXHIBIT 3

**UNITED STATES FEDERAL COURT**
**FOR**
**THE DISTRICT OF MASSACHUSETTS**

*Brett Torngren*

**Civil Complaint No.**

**PLAINTIFFS**

vs.

**Texas Instruments, Inc.**

Defendants Request for Discovery

1.  Any and all information, documents, communications, and things concerning the name(s) of
    each employer as alleged in Second Amended Complaints and the specific information
    listed below for each employer:

    a.  Brett Torngren was employed by Defendant Texas Instruments Incorporated from
    July 7, 1984 to October 31, 1987.

    b.  Job title(s) and dates of promotions;
        Mold Designer

    c.  Description of job duties for each job title;
        Design Plastic Injection Molds – Building #1
        Work with Tool Room Personnel on tool design assembly questions
        Work with Molding Personnel in Building #10 for tooling start up to qualify parts.
        Designed Tool & Dies in Building #11
        Work with Tool Room Personnel on tool design assembly questions

    d.  Assigned building and/or address for each job title; and
        Mold Design – Building #1 & Building #10
        Die Design – Building #11

    e.  Dates of assignment to each different building location.
        Building #1 – 7/7/84 through 7/7/86
        Building #11 – 7/7/86 through 10/31/87

2.      Any and all information, documents, communications, and things concerning the name(s) of
        employers and date(s) of employment, including, but not limited to, the documents
        listed below (executed, if necessary):

a.      Social Security Administration records (See: https://www.ssa.gov/forms/ssa-3288.pdf- for
        Consent for Release of Information);

        Executed Form 3288 attached.

b.      Tax records (See: https://www.irs.gov/uac/form-8821-tax-information-authorization &
        www.mas.gov.dor/docs - for Release of Information)

        Executed Form 4506 attached.

c.      Energy Employee Occupational Illness Compensation Program Act (EEOICPA) filings and
        confirmation of benefits received and/or denied; (https://www.dol.gov/owcp/energy/\

        Benefits were denied.

        Documentation in Plaintiff's possession, if any, is attached.

d.      U.S. Department of Labor records and filings for benefits as an employee of each employer at
        issue in the Second Amended Complaint; and

        Records provided in part c - No additional records are in Plaintiff's possession.

e.      Union records, employee manuals, work-related ID's, work-related certifications, work-related
        awards, work-related honors, and wage/earnings records.

        Records in Plaintiff's possession, if any, are attached.

3.      The Social Security number for each worker.

        See Form 3288 attached.

4.      The birth and married names of each worker, if applicable.

        Birth Name: _BRETT   HANS   TORWGREN_____

        Married Name (if any): _____

5.      Documentation confirming any signed written notice of waiver of rights under Massachusetts
        Worker's Compensation law and preservation of rights under common law.

        No records are in Plaintiff's possession.


Signed under the pains and penalties of perjury this        4 day of January 2017


Brett H. Tomgren

# **EXHIBIT 4**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JAMES W. CAUGER,** *et al.* | **CIVIL ACTION NOS.** |
| | **1:16-cv-10358-DPW** |
| **Plaintiffs** | **1:16-cv-12338-DPW** |
| | **1:16-cv-12339-DPW** |
| v. | **1:16-cv-12341-DPW** |
| | **1:16-cv-12342-DPW** |
| **TEXAS INSTRUMENTS, INC.** | **1:16-cv-12343-DPW** |
| **and JOHN DOE** | **1:16-cv-12345-DPW** |
| | **1:16-cv-12352-DPW** |
| **Defendants** | **1:16-cv-12353-DPW** |
| | **1:16-cv-12354-DPW** |
| | **1:16-cv-12355-DPW** |
| | **1:16-cv-12356-DPW** |
| | **1:16-cv-12357-DPW** |
| | **1:16-cv-12358-DPW** |
| | **1:16-cv-12359-DPW** |
| | **1:16-cv-12360-DPW** |
| | **1:16-cv-12361-DPW** |
| | **1:16-cv-12362-DPW** |
| | **1:16-cv-12363-DPW** |
| | **1:16-cv-12364-DPW** |
| | **1:16-cv-12365-DPW** |
| | **1:16-cv-12366-DPW** |
| | **1:16-cv-12367-DPW** |
| | **1:16-cv-12368-DPW** |
| | **1:16-cv-12369-DPW** |
| | **1:16-cv-12373-DPW** |

