UNITED STATES FEDERAL COURT
FOR
THE DISTRICT OF MASSACHUSETTS

                                                          **Civil Complaint No**.

**Brett Torngren,**

**PLAINTIFF**

**VS.**

**Texas Instruments, Inc.**

and

**John Doe,**

    **DEFENDANTS**

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

---

NOW COMES the Plaintiff, the Plaintiff and submits the following Memorandum in Opposition to Defendant's Motion to Dismiss and further disputes the statement of facts made by the Defendant.

**ARGUMENT**

**I. LEGAL STANDARD**

    The Defendant has filed a Motion to Dismiss the Plaintiff's Complaint. The Supreme Court of the United States has held that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 246 (1980) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). To survive a motion for dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Tomboy*, 550 U.S. 544, 547 (2007)). The appropriate inquiry on a motion to dismiss is whether, based on the allegations of the complaint, the plaintiffs are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Therefore, the court must accept as true all the factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiffs. *Bergeson v. Franchi,* 783 F. Supp. 713 (D.Mass. 1992) (citing *Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 52 (1st Cir. 1990)). If under any theory, the complaint is "sufficient to state a cause of action in accordance with the law, a motion to dismiss the complaint must be denied." *Knight v. Mills,* 836 F.2d 659, 664 (1st Cir. 1987); *accord Cuddy v. Boston,* 765 F. Supp. 775, 776 (D.Mass. 1991). The Plaintiff's Complaint contains sufficient factual matter to state a claim for relief that is plausible on its face. The question is not whether the opposing party will ultimately prevail, but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Therefore, the Defendant has not met the required standard and the Defendant's Motion to dismiss should be denied.

      The Defendant has also file a Motion for Summary Judgment. The standard of review of a grant of summary judgment is "when there are no general issues of material fact, and when viewing the evidence in the light most favorable to the nonmoving party, . . . the moving party is entitled to a judgment as a matter of law." Aught, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Any doubts as to the existence of a genuine issue of material fact are to be resolved against the party moving for summary judgment. See Attorney Gen. v. Bailey, 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982). There are many genuine and pivotal issues of material fact as set forth in the Plaintiff's complaint and the herein objection. When viewing the evidence in a light

most favorable to the Plaintiff, the Defendant is not entitled to a judgment as a matter of law and its Motion for Summary Judgment should be denied.

## I.         THE COURT POSSESSES SUBJECT-MATTER JURISDICTION

Federal law dictates that district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). If a corporation is a party, it "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." *Id.* § 1332(b). The present negligence action is for a matter in controversy well over the $75,000 threshold. Compl. ¶ 161-162. The Plaintiffs are citizens of Massachusetts, Rhode Island, North Carolina, Florida, and Connecticut. The Defendant is incorporated in Delaware and has its principal place of business in Texas. Compl. ¶ 7. Accordingly, this Court has original jurisdiction over this civil case due to the diversity of citizenship coupled with the amount in controversy.

## III. THE DEFENDANT, AS SUCCESSOR COMPANY TO METALS METALS & CONTROLS, INC. IS LIABLE FOR THE NEGLIGENCE OF METALS & CONTROLS, INC. IN ITS CAPACITY AS LANDOWNER

Under Massachusetts law, "[n]negligence consists in doing or omitting to do an act in violation of a legal duty or obligation." *Bernabeo v. Kaulback*, 226 Mass. 128, 131, 115 N.E. 279, 280 (1917) (quoting *Minor v. Sharon*, 112 Mass. 477, 487 (1873)). Premises liability can come about by means of "control of the offending instrumentality, either through ownership or otherwise." *Underhill v. Shactman*, 337 Mass. 730, 733, 151 N.E.2d 287, 290 (1958). Control which is "conferred through the mechanisms of ownership, leasehold, contract or adverse possession, clearly gives rise to a duty of care." *Cohen v. Elephant Rock Beach Club, Inc.*, 63 F. Supp. 3d 130, 138 (D. Mass. 2014).

