UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES W. CAUGER,<br><br>Plaintiff,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.,<br>and JOHN DOE,<br><br>Defendants. | No. 1:16-cv-10358-DPW |
| FRANK TORNGREN,<br><br>Plaintiff,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.,<br>and JOHN DOE,<br><br>Defendants. | No. 1:16-cv-12343-DPW |
| BRETT TORNGREN,<br><br>Plaintiff,<br><br>v.<br><br>TEXAS INSTRUMENTS, INC.,<br>and JOHN DOE,<br><br>Defendants. | No. 1:16-cv-12345-DPW |

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR EMERGENCY MOTION TO COMPEL
AND EXTEND THE DISCOVERY DEADLINE**

Plaintiffs James Cauger, Frank Torngren, and Brett Torngren ("Plaintiffs") hereby move this Honorable Court to enter an Order compelling further FRCP 30(b)(6) testimony, compelling responses to written discovery, and extending the fact discovery deadline to allow for, *inter alia*, further deposition testimony.

1

## I.     Introduction

Plaintiffs have consistently sought, *inter alia*, documents pertaining to the quantities of toxic and radioactive waste generated at Defendant's Forest Street facility and the quantities of toxic and radioactive waste transferred by or on behalf of Defendant to the Shpack Landfill. Defendant, however, produced only publicly available and self-serving documents and failed to identify the relevant and responsive documents withheld from its production. This failure prompted a July 25, 2019 hearing before Magistrate Judge Kelly and prompted Plaintiffs to serve a FRCP 30(b)(6) notice with topics pertaining to, *inter alia,* the quantities of specific substances acquired, used, or processed at the Forest Street Facility and the disposal of those substances at the Shpack Landfill.

On October 3, 2019, the Court heard argument on Defendant's motion for a protective order to limit the FRCP 30(b)(6) deposition topics. As set forth in the text order associated with the motion, the Court ruled as follows:

> The parties have agreed that the deposition of the Rule 30(b)(6) witness shall take place in Boston on a date agreeable to the parties. Defendant's motion to limit the topics to the following numbers, as set out in document #[114]-1, is allowed, and the witness shall address questions 1, 2, 3, 13, 25, 26, 27, and 28. If, after the deposition, plaintiffs wish to file a motion to compel answers to topics 4-12, they may do so. (Matter 16-cv-12343, ECF Doc. 74).

This October 3, 2019 text order ostensibly reflected the Court's finding at the hearing that further discovery would be permitted if Defendant's 30(b)(6) witness testified that it did not dump, transfer, or deposit toxic and/or radioactive materials at the Shpack landfill. This is because, as discussed at the hearing, in the event Defendant's 30(b)(6) witness denies Defendant disposed of toxic and/or radioactive materials at the Shpack Landfill, Plaintiffs should have the opportunity to determine and evaluate the quantities of materials acquired, used, and/or

processed at the Forest Street facility in order to compare those quantities with the quantities of similar materials found by way of, for instance, soil and water samples at the Shpack Landfill.

During the 30(b)(6) deposition that occurred on October 9, 2019, Defendant's corporate designee testified as follows:

a. In order to prepare to testify about dumping at the Shpack landfill, she reviewed documents, including witness declarations, provided to her by the legal department. (Exhibit D, pp. 60-61, 92).

b. She did not know what other documents or witness statements had been located or identified by the legal department. (Exhibit D, pp. 93, 96-97, 144-146, 173-174).

c. Texas Instruments did not dump, transfer, or deposit toxic and/or radioactive materials at the Shpack landfill. (Exhibit D, pp. 88-94).

d. She does not know how materials at the Shpack landfill that are definitively linked to defendant ended up at the Shpack landfill. (Exhibit D, p. 112).

So, simply put, following Defendant's non-responsive document production, Defendant's corporate designee testified that according to the documents she was given by Defendant's legal department, Defendant did not dump toxic or radioactive materials at the Shpack Landfill. And Defendant's corporate designee testified that she did not know if there are or were other documents that contradicted the documents she was given by the legal department. (*Id.*)

Defendant should not be permitted to: 1) withhold responsive documents; 2) fail to identify which responsive documents have been withheld; 3) essentially "feed" its corporate designee documents selectively gathered by its in-house counsel; and then 4) testify in a 30(b)(6) deposition that according to the documents selected and forwarded by Defendant's in-house

counsel, there was no dumping of toxic or radioactive materials at the Shpack Landfill, despite samples at the Shpack landfill showing otherwise.[1]  Moreover, in view of the corporate designee's testimony that there was no dumping of radioactive materials, and pursuant to the Court's October 3, 2019 text order, Defendant should be compelled to provide written responses and testimony relative to 30(b)(6) topics 4 through 12.