## JOINT STATEMENT PURSUANT TO LOCAL RULE 16.1
## AND THE SEPTEMBER 20, 2016 BENCH ORDER OF THE COURT

The parties in the above-captioned actions file this Joint Statement as ordered by the Court

at the Initial Scheduling Conference held on September 20, 2016 and in anticipation of the

November 29, 2016 Status Conference.[1]

---

[1] Texas Instruments Incorporated ("TI") does not consent to the consolidation of any of the 26 individual actions set forth in the caption above, and reserves all rights regarding same. TI's submission of this joint statement is solely for purposes of the November 29, 2016 Status Conference, as ordered by the Court.

I.     **The Parties' Agreed-Upon Proposed Agenda For Status Conference**

1.     Consideration of TI's anticipated motion(s) to dismiss.  The parties propose that the following schedule govern motion practice regarding any motion(s) to dismiss:

**February 3, 2017** – TI files its motion(s) to dismiss.

**April 3, 2017** – Plaintiffs file their opposition to TI's motion(s) to dismiss.

A.     **Reply Brief**

<u>TI's Position</u>. TI files its reply(ies) in support of its motion(s) to dismiss by April 24, 2017.

<u>Plaintiffs' Position</u>. It is anticipated that TI will file a Motion with the Court for Leave to file a Reply Brief in support of its motion(s) to dismiss; if so granted Reply Brief due April 24, 2017.

2.     Potential schedule for pleadings and motion practice, pending ruling on TI's anticipated motion(s) to dismiss.

3.     Potential schedule for discovery, pending ruling on TI's motion(s) to dismiss and considering the exceptional circumstances justifying enlargements of time.

II.    **The Parties' Position Regarding Exceptional Circumstances Pertaining To Joint Discovery Plan[2]**

The Parties request a departure from the time during which the Court ordinarily permits discovery and, where appropriate, the filing of dispositive motions.  This departure is warranted due to the number of Plaintiffs, the complex nature of the actions, and the anticipated historical analysis required in the early stages of discovery to narrow the legal and factual issues.

There are twenty six (26) Plaintiffs (comprised of individuals and estates) each with separate complaints and factual allegations.  Plaintiffs allege that they or their decedents were employees of TI for various lengths of time over a span of more than fifty (50) years. Plaintiffs further allege that they developed various cancers (*e.g.*, thyroid cancer, appendix cancer, breast cancer, lung cancer, prostate cancer, colon cancer, leukemia, testicular cancer) as a result of exposure to toxic substances at multiple buildings and sites located on TI's manufacturing facility in Attleboro, Massachusetts and during the course of their employment by TI.

---

[2] TI believes that discussion of discovery is premature because of TI's anticipated motion(s) to dismiss plaintiffs' Second Amended Complaints.  Consequently, the nature and scope of Plaintiffs' allegations and legal theories, let alone necessary discovery, is undetermined and will remain so until the close of pleadings and motion practice regarding same.  Nevertheless, the parties propose this Joint Discovery Plan herein in compliance with the Court's September 20, 2016 bench order regarding a further Status Conference.

Given the current number of Plaintiffs, the potential of additional, necessary parties to this action, and the extensive medical, employment, and historical information and events that must be researched, and the complex nature of the allegations contained in the various Second Amended Complaints, the parties respectfully request that the Court enlarge the ordinary time permitted for discovery.

**A.     Plaintiffs' Additional Position Regarding Exceptional Circumstances Pertaining To Joint Discovery Plan**

It is the Plaintiffs' position that the complex nature of TI's corporate structure and the structure of the various entities now merged or combined with TI, are important elements to the Plaintiffs' claims against TI that is believed to now be the sole surviving entity. The Plaintiffs expect their discovery to be difficult and time consuming due to the fact that many of the pertinent events date back over (60) years and involves several government agencies and other entities no longer in existence.

**III.    Joint Proposed Discovery Plan**

1.    **Initial Disclosures** – Fed. R. Civ. P. 26(a)(1) initial disclosures shall be served no later than fourteen (14) days after an Answer is served.

2.    **Medical Authorizations** – Plaintiffs shall produce executed authorizations for record collection, including medical (including without limitation, pursuant to the Health Insurance Portability and Accountability Act) and Social Security Administration records, no later than forty-five (45) days after an Answer is served.