As a rule, a landowner "owes a common-law duty of reasonable care to all persons lawfully on the premises." *O'Sullivan v. Shaw*, 431 Mass. 201, 204, 726 N.E.2d 951, 954 (2000). The landowner's duty requires that he "act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." *Mounsey v. Ellard*, 363 Mass. 693, 708, 297 N.E.2d 43, 52 (1973). This duty also demands that the landowner "warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware." *Davis v. Westwood Group*, 420 Mass. 739, 743, 652 N.E.2d 567, 569-70 (1995). Moreover, a landowner "is not relieved from remedying an open and obvious danger where it 'can and should anticipate that the dangerous condition will cause physical harm to the [lawful visitor] notwithstanding its known or obvious danger.'" *Papadopoulos v. Target Corp.*, 457 Mass. 368, 379, 930 N.E.2d 142, 151 (2010) (alteration in original) (quoting *Soederberg v. Concord Greene Condo. Ass'n*, 76 Mass. App. Ct. 333, 338, 921 N.E.2d 1020, 1024 (2010)). Further, the rule that a lessor of commercial premises is liable in tort for personal injuries if the what caused the injury was in an area appurtenant to the leased area or in a common area over which the lessor had some control. *Chausse v. Coz,* 405 Mass. 264, 266 (1989).

Metals and Controls Corporation was organized as a Massachusetts Corporation on January 6, 1931 and led by the officers of the corporation, Carl Brousseau, Harold Andrews, George Williams, and Elliot Gordan. Metals and Controls Corporation became the sole owner of the real property located on Forest Street on March 18, 1932. Ex 1 (Deed). The real property was then sold on January 3, 1961, to a separate and distinct corporate entity, Metals & Controls, Inc. Metals and Controls Inc. was led by F. Douglas Cochrane, Richard W. Southgate and David McKay, its officers and directors. Metals & Controls Inc. held the real property until January 1, 1970. During this period, the Plaintiff worked for Texas Instrument Inc. a Massachusetts Corporation separate and distinct from the landowner, Metals

& Controls, Inc. It wasn't until 1970, that Metals & Controls Inc. reportedly changed its name to Texas Instruments Inc.

The series of convoluted name changes set forth in the Defendants interrogatories serves as a red herring an the Defendant's attempt to imply a oneness of identity or purpose between the entities. Despite the many name changes, mergers and consolidations that involved various entities that have since been consumed by the Defendant, Metals & Controls Inc. remained the sole owner of the real property from January 3, 1961 until 1970 when it became Texas Instruments Inc., a Massachusetts corporation. This Massachusetts corporation was separate and distinct from Texas Instruments Incorporated, the Delaware Corporation. See *Farkas v. Texas Instruments, Inc*, 429 F.2d 849, 850 (1st Cir. 1970) Wherein, Counsel for Texas Instruments Inc. represented to the court that the Attleboro plant is owned by Texas Instruments Incorporated, a Massachusetts corporation, and not by Texas Instruments Inc., against whom the action was brought. See Para D below.

During almost all the 1960's, Metals & Controls Inc., the landowner, was a separate legal entity from the Plaintiff's employer Texas Instruments Inc., a Massachusetts corporation that was led by CJ Thomsen and Bryan Smith. Ex 2 (Deed). This separate and distinct ownership ended when Metals & Controls, Inc., became Texas Instruments Inc. on January 1, 1970 and later merger with the Defendant, Texas Instruments Incorporated. Texas Instruments Inc. a Delaware Corporation was led by Patrick E Haggerty and Bryan F Smith as officers and Eugene McDermott, J Erik Jonsson, Cecil H Green, Fred Agnich, Emory G Ackerman, Ewen C MacVeigh and Lloyd V Berkner as Directors. became a publicly traded company on October 1, 1953. Metals & Controls, Inc., was aware throughout its ownership that the site had been, and continued to be, used for work involving Uranium-234 (U-234), Uranium-235 (U-235), and Uranium-238 (U-238) and Radon. Compl. ¶¶ 32 - 36. In accordance with that work, those radioactive substances were stored and even buried onsite undisclosed to the Plaintiff who occupied the site, passed

through the site both during working hour and non-working hours on a daily basis. Compl. ¶84. Waste material, scrap metal, and other radioactive residue were treated and buried onsite as well. Compl. ¶¶ 97. At no time during its ownership of the property did Metals & Controls, Inc., warn the Plaintiff about the dangers of the presence of any of the materials on the land. Compl. ¶ 92 - 103. Nor did Metals & Controls, Inc. take any steps to protect the Plaintiff from the dangers present upon the land. Compl. ¶ 99. Metals & Controls, Inc., therefore, not only failed to exercise reasonable care with respect to those lawfully on its premises, they failed to exercise any care at all. It did not attempt to keep its property in reasonably safe condition. It did not warn the Plaintiff of dangers of which it was fully aware. This failure to exercise any care constituted a breach of the duty imposed upon Metals & Controls, Inc., as landowners with respect to the Plaintiff.