Accordingly, the Court should enter an Order: a) compelling Defendant to supplement its written discovery responses; b) compelling Defendant to produce documents and a corporate witness pertaining to FRCP 30(b)(6) topics 4 through 12; and c) extending the fact discovery schedule by 45 days to allow for this and additional relevant depositions.   Plaintiffs bring this motion as an emergency motion becuause fact discovery closes on October 31, 2019, and despite attempts to obtain the transcript sooner, the deposition transcript of Defendant's FRCP 30(b)(6) witness was not made available to Plaintiffs' counsel until Friday, October 25 at 4:45pm.

## II.     Factual and Procedural Background

1. This case arises out of Defendant, through its predecessors, manufacturing, among other things, nuclear fuel core components throughout the 1950s at its Forest Street manufacturing facility in Attleboro, Massachusetts and transferring waste from that

---

[1] The Nuclear Regulatory Commission (NRC) concluded that radioactive material had been disposed at the Shpack Landfill.  Their investigation concluded that trash and other material including burned zirconium ashes, associated with nuclear fuel operation from about 1957 to 1966 had been disposed at the site.  In a follow-up NRC report (NRC 1979b), it was concluded by the NRC that M&C Nuclear, Inc., a totally owned subsidiary of  Metals & Controls, Inc. (now owned by Texas Instruments) worked with the three types of material found at the Shpack landfill.  The NRC concluded from their investigation that the probable source of the uranium materials found and identified at the Norton landfill site were from contract work performed by M&C Nuclear Inc. for the Atomic Energy Commission.  (Docket No. 117-4, p. 5, Site Closeout Report for the Shpack Landfill FUSRAP Site).  The NRC's investigations identified radioactive materials, primarily radium and uranium, within the Shpack landfill area. The outcome of the NRC and other investigations resulted in the Shpack landfill being added to the Formerly Utilized Sites Remedial Action Program (FUSRAP).  (Docket No. 117-4, p. 2, Site Closeout Report for the Shpack Landfill FUSRAP Site).  Further, according to the NRC, "in approximately 1978, NRC confirmed the presence of radioactive contamination at the Shpack landfill in nearby Norton, Massachusetts. The source of this contamination may have been the result of work performed at the TI Attleboro facility, but the company has not acknowledged that its facility was the source of the material in the landfill."  (Docket No. 117-5, Letter from the NRC).

manufacturing process to the Shpack Landfill in Norton, Massachusetts. (Matter 16-cv-12343, ECF Doc. 1). Plaintiffs Frank Torngren and Brett Torngren allege non-work exposure to the Shpack landfill (which operated as a dump from approximately 1946 to 1975, and where Defendant is alleged to have dumped materials used at its Forest Street facility). Plaintiff Jim Cauger alleges non-work exposure to the Forest Street facility when he lived directly adjacent to it in the late 1950s.

2. On or about January 30, 2019, the Court issued a Scheduling Order that set forth, *inter alia,* the following deadlines: "the parties shall meet and confer regarding discovery no later than February 20, 2019; parties to serve initial disclosures by February 28, 2019; initial written discovery requests by March 30, 2019; and fact depositions and fact discovery to be completed by August 1, 2019." (Matter 16-cv-12343, ECF Doc. 59).

3. The February 20, February 28, and March 30 deadlines were met.

4. Following Plaintiffs' service of interrogatories and document requests upon Defendant on March 29, 2019, Plaintiffs received Defendant's responses on or about April 27, 2019.

5. The parties had multiple discovery meet-and-confer sessions over the course of several hours on May 31 and June 6, 2019. Following the meet-and-confer sessions, Defendant supplemented its discovery responses -- in two-phases -- on June 17 and on July 2. Plaintiffs asserted that many of the deficiencies discussed during the multiple meet-and-confer sessions had not been rectified by Defendant's supplementations.