3.    **October 13, 2017** – Plaintiffs shall produce their respective radiology/pathology reports regarding their alleged diagnosis.

4.    **November 16, 2018** – All written fact discovery completed.

5.    **January 18, 2019** – All fact depositions completed.

6.    **February 15, 2019** – Plaintiffs' identification of trial experts and associated Fed. R. Civ. P. 26(a)(2) disclosures (including written expert reports) served.

7.    **April 19, 2019** – Defendant's identification of trial experts and associated Fed. R. Civ. P. 26(a)(2) disclosures (including written expert reports) served.

8.    **July 19, 2019** – Plaintiffs' trial expert depositions completed.

9.    **August 16, 2019** – Defendant's trial expert depositions completed.

IV.   **Proposed Schedule For The Filing Of *Daubert* And Dispositive Motions**

    1.   **September 20, 2019** – *Daubert* motions, motions for judgment on the pleadings, and/or motions for summary judgment, if any, filed.

        (a)   Oppositions or responses to *Daubert* motions, motions for judgment on the pleadings, and/or motions for summary judgment, if any, filed within thirty (30) days of the date of filing of the respective motion.

        (b)   Reply to opposition to *Daubert* motions, motions for judgment on the pleadings, and/or motions for summary judgment, if any, filed within fifteen (15) days of the date of filing of the respective opposition or response.

    2.   Following the decisions and disposition of all dispositive motions, and if necessary, the parties defer to the Court for the scheduling of Pre-Trial Conference(s) amenable to the Court's calendar.

V.   **Magistrate Judge**

The parties do not consent to trial by Magistrate Judge.

VI.   **Certifications**

The parties assert they have filed, individually, certifications pursuant to Local Rule 16.1(d)(3) in the first-filed action captioned *James W. Cauger v. Texas Instruments Incorporated, et al.*, Civil Action No. 1:16-cv-10358-DPW.

VII.   **The Parties' Designation Of Other Matters For Consideration**

    1.   **Anticipated Motion(s) to Dismiss**.   The parties request that the Court hear argument on TI's anticipated motion(s) to dismiss at any time convenient to the Court, and that any discovery and subsequent dispositive motion scheduling issues, notwithstanding the proposals set forth herein, be reserved until a decision on such motion(s) to dismiss. *See* n.1.

    2.   **Discovery Event Limitations**.

        A.   <u>TI's Position As to Discovery Event Limitations</u>

The discovery event limitations imposed under Fed. R. Civ. P. 26.1(c) shall not apply to TI, as it must engage in discovery of twenty six (26) Plaintiffs involving extensive medical and employment histories involving alleged decades-long exposure(s).

B.    Plaintiffs' Position as to Discovery Event Limitations

The discovery event limitations shall not apply to the Plaintiffs, as they must engage in discovery that dates back over sixty (60) years and involves many different entities that now are all believed to have been merged or combined in some manner with TI, as well as engage in discovery with government agencies and other entities that are no longer in existence.

3.    **Settlement Discussions.**   Plaintiffs have not served TI with any settlement proposal.

   A.    **Plaintiffs' Additional Designation Of Other Matters For Consideration**

      (1)    **Settlement Discussions**.   TI has not served Plaintiffs with any settlement proposal.

Respectfully submitted,

TEXAS INSTRUMENTS INCORPORATED          PLAINTIFFS,
By its attorneys,                       By their attorneys,


/s/ Brian R. Birke                      /s/ Fiore Porreca
Mark O. Denehy | BBO No. 120380         Fiore Porreca | BBO No. 651019
   mdenehy@apslaw.com                      pilawpc@gmail.com
Katharine S. Perry | BBO No. 634167     PI Law PC
   kperry@apslaw.com                    184 North Main Street
Brian R. Birke | BBO No. 652720         Attleboro, MA 02703
   bbirke@apslaw.com                    T: 401 300-9189
ADLER POLLOCK & SHEEHAN P.C.
175 Federal Street
Boston, MA 02110
T: 617 482 0600

Dated: November 28, 2016

**CERTIFICATE OF SERVICE**

I Fiore Porreca hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via First-Class U.S. Mail to those indicated as non-registered participants, on November 28, 2016.

Dated:  November 28, 2016  _____