Still, liability cannot attach to Metals & Controls, Inc., simply with a duty and any breach. What is needed is a "breach of that duty proximately resulting in the injury." *Davis*, 420 Mass. at 743, 652 N.E.2d at 569. In the present case, because of Metals & Control Inc.'s failure to exercise any care, the Plaintiffs suffered extensive physical and emotional harm, loss of consortium and in many cases death. Accordingly, the existence of Metal & Control Inc.'s duties as landowners, their breach of that duty, and the resulting injuries suffered by the Plaintiff combine to render Metals & Controls Inc. liable for negligence toward the Plaintiff.

At all relevant times, it was the duty of the Defendant, as a landowner and with knowledge of the ultra-hazardous actives conducted on the property, to exercise a reasonable degree of care for Plaintiff by both warning the Plaintiff of the dangers and preventing the Plaintiff's exposure to radioactive materials and other toxic hazardous substances when the Plaintiff visited the property, passed through the common area of the property and occupied the property during his working hours. See Complaint ¶ 103. At all relevant times, it was the duty of the Defendant, as a landowner, to exercise a reasonable degree of care

for Plaintiff assuring that the property met all the rules and regulations of the Atomic Energy Commission, the Nuclear Regulatory Commission and other regulatory bodies with respect to radioactive materials and other toxic and hazardous substances regarding the exposure of these materials to guests, passersby in the common areas, tenants, and abutters of the Forest Street property. See Complaint ¶ 103. During the 1960's the Office of Atomic Energy Commission, the Nuclear Regulatory Commission and other regulatory bodies found dissatisfaction with the criticality control, production control, and health physics methodology used and for failing to comply with relevant radiation protection standards, nuclear reactor safety, public health and safety standards, and environmental protection. See Complaint ¶ 110. Metals & Controls Inc. had a duty to comply with statutory and nuclear regulatory bodies. In fact, Defendant was even cited by these bodies for their gross infractions, and gross dereliction of their responsibilities. The Defendant and its prior entities buried radioactive waste and other chemicals on the property which eventually exposed the Plaintiff to radiation and toxic chemicals on an ongoing daily basis. The Plaintiff was exposed to these substances when in the common areas of the property. The common areas provided access to the various buildings on the property. The Plaintiff was also exposed to these substances outside of working hours. The Plaintiff frequented the property outside of work hours as a runner and was exposed to these toxic substances as did many other members of the Attleboro area. The Plaintiff frequented the property outside of working hours as the roads were often used as a pass through from Forest Street to Pleasant Street and was exposed to these toxic substances. This resulted in Plaintiff contracting cancer. Accordingly, it is clear that Metals & Controls Inc., as a landowner of the property, is liable separately and distinctly from a Worker's Compensation claim against the Plaintiff's employer, Texas Instruments Inc. and Texas Instruments Incorporated.

**B.          Negligence Liability Assumed By Texas Instruments Incorporated**

Massachusetts corporate law dictates that when two companies merge, the rights of creditors of any

constituent corporation shall not in any manner be impaired, nor shall any liability or obligation, including stockholder, director, or officer thereof, be released or impaired by any such consolidation or merger. G.L. c. 156B, § 80(b). Instead, the "resulting or surviving corporation shall be deemed to have assumed, and shall be liable for, all liabilities and obligations of each of the constituent corporations in the same manner and to the same extent as if such resulting or surviving corporation had itself incurred such liabilities or obligations." *Id*. This transfer of liability takes effect "[u]pun the effective date of the consolidation or merger under articles of consolidation or merger." *Id.* § 80(a).