6. To that end, and in compliance with Magistrate Judge Kelley's Individual Rule, MPK Q/A 15,[2] Plaintiffs contacted the Magistrate Judge's courtroom clerk, Kellyann Belmont, on July 3, 2019 by way of telephone and email, in order to secure a conference with Magistrate Judge Kelley regarding the discovery disputes.

7. On July 11, 2019, Plaintiffs moved for a 45-day extension of the discovery schedule. (Matter 16-cv-12343, ECF Doc. 70).

8. On July 17, 2019, Defendant moved for an Order clarifying the scope of discovery. Matter 16-cv-12343, ECF Doc.73).

9. On July 22, 2019, Defendant deposed plaintiff Brett Torngren.

10. On July 24, Defendant deposed plaintiff James Cauger.

11. The deposition of Frank Torngren had to be adjourned and postponed due to his unexpected hospitalization.

12. The 30(b)(6) deposition, which had been noticed for July 29, was adjourned and postponed on consent to August 30 due to Defendant's counsel's unavailability.

13. On July 24, 2019, Plaintiffs submitted a pre-hearing letter to Magistrate Judge Kelley (Exhibit E). In the letter, Plaintiffs provided an overview of the parties' discovery disputes.

14. The chief dispute involved Defendant's responses failing to identify the extent to which, if at all, Defendant was withholding otherwise relevant materials on the basis of the various (largely improper) objections[3] raised.

---

[2] See http://www.mad.uscourts.gov/boston/kelley.htm

[3] Almost every RFP Response includes improper boilerplate objections that the RFPs are "vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence." Such boilerplate objections were unacceptable prior to the 2015 FRCP amendments and are even more inappropriate now under the amended Fed. R. Civ. P. 34(b)(2)(B), which requires that objections "state with specificity the grounds for objecting to the request, including the reasons." *See also, e.g., Fischer v. Forrest,* 2017 U.S. Dist. LEXIS 28102 * 8 (S.D.N.Y. Feb. 28, 2017) (objection that requests were "'overly broad and unduly burdensome' is meaningless

15. The parties appeared before Magistrate Judge Kelley on July 25, 2019 in order to address the parties' pending motions and the parties' discovery dispute as outlined in the July 24 pre-hearing letter. Ultimately, Magistrate Judge Kelley issued a Text Order as follows:

    > "The court allows both motions. The court hears argument from counsel for both sides concerning discovery disputes and attempts to instruct the parties on the scope of discovery as requested by defendant. The parties will continue to confer regarding these disputes and will file a joint status report on or before August 8, 2019 setting out further disputes." (Matter 16-cv-12343, ECF Doc. 74).

16. The parties met and conferred on August 1 and timely submitted the joint status report on August 8. (Matter 16-cv-12343, ECF Doc. 75). Additionally, on August 8, Defendant filed a motion for a protective order regarding the 30(b)(6) topics and the deposition location. (Matter 16-cv-12343, ECF Doc. 76). Plaintiffs opposed the motion. (Matter 16-cv-12343, ECF Doc. 78).

17. Within the opposition, Plaintiffs argued, among other things, that the topics within the 30(b)(6) notice were carefully tailored to obtain information that Defendant had not provided through written discovery. (*Id*.).

18. On September 9, 2019, the court entered a text order extending the fact discovery cut-off to October 31. (Matter 16-cv-12343, ECF Doc. 80).

---

boilerplate. Why is it burdensome? How is it overly broad? This language tells the Court nothing. Indeed, even before the December 1, 2015 rules amendments, judicial decisions criticized such boilerplate objections."); *Herrera v. AllianceOne Receivable Mgmt.*, No. 14-CV-1844-BTM (WVG), 2016 U.S. Dist. LEXIS 40474, at *3 (S.D. Cal. Mar. 28, 2016) ("Despite stating that every request was objectionable for various reasons, Defendant did not even attempt to demonstrate how or why the requests were vague, ambiguous, overbroad, or irrelevant."); *Samsung Elecs. Am., Inc. v. Chung*, No. 3:15-cv-4108-D, 2017 U.S. Dist. LEXIS 101619, at *50 (N.D. Tex. June 26, 2017) ("All Pro claims that words and phrases such as "gifts," . . ., attorney "fee statements," "internal communication," and "former employee or contractor of Samsung," are somehow vague, but completely fails to explain why."); *PEG Bandwidth PA, LLC v. Salsgiver, Inc.*, No. 3:16-cv-178, 2017 U.S. Dist. LEXIS 108516, at *4 (W.D. Pa. July 13, 2017) ("The person resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient.") (citations omitted).