The name change of Metals and Controls Inc. to Texas Instruments Inc. took place on or about January 1, 1970. The merger between Texas Instruments Inc. and Texas Instruments Incorporated took effect at 11:59 p.m. on December 31, 1971 *Exhibit 3*. When the two companies merged, the Defendant, Texas Instruments Incorporated was the "surviving corporation." As a result, upon the effective date of the mergers, the Defendant assumed all the liabilities of Texas Instruments Inc. and Metals & Controls, Inc. including its premise's liability, "in the same manner and to the same extent as if [the Defendant] had itself incurred such liabilities or obligations." G.L. c.156B, § 80(b). The Articles of Merger also recognize this assumption of liability.

C.        *Gurry v. Cumberland Farms, Inc.* **And The Lack Of Exclusivity Under The Massachusetts Workers' Compensation Act**

The Massachusetts Workers' Compensation Act ("MWCAC") generally provides the exclusive remedy for claims arising out of the negligence between an employer and its employees. G.L. c. 152, § 24. There are times, however, when this exclusive remedy does not hold. The case of *Gurry v. Cumberland Farms, Inc.*, 406 Mass. 615, 550 N.E.2d 127 (1990), illustrates when an employer may not be shielded by the exclusivity of the MWCA. In *Gurry*, the plaintiff's wrongful death action alleged "the negligent design, manufacture and maintenance of a machine by two predecessor corporations of the

defendant." *Id.* at 615, 550 N.E.2d at 129. Gurry had been, at the time of his death, an employee of the defendant, Cumberland Farms, Inc. (Cumberland). *Id.* at 616, 550 N.E.2d at 129. Prior to his death, Gurry had been an employee of one of the predecessor corporations, United Cranberry Growers Associates, Inc. ("Cranberry Growers"), but not of the other predecessor corporation, Cumberland Farms Dairy, Inc. ("Dairy"). *Id.* at 620, 550 N.E.2d at 131. Cumberland moved for summary judgment on multiple grounds, including that it was Gurry's employer at the time of his death and that the exclusivity of MWCA barred suit. *Id.* at 618, 550 N.E.2d at 130. In the alternative, Cumberland alleged that it had inherited the same defense from Cranberry Growers, as Gurry's prior employer. *Id.* The trial court granted Cumberland's motion for summary judgment. *Id.* at 615, 550 N.E.2d at 129. In reversing the summary judgment, the court in *Gurry* noted that "[t]he answer depends on the interrelationship of two statutes: the business corporation law and the workers' compensation act." *Id.* at 619, 550 N.E.2d at 130 (citations omitted). The *Gurry* court began its analysis by noting that under G.L. c. 156B § 80, Cumberland "stood in the shoes of Cranberry Growers and Dairy at the close of business on [the date of the merger], inheriting any liabilities for tortious conduct, as well as any privileges in the form of statutory immunities, that those predecessors would have had." *Id.* at 620, 550 N.E.2d at 131. Cranberry Growers, as the employer of Gurry, "would have been immune from suit since all the acts and omissions alleged against Cranberry Growers arose out of the direct employment relationship" between the two. *Id.* Dairy, meanwhile, was not Gurry's employer and would "have been susceptible to a third-party claim as a tortfeasor outside of the protection of workers' compensation." *Id.* As a result, Cumberland could be open to suit, as Dairy would have been, outside of the protection of workers' compensation. *Id.*

According to the court in *Gurry*, it would make little sense to read the workers' compensation law "as insulating an employer from obligations it inherited through corporate merger simply because of the immunity for its own negligence it possessed as the employer of the insured employee." *Id.* In order to avoid such a problem, "other courts and text writers have adopted the 'dual persona' theory." *Id.* Under the dual persona theory, "if an employer's liability to an injured worker derives from a 'second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person,' the employer is not immunized under the workers' compensation law, but is rather regarded as a third party." *Id.* at 620-21, 550 N.E.2d at 131 (quoting 2A Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 72.80, at 14-229 (1988 ed.)).  The court in  LONGEVER vs. REVERE COPPER AND BRASS INC. 381 Mass. 22  1975 clearly made it a point to "leave open the issue whether the application of the dual capacity doctrine in this Commonwealth might be warranted under some circumstances. See 2A A. Larson, Workmen's Compensation Section 72.80 (1976)". In this case, Metals and Controls, Inc.  was a separate and distinct legal entity from the Defendant, employer, Texas Instruments Inc.   The Plaintiff's claim against Metals I Controls Inc. was based on conduct of Metals & Controls Inc. that did not arise from an employment relationship, but from the negligence of the independent corporation, Metals & Controls Inc.   The Court in Gurry noted that Gurry was permitted a suit in tort against an employer as successor of a corporation that was never decedent's employee and would have been susceptible to a third-party claim and outside of the workers' compensation protection. The same is true in this case.  Hence it should be allowed to go forward as it would not interfere with the purpose of the Workers' Compensation statute.