19. On October 3, 2019 Court heard argument on Defendant's motion for a protective order.  As set forth in the text order, the Court ruled as follows:

    The parties have agreed that the deposition of the Rule 30(b)(6) witness shall take place in Boston on a date agreeable to the parties. Defendant's motion to limit the topics to the following numbers, as set out in document #[114]-1, is allowed, and the witness shall address questions 1, 2, 3, 13, 25, 26, 27, and 28. If, after the deposition, plaintiffs wish to file a motion to compel answers to topics 4-12, they may do so.

20. The October 3, 2019 text order ostensibly reflected the Court's finding at the hearing that further discovery would be permitted if Defendant's 30(b)(6) witness testified that it did not dump, transfer, or deposit toxic and/or radioactive materials at the Shpack landfill.

21. On October 9, 2019, Defendant's corporate designee was deposed in Boston, Massachusetts.  (Exhibit D).

22. During that deposition, Defendant's corporate designee testified as follows:

    a. In order to prepare to testify about dumping at the Shpack landfill, she reviewed documents, including witness declarations, provided to her by the legal department.  (Exhibit D, pp. 60-61, 92).

    b. She did not know what other documents or witness statements had been located, identified, or gathered by the legal department.  (Exhibit D, pp. 93, 96-97, 144-146, 173-174).

    c. Texas Instruments did not dump, transfer, or deposit toxic and/or radioactive materials at the Shpack landfill.  (Exhibit D, pp. 88-94).

    d. She does not know how materials at the Shpack landfill that are linked to Defendant ended up at the Shpack landfill.  (Exhibit D, p. 112).

23. The deposition transcript of Defendant's FRCP 30(b)(6) witness was not made available to Plaintiffs' counsel until Friday, October 25 at 4:45pm.

### III.     Legal Arguments

### A. Defendant Should be Compelled to Produce Supplemental Documents and Written Discovery Responses

<u>Failure to Identify Documents Being Withheld</u>

Defendant's responses to Plaintiffs' Requests for Production ("RFP") fail to identify the extent to which, if at all, Defendant is withholding otherwise relevant materials on the basis of the various (largely improper) objections raised. (Exhibit A, Responses to RFPs; Exhibit B, Supplemental Responses to RFPs). This is improper under Fed. R. Civ. P. 34(b)(2)(C), which requires that objections "state whether any responsive materials are being withheld on the basis of that objection." An objection to part of a request must specify the part and permit inspection of the rest." *See also* Committee Notes on Rules - 2015 Amendment to Rule 34(b)(2)(C) "should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain as to whether any relevant and responsive information has been withheld on the basis of the objections."

Given Defendant's "proportionality" objections (*i.e.*, "TI also objects to this Request on the grounds that it seeks information from TI that is not correlated or proportional to the personal injury lawsuit brought by Plaintiff") and its objections as to documents being "classified," it would appear that documents are being withheld, but Plaintiffs cannot discern from the responses which documents are being withheld. (Exhibit A, Responses to RFPs; Exhibit B, Supplemental Responses to RFPs). Further, Defendant has asserted claims of Attorney-Client privilege, but has failed to provide a privilege log pursuant to FRCP 26(b)(5), which would allow Plaintiffs and

the Court to assess the validity of Defendant's privilege claim. (Exhibit A, Responses to RFPs; Exhibit B, Supplemental Responses to RFPs).

RFP # 61 seeks "all written, recorded, filmed, transcribed or videotaped statements of all parties and non-party declarants pertaining to the subject of these lawsuits." But Defendant responded:

> TI objects to this Request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome. TI also objects to this Request to the extent is seeks documents covered by the attorney-client privilege and work product doctrine. Subject to these Specific Objections and the General Objections above, TI responds that it previously produced to Plaintiff the Department of Labor records obtained for James Cauger and Frank Torngren. TI further responds by producing documents at Tab G. (Exhibit A, Responses to RFPs).

Tab G included self-serving declarations. And it is unclear from the response whether there are relevant statements other than the self-serving declarations. Indeed, Defendant's 30(b)(6) witness testified she did not know what other documents or witness statements had been located, identified, or gathered by Defendant. (Exhibit D, pp. 93, 96-97, 144-146, 173-174). Defendant should be compelled to provide this information.