1

The Defendants negligent handling, transport, storage and management of Uranium-234 (U-234), Uranium-235 (U-235), and Uranium-238 (U-238) and Radon and other toxic substances resulted in the Plaintiff's exposure to radioactive materials and toxic substances which occurred both inside and outside of the workplace, including the Shpack Landfill. The Defendant is not protected by the Workers Compensation Act where the Plaintiff's claim involves his exposure to radioactive materials and toxic substances which occurred outside the scope of employment as it is not a work-related injury. Compl. ¶ 161-162  83, 84, 85.

**D.**         ***Separate and Distinct Entities*** **And The Lack Of Exclusivity Under The Massachusetts Workers' Compensation Act**

In fact, the Defendant, Texas Instruments Incorporated expounded on its identity being separate and distinct in Adam Farkas v. Texas Instruments, Inc.et al 429 F.2d 849 (1st Cir. 1970). In the Farkas case, judgment was in favor of Texas Instruments Incorporated, where Counsel for Texas Instruments Incorporated represented to the court that the Attleboro plant was owned not by Texas Instruments Incorporated but by a separate and distinct Texas Instruments Incorporated subsidiary, Texas Instruments, Inc., a Massachusetts corporation. The principle of res judicata should apply and Texas Instruments Incorporated should not be allowed to claim the entities as separate and distinct legal entities in the instance of Farkas and related in this case. It seems inconceivable that the Legislature intended a corporation's premise liability to an injured party to dissipate due to the corporation's merger with the injured party's employer. Texas Instruments Incorporated cannot rely upon its separate and distinct legal identities on the one hand and not be held to a res judicata finding as to their independence and professed distinction in another.

The dual capacity doctrine is premised on the concept that when an employer or co-employee also serves in a distinct non-employment capacity toward the employee, or has a legal persona other than that of employer or co-employee, the exclusive remedy principle will not bar the employee's common-law remedies. However, in this case, there are, in fact, separate and distinct third parties/legal entities, i.e. Metals & Controls Inc. the landowner and Texas Instruments Inc. the employer. Metals & Controls Inc. is liable to pay damages because the Plaintiff's injuries for which they elect to seek damages from as a third person. Metals & Controls Inc. existed as a separate legal persona at the time of the injury. It was controlled and led by separate and distinct offices. This was not a case of the Defendant just being both the landowner and employer at the time of the injury and the Plaintiff claiming an additional relationship as landowner to the Plaintiff. The dual persona doctrine does not extinguish the appropriateness of suit under the third-party statute; it merely limits the circumstances in which such suit is possible. This doctrine protects the exclusive remedy principle of the Workers Compensation Act, but also leaves the door open for injured employees to bring suit in cases where landlords owe separate and distinct legal duties to those individuals. See, e.g., Thomas v. Valmac Indus., 812 S.W.2d 673, 674 (Ark. 1991) (finding that under the dual persona doctrine, an injured truck driver may pursue a tort claim against an alleged tortfeasor who, at the time of the accident, was not the worker's employer but who, since the accident, had become the worker's employer as the result of a corporate merger); Percy v. Falcon Fabricators, 584 So. 2d 17, 18 (Fla. Dist. Ct. App. 1991) (adopting the dual persona doctrine and holding that an injured employee may sue her employer in tort when that employer is the corporate successor of the manufacturer of the defective product that caused the injury, and the product was manufactured before the corporate merger), review dismissed, 595 So. 2d