Similarly, RFP # 65 seeks: "Any written statements which relate to facts, circumstances, incidents, injuries or damages which form the basis of the complaint of each plaintiff." But Defendant merely responded:

> TI objects to this Request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, particularly considering the Court's ruling barring work-related claims in this matter. TI further objects to this Request to the extent is seeks documents covered by the attorney-client privilege and work product doctrine. TI also objects to this request on the grounds that it seeks information in the custody of Plaintiff. Subject to these Specific Objections and the General Objections set forth above, TI responds that it previously produced the Department of Labor records obtained for James Cauger and Frank Torngren. (Exhibit A, Responses to RFPs; Exhibit B, Supplemental Responses to RFPs).

Again, this is non-responsive and Defendant should be compelled to provide this information.

Further, RFP # 94 seeks documents "pertaining to, including, or reflecting any internal or external investigations, studies, and/or tests that you performed, initiated, commissioned, caused to be initiated or caused to be commissioned and that pertain to any issues relevant to this litigation." In its initial response Defendant refused to produce any such documents, or state whether any documents were being withheld based on its boilerplate objections.  TI supplemented its initial response as follows:

> TI objects to this Request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, seeks information protected by the attorney-client privilege and work product doctrine and is not reasonably calculated to lead to the discovery of admissible evidence. TI objects to this Request on the grounds that it seeks corporate information relative to TI that is not correlated or proportional to the personal injury lawsuit brought by Plaintiff. Further responding, the Defendant states that it has not hired an investigator to prepare a report regarding the allegations in this case. (Exhibit A, Responses to RFPs; Exhibit B, Supplemental Responses to RFPs).

This supplemental response is plainly insufficient as it does not, *inter alia,* address whether there were any internal investigations or whether there were external investigations separate from one where TI "hired an investigator to prepare a report regarding the allegations in this case."

Failure to Identify Quantities of Non-Recoverable Nuclear Waste

Interrogatory # 13 asks Defendant to identify "by year the quantities of non-recoverable waste generated during the production and/or fabrication of nuclear fuel products at the Forest Street Facility." Defendant objected to Interrogatory # 13 on the grounds that, *inter alia*, it is "based on legal conclusions and facts not in evidence." But these are not valid objections to discovery requests. *See, e.g., Sonnino v. Univ. of Kansas Hosp. Auth.*, 220 F.R.D. 633, 648 (D. Kan. 2004) ("That a discovery request 'calls for a legal conclusion' is not valid objection) (collecting cases); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1029-30 (E.D. Cal. 2010) (collecting cases); *Sutton v. Mgmt. & Training Corp.,*, No.: 1:13-cv-1344 - AWI- JLT, 2015 U.S. Dist.

LEXIS 11399, at *15 (E.D. Cal. Jan. 29, 2015)("the objection that an interrogatory 'assumes facts not in evidence' is not proper in the course of discovery") (citations omitted). Ultimately, TI supplemented the response and indicated:

> Tl further objects on the grounds that it is based on legal conclusions and facts not in evidence, is argumentative as phrased, and requires the adoption of improper assumptions. TI further objects to this Request to the extent the request seeks information that the United States Government has deemed classified. TI states that the United States Government redacted information contained in the documents produced in this matter. TI further objects to this Request on the grounds that it seeks corporate information relative to TI that is not correlated or proportional to the personal injury lawsuit brought by Plaintiff.  Subject to these specific objections and the General Objections set forth above, TI refers Plaintiff to the Declarations produced at Tab G to Tl's Responses to Requests for Production of Documents, in which several former TI employees indicated that there were no "quantities of non-recoverable waste" resulting from production of nuclear products. (Exhibit C, Defendant's Response to Interrogatories).

This supplementation is insufficient. Plaintiffs are seeking a sworn response to the question, so if Defendant is contending that there are no "quantities of non-recoverable waste resulting from production of nuclear products" they need to say it and verify it, not point to documents where former TI employees may have said this.  Defendant's response in this regard is especially troubling in view of its 30(b)(6) witness testifying that she did not know if the declarations upon which she bases her 30(b)(6) testimony were collected as part of an internal investigation.  (Exhibit D, p. 144). Nor did she know whether investigative documents were retained or destroyed (Exhibit D, pp. 144-146), or whether there were employee statements that contradicted the declarants' statements she reviewed in preparation for the 30(b)(6) deposition. (Exhibit D, pp. 173-174).