556 (Fla. 1992); Robinson v. KFC Nat'l Management Co., 525 N.E.2d 1028, 1029 (Ill. App. Ct. 1988) (holding that an employee who has received workers' compensation benefits may pursue a tort action against his employer when the manufacturing corporation, by whom the employee has never been employed, merged with the employer corporation prior to the time of the employee's injuries); Kimzey v. Interpace Corp., 694 P.2d 907, 912 (Kan. Ct. App. 1985) (adopting the dual persona doctrine and allowing suit against a successor corporation when the successor corporation absorbed the third-party manufacturer and assumed the liabilities of that manufacturer).  Also see Patton v. Simone, Nos. 90C-JA-29, 90C-JL-219 Consolidated, 1992 Del. Super. LEXIS 277, at *19-20 (Del. Super. Ct. July 16, 1992) (denying defendant landowner's motion for summary judgment and stating that an individual's status as landowner and employer may give rise to separate liabilities under the dual persona doctrine, but not stating when such circumstances may arise); Doggett v. Patrick, 398 S.E.2d 770, 771-72 (Ga. Ct. App. 1990) (denying defendant landowner's motion for summary judgment and stating that the factual context may give rise to a separate legal persona to support liability when the defendant **(1)** individually owned the premises on which the accident occurred, and (2) leased the premises to the corporation of which he was the president); Labelle v. Crepeau, 593 A.2d 653, 655 (Me. 1991) (holding that a defendant landowner may be sued in his individual capacity as landowner regardless of his role as shareholder, president, and treasurer of the corporate employer because the corporate form gives rise to a separate legal persona).

The workers' compensation law was a balance between "rectify[ing] inequities in the common law by providing fixed compensation to employees injured at work" and granting an employer immunity from an employee's tort claims. *Id.* at 621, 550 N.E.2d at 131.  The statute,

4

therefore, was "intended to deal with injuries and liability occurring during the employer-employee relationship." *Id.* Interpreting the law to insulate an employer from liability it acquired from another company just because it happened to be a plaintiff's employer "would subvert the important aims of both the workers' compensation system and the business corporation statute." *Id.* Accordingly, the court reversed summary judgment for Cumberland "for any liability which it assumed when it acquired Dairy." *Id.* The mere fact that a company may fall within the holdings of a parent corporation does not, as a matter of law, make the parent the employer of all the workers of those companies under its umbrella. However, the parent company, Texas Instruments Incorporated, is liable as it assumed a duty to keep the premises safe and its subsidiaries as the merged entities owed this duty to the Plaintiff and its failure to do so resulted in injuries to the Plaintiff.

The present case mirrors *Gurry* in many important ways. Like *Gurry*, the present action is between current and former employees against their employer. That employer attempts to assert the same defense, that workers' compensation is the exclusive remedy available. *See* Def.'s Mem. Supp. Mot. to Dismiss. Like *Gurry*, however, the liability that the Defendant possesses was obtained when it merged with a predecessor company. From 1961 to 1971 the Plaintiffs were not employees of Metals & Controls, Inc. Compl. ¶¶ 1-245. As in *Gurry*, therefore, Metals & Controls, Inc., would have been subject to a third-party claim outside the protection of workers' compensation. When the Defendant merged with Metals & Controls, Inc., it assumed its liability toward the Plaintiffs. Just like in *Gurry*, that liability does not come with the protection of workers' compensation. The relevant inquiry in a dual persona allegation is not whether a separate theory of liability could be argued against the same legal person, but rather whether the controversy involves a separate legal entity" *Barrett*

5

*v. Rodgers*, 408 Mass. 614, 617 (Mass. 1990)

The Plaintiff's case is differentiated from the Barrett case where the plaintiff incorrectly sought to characterize her employer as a third party by invoking the "dual persona" doctrine and view defendant as a split legal personality" *Barrett v. Rodgers*, 408 Mass. 614, 616 (Mass. 1990). The Plaintiff in the Barrett case was claiming a in fact claiming dual capacity theory. However, as the Court found the relevant inquiry in a dual persona allegation is not whether a separate theory of liability could be argued against the same legal person, but rather whether the controversy involves a separate legal entity *Barrett v. Rodgers*, 408 Mass. 614, 617 (Mass. 1990). Clearly the facts in this case show that the Plaintiff's claim are against a separate legal entity that existed in the 1960's.

The Plaintiff's case is also differentiated from *Wade vs Hutchings,* No. 940039, 4 Mass L Rptr. 174, 1995 WL 809542. The Court in this case considered the dual persona theory in a premises liability context much different than the one at hand. In Wade, the defendants as individuals owned the premises and the same individuals owned the business trust and acted as trustees of the business trust. While the status of the property owners as individuals may have been a separate legal entity than the business trust, there was a commonality of ownership and control. The Plaintiff's case involves not only two separate legal corporate entities, but each entity has separate and distinct ownership and different officers controlling the corporation.