### B. Defendant Should be Compelled to Produce Documents and a Corporate Deponent Regarding FRCP 30(b)(6) topics 4 through 12

The October 3, 2019 text order ostensibly reflected the Court's finding at the hearing that further discovery would be permitted if Defendant's 30(b)(6) witness testified that Defendant did

not dump, transfer, or deposit toxic and/or radioactive materials at the Shpack landfill. This is because, as discussed at the hearing, in the event Defendant's 30(b)(6) witness denies that Defendant disposed of toxic and/or radioactive materials at the Shpack Landfill, Plaintiff should have the opportunity to determine and evaluate the quantities of materials acquired, used, and/or processed at the Forest Street facility in order to compare those quantities with the quantities of similar materials found by way of, for instance, soil and water samples at the Shpack Landfill.

Defendant's 30(b)(6) deponent testified that, based on her review of declarations obtained from TI and the Atomic Energy Commission waste disposal procedures, the only materials transferred from Forest Street to the Shpack Landfill included: paper, cardboard, plastics, piping, and general (non-radiological) rubbish. (Exhibit D, pp. 88-94). This testimony resulted from a process in which information was siloed within the legal department and then selectively provided to the 30(b)(6) deponent. Indeed, the following testimony was elicited:

- The deponent was chosen as the 30(b)(6) witness by TI's legal department (Exhibit D, p. 60);

- The deponent met with in-house counsel and outside counsel in preparation for the 30(b)(6) deposition. (Exhibit D, pp. 45-48, 50-51);

- The deponent obtained documents reviewed for the 30(b)(6) deposition from the legal department (Exhibit D, pp. 60-61).

- The declarations reviewed in preparation for the deposition (and which form the basis for the testimony about disposal procedures) were obtained by TI's legal department. (Exhibit D, p. 92).

- The declarations were first provided to the 30(b)(6) witness by TI's legal counsel in connection with a 2011 lawsuit pertaining to the cleanup of the Shpack Landfill (Exhibit D, pp. 96-97);

- The deponent does not know the specific reason the declarations were obtained. (Exhibit D, p. 92);

- The deponent does not know if TI's legal counsel prepared the declarations or if there were multiple drafts prepared before the declarations were signed. (Exhibit D, p. 93);

- The deponent did not know if there were other declarations -- beyond the ones she reviewed -- prepared by TI's legal counsel. (Exhibit D, pp. 96-97);

- The deponent did not know if there were employee statements that contradicted the declarants' statements she reviewed in preparation for the 30(b)(6) deposition. (Exhibit D, pp. 173-174).

- The deponent did not know if the declarants who signed the declarations upon which the witness bases her 30(b)(6) testimony received incentives for signing the declarations. (Exhibit D, pp. 174-175).

- The deponent did not know if the declarations upon which the witness bases her 30(b)(6) testimony were collected as part of an internal investigation. (Exhibit D, p. 144). Nor did she know whether investigative documents were retained or destroyed. (Exhibit D, pp. 144-146).

Given this testimony, Defendant should be required to supplement written discovery responses and provide 30(b)(6) deposition testimony on topics 4-12. Moreover, Plaintiffs should

be allowed additional time to conduct this deposition and a deposition of a TI legal department representative.

## IV.     Conclusion

For the reasons set forth above, the Court should enter an Order: a) compelling Defendant to supplement its written discovery responses; b) compelling Defendant to produce documents and a corporate witness pertaining to FRCP 30(b)(6) topics 4 through 12; and c) extending the fact discovery schedule by 45 days to allow for this and additional relevant depositions.

Dated:   October 29, 2019

**PASTOR LAW OFFICE, LLP**

/s/ David Pastor
David Pastor (BBO #391000)
63 Atlantic Avenue, 3rd Floor
Boston, Massachusetts 02110
Telephone:  617-742-9700
Facsimile: 617-742-9701
dpastor@pastorlawoffice.com

**THE SULTZER LAW GROUP. P.C.**
Joseph Lipari (admitted *pro hac vice*)
14 Wall Street, 20th Floor
New York, NY 10005
Telephone: 212-618-1938
Facsimile: 888-749-7747
liparij@thesultzerlawgroup.com

*Plaintiffs' Counsel*

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 29, 2019.

                                                /s/ David Pastor_____
                                                David Pastor