**IV.      IT WAS THE DEFENDANTS ONGOING FAILURE TO WARN THE PLAINTIFFS OF THEIR EXPOSURE TO RADIOACTIVE MATERIAL AND THEIR FRAUDULENT CONCEALMENT OF THEIR EXPOSURE TO RADIATION WAS AKIN TO FALSE IMPRISONMENT AND AGGRAVATED AND CAUSED THE PLAINTIFF'S INJURIES.**

While it is settled that common-law tort, claims are barred under the Workers' Compensation Act, and as a rule, the exclusivity provision bars employees from suing their employer for all personal injuries arising out of or during employment.   None of the case laws cited by the Defendant, or the cases which state the obvious that the common-law tort claims are barred under the Workers' Compensation Act deal with a scenario that is in issue in this case.  Here, Plaintiffs allege that they were exposed to enriched uranium and other radioactive materials while employed with the Defendant and/or its predecessors, which resulted in the Plaintiffs contracting cancer decades after they stopped working for the Defendant.  The Defendants, despite clear knowledge of the Plaintiff's exposure to radiation fraudulently concealed their exposure and made no attempts to contact or warn the Plaintiffs allowing them to obtain medical care to prevent or cure the cancer they contracted.  The concealment of the Plaintiffs exposure took place in most cases years after their employment with the Defendant terminated.  Without being provided the knowledge of the likelihood for contracting cancer considering their exposure to radioactive material, the Plaintiffs were effectively imprisoned and not allowed the opportunity to obtain lifesaving medical treatment while the cancer unknowingly grew in their bodies. The Plaintiffs held the Defendants captive and unable to procure proper medical care. False imprisonment and other kindred acts are an exception to the exclusivity of Massachusetts Workers Compensation.  The court in Doe v. Purity Supreme, No. 936530, 1994 WL 879356, at *2 (Mass. Super. Oct. 17, 1994) held "an employee may bring common law claims for "injuries to reputation resulting from libel, malicious prosecution and false imprisonment, invasion of right to privacy, as well as alienation of affection of a husband or wife, seduction, false arrest and kindred tortious acts."  It is the later acts of the Defendant or the lack thereof in failing of taking any action

to notify the Defendants of their exposure to the radioactive materials, which lead to the Defendants' failure to seek treatment early treatment and thereby increased the injuries sustained by the Plaintiffs.  The crux of the matter is, whether Plaintiffs' injuries, in this case, their contracting cancer, arose out of their employment or were due in large part to the Defendant's failure to take reasonable steps to warn the Plaintiffs thereby incapacitating and imprisoning the Plaintiffs so that they could not act to preserve their health is one fact to be decided upon entire evidence.  Question of whether employee's injuries arose out of and in course of his employment or were due to their later failure to take steps to preserve their health and physical condition is one of fact to be decided upon entire evidence.  The Court in the *Sarocco v. General Elec. Co., (d.mass. 1995)*, 879 F. Supp. 156, 159-60 (D. Mass. 1995) found that Workers' Compensation Act provides the sole remedy for workplace injuries resulting from an employer's fraudulent misrepresentations that conceal the nature and extent of work-related illnesses.  Sarocco claimed General Electric deprived employees of medical treatment and further aggravating their illnesses because of General Electric's medical employees intentionally misinforming them and negligently advising Sarocco during Sarocco's employment as to the need for treatment after exposure to toxic chemicals.  The Plaintiff's case is differentiated in that in the Sarocco's case the need for medical treatment was concealed during the Sarocco's employment.  Here, in contrast, the Plaintiff contends that in the case of the Plaintiff's aggravated injuries, the Defendant was negligent after the Plaintiff's employment was terminated and he was no longer an employee.   Since the Employer – Employee relationship had terminated at that point, the Workers Compensation Act would not be the appropriate remedy.

**V.        CERTAIN INJURIES DO NOT FALL WITHIN THE ACT DUE TO**

**THE FAILURE OF THE DEFENDANTS TO REPORT WORK RELATED INJURIES TO ITS CARRIER.**

In this case, the Defendant has failed to file timely reports of any of the Plaintiffs' injuries to the Defendant's worker's compensation carrier. This failure effectively precludes the Plaintiffs from receiving worker's compensation benefits from the Defendants workers' compensation insurance carrier. It would be inequitable for the employer, through its insurance carrier, to take the position that there were no work-related injuries reported and hence no workers' compensation coverage, and then later, when the employee brings a tort action against the employer, to assert as a defense at law that there was workers' compensation coverage entitling the employer to immunity from suit. As the employer may not separate itself from its compensation carrier's determination that the employee's injuries did not occur during the course and scope of employment, the employer must estopped from taking the totally inconsistent position that the injuries did occur during the course and scope of employment and then take the opposite position and claim worker's compensation immunity when sued in tort." Ocean Reef Club, Inc. v. Wilczewski, 99 So. 3d 1 (Fla. 3d DCA 2012), reh'g denied (Oct. 16, 2012)

**VI.      CLAIMS FOR LOSS OF CONSORTIUM DO NOT FALL WITHIN THE ACT**

These loss of consortium claims arose prior to 1985 when the Workers Compensation Act was amended to provide workers' compensation benefits for loss of consortium claims. *Williams v. Westover Finishing Co., Inc.,* 24 Mass.App. 58, 60 n. 3, 506 N.E.2d 166 (1987). Those claims which arose before the Amendment are not barred by the exclusivity provision of the Act. *Id.* Plaintiffs contend that the claims for loss of consortium for the plaintiffs arose

prior to 1985 and are not barred by the Act. *See Foley v. Polaroid Corp.,* 400 Mass. 82, 84 n. 2, 508 N.E.2d 72 (1987) where loss of consortium actions were barred only if injuries occurred after 1985. On the facts as alleged, it is indisputable that the injuries to Plaintiffs occurred prior to 1985. The Plaintiff worked for the Defendants prior to 1985. As set forth in *Olsen v. Bell Telephone Laboratories, Inc.,* 388 Mass. 171, 445 N.E.2d 609 (1983).

**CONCLUSION**

Metals & Controls, Inc., was negligent toward the Plaintiffs. It failed to protect or warn the Plaintiffs about dangers present on its land. When the Defendant, Texas Instruments Incorporated merged with Texas Instruments Inc. and Metals & Controls, Inc., it assumed any potential liability that Metals & Controls, Inc., might have had, including its liability toward the Plaintiff. The mere fact that the Defendant later has an employer-employee relationship with the Plaintiff does not alter the relationship that the Plaintiff had with Metals & Controls, Inc. From 1961 to 1970, that relationship was simply that of landowner and third party on its land. Workers' compensation offers no protection for such a relationship and, therefore, the Defendant cannot use it to shield itself from this suit. Further it was the Defendants ongoing failure to warn the Plaintiff after the termination of their employment relationship of his exposure to radiation and the Defendant's continued fraudulent concealment of the Plaintiff's exposure to radioactive material effectively held the Defendant captive and unable to procure proper medical care. This failure to warn and concealment was akin to false imprisonment and aggravated and caused the Plaintiff's injuries and the kind of kindred tortious act that are an exception to the exclusivity of the Workers' Compensation Act.

Defendant's failure to file timely reports of any of the Plaintiffs' injuries to the Defendant's worker's compensation carrier effectively precludes the Plaintiff from receiving

worker's compensation benefits from the Defendant's workers' compensation insurance carrier. It would be inequitable for the employer, through its insurance carrier, to take the position that there were no work-related injuries reported and hence no workers' compensation coverage, and then later, when the employee brings a tort action against the employer, to assert as a defense at law that there was workers' compensation coverage entitling the employer to immunity from suit. The Plaintiff's intended loss of consortium claims arose prior to 1985 when the Workers Compensation Act was amended to provide workers' compensation benefits for loss of consortium claims. Plaintiff contends that the claims for loss of consortium for the plaintiff arose prior to 1985 and are not barred by the Act. Loss of consortium is an independent cause of action and the date of its accrual is determined separately from that of the spouse's injury.

For the foregoing reasons, the Defendant's Motion to Dismiss should be denied.

    Respectfully submitted,
    /s/ Fiore Porreca
    Fiore Porreca, Esquire
    BBO #651019
    Email: pilawpc@gmail.com

    PI Law PC
    184 North Main Street Attleboro, MA  02703
    Telephone:  (401) 300-8196
    Facsimile:  (401) 830-9201

April 7, 2017