## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JAMES W. CAUGER,**<br>**Plaintiff,**<br><br>**v.**<br><br>**TEXAS INSTRUMENTS, INCORPORATED**<br>**and JOHN DOE,**<br>**Defendants.** | **CIVIL ACTION NO.**<br>**1:16-cv-10358-DPW** |
| **FRANK TORNGREN,**<br>**Plaintiff,**<br><br>**v.**<br><br>**TEXAS INSTRUMENTS, INCORPORATED**<br>**and JOHN DOE,**<br>**Defendants.** | **CIVIL ACTION NO.**<br>**1:16-cv-12343-DPW** |
| **BRETT TORNGREN,**<br>**Plaintiff,**<br><br>**v.**<br><br>**TEXAS INSTRUMENTS, INCORPORATED**<br>**and JOHN DOE,**<br>**Defendants.** | **CIVIL ACTION NO.**<br>**1:16-cv-12345-DPW** |

## DEFENDANT, TEXAS INSTRUMENTS INCORPORATED'S, OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO COMPEL AND EXTEND THE DISCOVERY DEADLINE

Defendant, Texas Instruments Incorporated ("TI"), hereby opposes Plaintiffs' Emergency

Motion to Compel further Discovery and Deposition Testimony and to Extend the Discovery

Deadline.[1]  There is no basis, emergency or otherwise, that necessitates an extension of the discovery

---

[1] TI has filed a single response to Plaintiffs' Motion to Extend the Tracking Order in reply to Plaintiffs' single filing. TI continues to maintain that each of these three personal injury cases have distinct claims, exposure time periods, and medical allegations, and as a result have different discovery issues.  TI reserves its right to present supplemental separate responses for each individual case.

timelines and there are no grounds to compel additional discovery or deposition testimony from TI. The Plaintiffs' continued discovery attempts are in opposition to Judge Woodlock's intentions as set forth in his March 31, 2018 order and serve only to delay these matters from entering into the dispositive motion phase.  TI requests that the Court confirm that fact discovery closed on October 31, 2019, and set deadlines for disclosure of expert reports and dispositive motions.  As grounds for this motion, TI states as follows:

**Procedural and Factual History Relative to Opposition**

1.      These cases were filed on February 19, 2016.  ECF 1.[2]

2.      On March 17, 2017, TI filed a Motion to Dismiss for Failure to State a Claim and for Summary Judgment.  ECF 38.

3.      On March 31, 2018, Judge Woodlock entered an Order on Defendant's Motion to Dismiss as to all work-related claims following two years of discovery deficiencies and disputes with prior Plaintiffs' Counsel.  ECF 46.  Judge Woodlock allowed the matters to proceed on "injuries alleged that are ostensibly outside the scope of employment.  To the extent that such injuries may be found not to arise out of the nature, conditions, obligations, or incidents of employment in any of its aspects, they may support separate viable claims."  *Id.*

4.      In further discussion with the Court, Judge Woodlock stated in a case management conference on May 9, 2018 "…Now we are moving to the merits of the case**.**"  ECF 52. Judge Woodlock continued to state: "…what I think I would like to do is, let's get the basic discovery, non-expert discovery done promptly, and that is really, "**what is your exposure? Where do you think you had exposure? That kind of thing…"**  *Id.*

---

[2] TI relies on the ECF entries from *James Cauger v. TI* as the lead case among the three.  As each case is separate, there are different ECF entries for each order.

5.      On May 10, 2018, the Court ordered a **November 30, 2018** deadline for "[f]act discovery, including depositions" in the three instant matters. ECF 52.

6.      On or around August 22, 2018, Judge Woodlock referred all discovery to Magistrate Judge Kelley. ECF 64.

7.      On December 26, 2018, Attorney David Pastor filed a Notice of Appearance on behalf of Brett Torngren and Frank Torngren only. On January 10, 2018, Attorney Pastor appeared for James Cauger.  ECF 88. On January 10, 2018, Attorney Joseph Lipari filed a Motion for Leave to Appear Pro Hac Vice for these three Plaintiffs as well. ECF 89.

8.      Following the appearance of new counsel, a new scheduling order was set forth on January 30, 2019.  This order established the following deadlines:  "the parties shall meet and confer regarding discovery no later than February 20, 2019; parties to serve initial disclosures no later than February 28, 2019; initial written discovery requests by March 30, 2019; and fact depositions and fact discovery to be completed by **August 1, 2019**." ECF 96.[3]

9.      On March 29, 2019, more than 3 years after these cases were filed and a day before the deadline for serving further written discovery, Plaintiffs propounded discovery requests on TI, including 24 interrogatories and 96 requests for production of documents.

10.     On April 27, 2019, TI timely served its objections and responses to this extensive discovery.  TI's responses included 13,298 pages of documents with an accompanying index.  Plaintiffs then demanded meet and confer conferences, following which TI

---

[3] As has been articulated consistently during the discovery of this case, Plaintiffs' production has failed to provide any relevant or requested information and remains woefully deficient.

promptly supplemented its' discovery production with two separate productions of 711 pages and 12 full deposition transcripts and accompanying exhibits.[4]

11.  On July 9, 2019, Plaintiffs noticed the 30(b)(6) deposition of Texas Instruments Incorporated for the first time for July 29, 2019, 2 days prior to the deadline for fact discovery.

12.  On July 11, 2019, Plaintiffs moved for a 45-day extension of the discovery schedule. ECF 107.

13.  On July 17, 2019, TI moved for an Order clarifying the scope of discovery based in part on the fact that many of the deposition topics included in Plaintiffs' notice were clearly work-related and outside the scope of remaining issues in these cases.  ECF 110.

14.  On July 22, 2019, the Deposition of Brett Torngren was held pursuant to the 4th Notice by Defendant.[5]

15.  On July 24, 2019, the Deposition of James Cauger was held pursuant to the 5th Notice by Defendant.[6]

16.  On July 25, 2019, the Court held a hearing on the Defendant's Motion for Clarification. The Court ordered that the parties continue to confer about their discovery disputes and file a joint status report on or before August 8, 2019 setting forth any further disputes. ECF 111.

17.  On August 1, 2019, the Parties held a further meet and confer on the outstanding discovery issues, including the scope of discovery sought in the 30(b)(6) deposition of TI.

---

[4] In comparison to TI's robust production, the only case specific document production made by Plaintiffs' Counsel was made in July 2018 and consisted of J Cauger, Bates# 0007-0216, B. Torngren, Bates# 0007-0023, and F. Torngren, Bates# 0007-0068.
[5] Prior deposition notices for Brett Torngren had been set for the following dates: July 25, 2018, September 6, 2018, and July 3, 2019.
[6] Prior deposition notices for James Cauger had been set for the following dates: July 24, 2018, September 4, 2018, September 17, 2018 and July 1, 2019.

The Parties were able to reach an agreement on a number of items, including the Plaintiffs' production of supplemental discovery by August 22, 2019.  Exhibit 1, August 1, 2019 Discovery Agreement.  Extensive discussion was undertaken regarding the corporate deposition of TI, including regarding the scope of requests.  Plaintiffs' counsel agreed to let TI know by August 6, 2019, if they would limit the scope of deposition of TI to topics 1, 2, 3, 13, 25, 26, 27, and 28.  Exhibit 2, Objections to Deposition Topics.

18.     No response was received from Plaintiffs by the agreed upon date, resulting in TI filing its Motion for Protective Order on or around August 8, 2019. ECF 113.

19.     No supplemental discovery was provided by Plaintiffs at any time.

20.     On or around August 30, 2019, Plaintiffs requested that TI assent to an extension of the Fact Discovery until October 31, 2019.  TI agreed to extend the Fact Discovery until October 31, 2019 to complete the depositions of Frank Torngren, Patrice Tompkins-Everidge, Frank Veale, and Mike Elliott. Exhibit 3, August 30, 2019 email.

21.     On September 7, 2019, as part of TI's continuing efforts to resolve the dispute with counsel over the scope of discovery, TI produced to Plaintiffs' counsel the prior testimony of TI's Corporate Representative, Patrice Tompkins-Everidge, taken by Attorney Ken Woodruff of the United States Department of Justice on December 16, 2011, and all documents marked as exhibits during this deposition.  Exhibit 4, September 7, 2019 Letter.

22.     On September 9, 2019, the Court extended the factual discovery deadline to October 31, 2019. ECF 119.

23.     On September 29, 2019, the Deposition of Frank Torngren was held pursuant to the 5th

Notice by Defendant.[7]

24.     On October 3, 2019, the Court ruled on the Defendant's Motion for Protective Order

regarding the Plaintiff's 30(b)(6) deposition notice.

> The parties have agreed that the deposition of the Rule
> 30(b)(6) witness shall take place in Boston on a date
> agreeable to the parties.  Defendant's motion to limit the
> topics to the following numbers, as set out in document #
> [114]-1, is allowed and the witness shall address questions
> 1, 2, 3, 13, 25, 26, 27, and 28.  If, after the deposition,
> plaintiffs wish to file a motion to compel answers to topics
> 4-12, they may do so.  ECF 123.

25.     On October 9, 2019, TI's Corporate Representative witness, Ms. Patrice Tompkins-

Everidge, was deposed in Boston, MA.

26.     Pursuant to Order No. 119, fact discovery closed on October 31, 2019.

## Argument

**1.      There is No Basis, Emergency or Otherwise, to Extend the Discovery Deadline.**

As an initial contention, the Plaintiffs' Motion presents no emergency that requires Court

intervention.  The only "emergency" is that Plaintiffs have finally run out of time to pursue

discovery following multiple requests for, and accommodations of, additional time.  In addition,

Plaintiffs made no showing of any attempts to expedite the transcript at issue. The representation

that the deposition transcript of the TI corporate witness was not available until October 25, 2019

does not necessitate an emergency filing but instead is indicative of an overall disregard for the

Plaintiffs' affirmative burdens in pursuing these cases and to appropriately schedule their

discovery.

---

[7] Prior deposition notices for Frank Torngren had been set for the following dates: July 26, 2019, September 7, 2018, September 24, 2018, and July 2, 2019.

Setting aside the fact that there is no reason for the present motion to have been filed as an emergency motion, the Plaintiffs' requests to compel further discovery are baseless and should be denied.  It is well established that after a court has set a deadline for amending pleadings, a "more stringent good cause standard" is adopted when considering amending such dates.  Fed. R. Civ. P. 16(b); *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F. 3d 152, 154 (1st Circ. 2004). Rule 16(b) requires that the district court enter a scheduling order after service of the complaint that sets the deadlines for the subsequent proceedings in the litigation.  Fed. R. Civ. P. 16(b)(1).  The Rule does recognize that occasionally the parties will be unable to meet the deadlines that are set early in litigation and that the scheduling orders may be extended on a showing "of good cause if the [deadline] cannot reasonably be met despite the diligence of the party seeking the extension." *See* Advisory Committee Notes to the 1983 Amendments to Fed. R. Civ. P. 16(b).  This is not the situation in this matter.

Courts have held that litigants cannot be permitted to treat a scheduling order under Rule 16(b) as a "frivolous piece of paper idly entered, which can be cavalierly disregarded without peril."  *O'Connell*, 357 F. 3d at 155; *see also Johnson v. Mammoth Recreations, Inc.* 975 F.2d 604, 609 (9th Circ. 1992).  Furthermore, litigants have an "unflagging duty" to comply with clearly communicated case-management orders. *Rosario-Dias v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Rosario-Diaz,* 140 F. 3d at 316; citing to *Johnson*, 975 F. 2d at 609.

TI strenuously objects to extending the discovery tracking order yet again to allow the Plaintiffs additional time to attempt to create a basis for their claims.  As is well established, a filing attorney initiating a claim, or in this case choosing to take over pre-existing claims from prior counsel, has a duty to investigate their clients' claims before making any filings and to

reassess them throughout the litigation. *Kale v. Combined Ins. Co. of America*, 861 F.2d 746, 758 (1st Circ. 1988); *see also* Fed. R. Civ. P. 11 Advisory Committee Note.  This "emergent" search for information when evaluated against the lack of effort by Plaintiffs' counsel to investigate his own clients' cases (which includes the failure to obtain any medical records, the source and basis of the alleged causal link to claims, and the inherent failure to complete even the most basic discovery), suggests a failure to properly assess and reassess the basis of these claims throughout litigation.

Pursuant to Order No.119, fact discovery in these three cases closed on October 31, 2019. Defendant asks this Honorable Court to confirm that fact discovery has closed and to set deadlines for the parties for disclosure of expert witnesses and for the filing of dispositive motions.

### A.     Plaintiffs' Requests for Additional Discovery are an Attempt to delay a Deadline for the Filing of Expert Reports and Dispositive Motions.

The Plaintiffs continue to bring baseless motions in an attempt to muddy the waters and distract from their total lack of due diligence to investigate and reassess the basis of their claims. *See Kale,* 861 F.2d at 758.  The Plaintiffs' Motion must be assessed within the context of the history of these cases since 2016, not just based on Plaintiffs' counsel's opinions regarding a single deposition conducted in October 2019.  In 2016, Judge Woodlock ordered the filing of individual Complaints in which the individual allegations of each Plaintiff were to be separately set forth.  ECF 25. The Amended Complaints filed on behalf of James Cauger, Brett Torngren and Frank Torngren contain the allegations at issue as to TI in the cases that are before the Court.

In the Second Amended Complaint filed on behalf of James Cauger, it is alleged that the Shpack Landfill located in Attleboro & Norton is 8 acres of land and was operational until 1966. Exhibit 5, Paragraph 75.   The Second Amended Complaint further alleges that in 1981, the

Department of Energy removed material contaminated with radioactive waste from the Shpack site. *Id*. at 79.  Additionally, Mr. Cauger alleges that he often walked on the landfill and was exposed to radioactive and toxic chemicals at Shpack.  *Id*. at 81, 103.

On July 24, 2019, Defendant was finally able to take the deposition of James Cauger. Mr.  Cauger testified that he only lived in the Attleboro area from 1957-1958. Exhibit 6, Deposition of James Cauger, pages 33, 40.  Mr. Cauger further testified unequivocally that he had *never* been to the Shpack landfill.  *Id.* at page 109.

Frank Torngren's Second Amended Complaint similarly alleges that in 1981, the Department of Energy removed material contaminated with radioactive waste from the Shpack Landfill.  Exhibit 7, Frank Torngren Second Amended Complaint, Paragraph 79.  Furthermore, in his answers to interrogatories, Mr. Torngren claimed that he came into contact with radioactive material when he received lumber from the Shpack Landfill to help build his barn, which remains on his property to this day.  Exhibit 8, Answers to Interrogatories, Answer No.19. On September 29, 2019, when Mr. Torngren was deposed, he confirmed that the lumber he and his son salvaged from a dump was used to repair a shed on his current property.  Exhibit 9, Deposition of Frank Torngren, pages 92-93. Mr. Torngren testified that the lumber remains on his property and that the lumber has never been tested.  *Id.* at pages 92- 102.  When asked if he believed the presence of this lumber in his shed was hazardous to his health, Mr. Frank Torngren replied "I don't know, I don't know."  *Id.* at 100.

Mr. Torngren testified regarding annual picking of blueberries in the Attleboro neighborhood a half mile from his home.  *Id.* at 105-107.  Brett Torngren also testified that he would pick blueberries with his father as a child during limited summer months and would ride a

dirt bike and play in the woods behind his home with friends.[8]  Exhibit 10, Deposition of Brett Torngren, pages 80-84.  However, the woods that Mr. B. Torngren described were not Texas Instruments property nor is there any evidence that any of the activities that Brett Torngren described took place on or even in proximity to the Shpack Superfund area tested for radiation contamination.  Exhibit 11, Army Corps of Engineers Shpack Close Out Report Figures 1- 5.

The above examples demonstrate that Plaintiffs have failed to establish any non-work related exposures for which there would be any need for further discovery under the specific Order issued by Judge Woodlock.  If ingesting blueberries in Attleboro, Massachusetts is an alleged route of radiological exposure at issue in the Torngren cases, then blueberry testing could have been conducted by Plaintiffs' counsel to identify a relevant contaminate at issue.  *See* Exhibits 9, 10.  Furthermore, if lumber taken from a dump in the 1970s and used to repair Mr. Frank Torngren's shed is another alleged non-work related radiological exposure, then testing on the lumber could have been conducted to support the basis of the allegations in the Amended Complaints.  *See* Exhibits 7, 8, 9.

In addition to the failures articulated above, independent studies have been completed regarding the Attleboro area and cancer incidences.  *See* Exhibit 12, MA Department of Public Health Report.  This report concluded that within the Attleboro and Norton areas, and specifically also including a one mile radius surrounding the Shpack Landfill, cancers occurred "approximately at or near expected rates, based on the statewide rates of cancer and the populations of Attleboro and Norton." *Id.* at page 1.  A review of the geographical distribution of cancer from 1982-2002 did not reveal any patterns or concentrations that would suggest an

---

[8] To the extent Mr. Torngren is attempting to correlate his alleged exposure to the times he rode a dirt bike and played in the woods behind his home, Plaintiffs acknowledge that the Shpack landfill closed in 1966, at which time Mr. Torngren would have been approximately one year old.  *See* Exhibit 5, Exhibit 10, page 11.  It is unlikely that he was riding a dirt bike or playing in the woods at this time.

environmental or non- environmental factor related to cancer diagnosis. *Id.* at 44.  Furthermore,

the Department of Public Health specifically found that there were no "atypical pattern[s] of any

one cancer type in Attleboro or Norton…no specific patterns with respect to place of residence at

diagnosis or date of diagnosis emerged that would suggest an unusual geographic pattern or

common factor (environmental or non-environmental) among residents of these communities

diagnosed with cancer." *Id.* at 51-52.  Ultimately, the MA Department of Public Health

concluded that the Landfill and surrounding environmental areas were not likely to have played a

role in cancer developments.  *Id.* at 54.

## 2.     There is No Basis to Compel Additional Discovery or Deposition Testimony from Texas Instruments.

In addition to the arguments espoused above, there is no reason to compel additional

written discovery or deposition testimony from TI.  Although the Plaintiffs' contentions are

addressed independently below, TI maintains that the information sought is either already in

Plaintiffs' possession, was responded to during the TI deposition on October 9, 2019, or is wildly

afoul of the parameters set by Judge Woodlock in his March 2018 order.

The discovery requested by Plaintiffs is disproportionate to the needs of the cases, seeks

irrelevant information, and is in direct violation of Judge Woodlock's orders limiting the claims

to environmental exposure and non-work related injuries only.  Specifically, despite the

Plaintiffs' wishes, counsel is not entitled to disregard deadlines and repeatedly request additional

time and information in an attempt to concoct support for his cases.  Fed. R. Civ. P. 26(b)

"permits a court to limit" discovery as not proportional to "the needs of the case" in light of

"the importance of the discovery to the issues." *Securities and Exchange Commission v.*

*Navellier & Associates, Inc.*, No. 17-11633-DJC, 2019 WL 688164, at *1 (D. Mass. Feb. 19,

2019).  Rules 26(b)(1) and 26(b)(2)(C)(ii) operate to limit the scope of discovery sought. *Id.*

The rule permits discovery that is relevant "and proportional to the needs of the case, considering the importance of the issues at stake" and other enumerated matters. *Id.*, Fed. R. Civ. P. 26(b)(1). Indeed, the advisory committee note to the 2015 amendment to Rule 26(b) is "replete with comments explaining that the court may sua sponte consider proportionality. *Id.* at *2, *see also* Fed. R. Civ. P. 26 Advisory Committee Note to 2015 amendment. ("Court has a 'responsibility to consider the proportionality of *all* discovery and consider it in resolving discovery disputes.") (Court "must limit the frequency of extent of proposed discovery, on motion or on its own, if it is outside the scope permitted by Rule 26(b)(1)"). *Id.*

### A.    TI Has Provided Relevant Discovery.

To the extent Plaintiffs have sought information relative to alleged non-work-related exposure at TI's business location at Forest Street in Attleboro, MA, TI has responded in full to the extent possible given the fact that Plaintiffs have not yet identified non-work related exposures that could be causally related to a non-work related injury. For example, TI has produced reports providing extensive detail on locations, concentrations, and types of material buried and removed from Forest Street or the Shpack Landfill. *See* Exhibit 13, Supplemental Response to Requests for Production of Documents of TI, specifically including references to Tab F, Reports of Weston regarding remediation and Tab L, US Army Corp of Engineers Final Report.[9] TI has also produced declarations of eight former TI employees describing TI material accountability, handling and disposal procedures and practices in connection with Forest Street and TI use or relationship to the Shpack Landfill, as well as depositions of former TI employees describing in detail the remediation of the Forest Street Facility from 1992-1997. *Id.* at Tab G (including declarations of eight prior TI employees and one deposition), as well as Supplemental Response

---

[9] TI specifically directs the Court to the Systematic Soil Sampling Results Summary Sheets that detail the presence or non-presence of Radium, U-234, U-235 and U-238 for a variety of different location points at Shpack. *See* Exhibit 14, Appendix C.

No. 71. In addition, TI produced health studies performed by government agencies related to potential impact to the Attleboro community. *Id.* at Tab J, Focused Evaluation of Cancer Incidence within One Mile Radius Area of Shpack Landfill Superfund Site and Response to Comments, and Tab K, Public Health Assessment: Evaluation of Environmental Concerns Related to Shpack Landfill Superfund Site, as well as Tabs F and L.

To date, TI has objected to discovery on the grounds that it is outside the scope of Judge Woodlock's March 31, 2018 order and is disproportional or unnecessary in the face of the three personal injury claims that after years of litigation, still fail to identify a particular substance, dose, location, or biological likelihood of causing a specific disease.  Notwithstanding, TI again responds to the specific requests raised in Plaintiffs' motion below.

1.      **TI Has Not Withheld Classified Documents.**

The Plaintiffs contend that TI has withheld documents based on a governmental determination it is classified and that as a result, the "Plaintiffs cannot discern from the responses which documents are being withheld." *See Plaintiff's Motion, Section III A.*  TI expressly states that the United States Government determines if a document is classified and this fact was explained in detail in the documents produced.  Therefore, to the extent Plaintiffs are seeking documents redacted or possessed by the US Government, these documents are in the custody and control of the US Government and must be requested accordingly.  In the Amended Complaints, Plaintiffs' counsel is clearly aware of the existence of AEC contracts pursuant to which TI was provided with various radiological materials by the government. *See* Exhibit 5, Paragraphs 32, 34.  In addition, on or around April 26, 2019, TI produced the September 6, 2005 letter it sent to Audrey Zucker, Sr. Enforcement Counsel, US EPA Region 1.  *See* Exhibit 13, Tab E.  In this letter, TI responds to the US EPA statutory request for responses to specific questions pursuant

to Section 104 of CERCLA for the Shpack Landfill Superfund Site, Norton/Attleboro, MA.

Exhibit 15, September 6, 2005 Letter to EPA from TI.   These responses specifically included the

following:

> **Request 1C:** The nature, including the chemical content, characteristics, physical state
> (e.g. solid, liquid) and quantity (volume and weight) of all hazardous materials involved
> in each such arrangement.
>
> **Response 1C:** As noted, TI believes any arrangement for disposal referenced above
> related to non-hazardous plant trash.  TI is unable to identify any disposal of hazardous
> materials at the Shpack Parcel during the time period form 1946-1975.  *Id.*
>
> **Request 5B:** List the types of raw materials used and the products Respondent
> manufactured, recycled, recovered, treated, or otherwise processed in connection with
> work performed under the contract with the AEC or other federal government entities.
>
> **Response 5B:** TI should emphasize that all nuclear work at M &C was conducted under
> a cloak of secrecy.  The type of material being handled was classified, the amount of
> material in M & C's possession was classified and the shape of materials fabricated was
> classified.  Therefore, the U.S. Department of Energy may be a better source for much of
> the information requested in this information request....*Id.* [10]

This document clearly explains to Plaintiffs' counsel the operations at Forest Street and put

counsel on notice that there may be information regarding the prior operations at Forest Street

that are in the possession of the US Government.

On October 9, 2019, consistent with her prior testimony, Ms. Patrice Tompkins-Everidge

testified regarding TI's relationship with the United States Government and specifically stated

that all of TI's responsive documents with regards to AEC waste disposal procedures had been

returned to the United States Government. Exhibit 16, Deposition of Patrice Tompkins-Everidge,

pages 124-126.  She specifically stated: "much of the information that was contained was

---

[10] In addition to what is detailed above, Response 1A provides information regarding who assisted in disposal;
Response 3 identifies Sources of Information used to respond.   Request 4 asks for information regarding the
Respondent's Operations.  The Response to No. 4 provides a detailed answer regarding TI's operations at Forest
Street from 1946-75.  In Response 5, specific information regarding AEC contracts from 1947-65 is provided
(section a); further information regarding the governmental contracts (section d); and information regarding the
AEC always retaining ownership of materials (section f).  *Id.*

considered secret or classified.  The government considered that to be their product, their documents, and it was returned to them at the conclusion of the contract." *Id.* at 126.  This is also supported by numerous declarations of former TI employee.  *See* Exhibit 13, Tab G.

### 2.    TI Has Not Withheld Any Witness Statements From These Cases.

Plaintiffs take objection to TI's Response to Request for Production of Documents No. 61 and 65, which have *never* been identified as an area of deficiency in prior meet and confer letters regarding discovery deficiencies as perceived by Plaintiffs.  Exhibit 17, May 29, 2019 Letter from Plaintiffs' Counsel, Exhibit 18, July 24, 2019 Letter from Plaintiffs' Counsel.  As such, TI believes such argument procedurally waived as the appropriate time to raise a perceived deficiency would have been significantly prior to an Emergency Motion to Compel.

However, to the extent the Court is inclined to review such issue, TI states that it has not withheld any responsive documentation for these cases.  In an effort to independently investigate the basis of these claims, TI was forced to request a Court Order to obtain the complete Department of Labor Energy Employees Occupational Illness Compensation Program Act ("EEIOCPA") files for James Cauger and Frank Torngren.  Upon receipt of these files, copies were provided to Plaintiffs' counsel.  Similarly, TI has had to independently request medical records from providers. TI's investigative efforts regarding these three Plaintiffs have involved the above referenced Court Order to the Department of Labor and requests for medical materials that were not voluntarily produced by Plaintiffs' counsel.  TI has not taken any statements of co-workers, friends or neighbors of these three Plaintiffs as part of the investigative efforts related to these cases.

3.      **TI Has Not Withheld Any Investigative Studies for These Plaintiffs.**

TI responds to Plaintiffs' assertion that there has not been sufficient clarity regarding any

internal or external investigations "performed, initiated, commissioned, caused to be initiated, or

caused to be commissioned and that pertain to any issues relevant to this litigation." *See*

*Plaintiff's Motion, Section III A.*  As stated above, TI did obtain a Court Order to obtain complete

copies of the Department of Labor EEIOCPA investigative files for James Cauger and Frank

Torngren.   TI has requested copies of medical records for each Plaintiff and continues to

investigate medical causation in each of these cases.  TI objects to any discovery request that

seeks information protected by the attorney-client and work product privileges.

4.      **TI Has Produced Information Regarding Waste Disposal
        Procedures.**

This assertion by Plaintiffs appears to be the heart of Plaintiffs' continued contention

that TI *must* be hiding information because the answers that TI continues to give,

supplemented by objective evidence and deposition testimony, indicate that "there were no

quantities of non-recoverable waste" resulting from production of nuclear products.  *See*

*Plaintiff's Motion, Section III A.*

Plaintiffs specifically state that they are "seeking a sworn response to the question."  This

sworn response has been given in a multitude of different formats: (1) the deposition of TI; (2)

the signed and sworn answers to interrogatories; and (3) the sworn declarations that were

executed under the penalty of perjury.  When asked at her deposition about the disposal of

hazardous waste, the TI 30(b)(6) witness, Ms. Patrice Tompkins-Everidge, testified

"Radiological waste was actually drummed up and [that] it was picked up by government

couriers."  Exhibit 16, page 84.  She then expanded her answer and stated "I did ask about waste,

whether radiological waste was ever disposed of at Shpack in any form, and the answer was no, that liquid waste, contaminated protective equipment, all of that was drummed and returned to the government." *Id.* at 84-85.

TI's answers to interrogatories, as are referenced by Plaintiffs in their motion, further state that TI employed a zero-waste policy. These answers are supported by numerous Declarations from former TI employees. Exhibit 13, Tab G. Furthermore, despite Plaintiffs' reluctance to examine the documents and declarations provided, the declarations of prior employees specifically state that "the government exercised strict accountability and control over all nuclear materials, both under contract and licensing documentation. Any time there was a transfer of uranium that affected the material balance under a contract or license, notice was given to the contracting officer and the licensing authority.[11] Final accounting was to a zero net balance at M & C."[12] *See* Exhibit 19, Oscar Nietzel Declaration, Paragraph 8 (explaining in detail the process by which nuclear material was introduced to the Forest Street Facility, how quantification was determined, and how the material was accounted for and/or returned to the U.S. Government); *see also* Exhibit 13, Tab G.

The suggestion that the response of Ms. Tompkins-Everidge was "troubling" because she did not know the exact details of how the declarations of former TI employees were collected after testifying that they were collected as part of TI's prior litigation is not made in good faith. When asked, TI's witness answered the question propounded. While corporations have a duty to make a good faith effort to designate knowledgeable persons for such a deposition, the corporation is obligated only to prepare the designee so that they may give knowledgeable and binding answers for the corporation. *Booker v. Mass. Dept. of Public*

---

[11] See also 104e response at Exhibit 15.
[12] Referencing Metals & Controls, the prior corporate entity purchased by Texas Instruments.

*Health*, 246 F.R.D. 387, 389 (2007); citing *Marker v. Union Fidelity Life Ins. Co.¸* 125 F.R.D. 121, 126 (M.D.N.C. 1989).  If counsel wanted to ask more detailed questions regarding the declarations or the September 2005 correspondence with the U.S. EPA, he had the opportunity to do so on October 9, 2019.

     **B.**    **TI Should Not Be Compelled To Produce Documents and/or a Corporate Deponent Regarding FCRP 30 (b)(6) topics 4- 12.[13]**

Plaintiffs' failure to investigate whether there remains a basis for their clients' claims following Judge Woodlock's Order and failure to meaningfully review the information that has already been produced is not a reason to subject TI to unnecessary and burdensome further discovery.  Despite the continued contention from Plaintiffs that they have been limited in their ability to determine information, the most concerning fact is that they continue to fail to review the documents in their possession that answer the alleged outstanding questions.  Combined with the deposition testimony of Ms. Tompkins-Everidge, there can be no finding that further discovery and deposition testimony is required.  Specifically, deposition topics 4-12, which Plaintiffs now claim to need, seek information "*by year,* the quantities of U-234 /U-235/ Radium-226/ Thorium/ Zirconium Alloy/ Dichromate/ Halfnium you acquired, used, and/or processed at the Forest Street Facility."  Exhibit 20, 30 (b)(6) Deposition Notice.  In addition, deposition topics sought information regarding" the quantities of non-recoverable waste generated during the production and/or fabrication of nuclear fuel products at the Forest Street Facility," which has been addressed *supra*.

---

[13] As previous noted, that information, which was returned to the government at the conclusion of the TI contracts may be obtainable from the U.S. Government.  However, there has been no demonstration to date that Plaintiffs have correlated topics 4-12 in any way to any potential alleged exposure for these plaintiffs.  Furthermore, Mr. Cauger testified that he never went to the Shpack Landfill and no evidence has been developed that the blueberries eaten or lumber to which the Torngrens were allegedly exposed were contaminated in any way.

Despite this Court's order limiting deposition topics, Plaintiffs asked many of these questions at the deposition and TI's witness answered them. For example, during her deposition, Ms. Patrice Tompkins-Everidge was asked if she "was aware of whether or not Texas Instruments has documents that would enable a 30(b)(6) witness to determine the quantities of uranium acquired, used, or processed in the Forest Street Facility." Exhibit 16, pages 67 -68. After an objection by counsel, she responded "So in general, we had a special nuclear license which would have given some generalities of license that had some quantity associated with, but that information would have been with the actual licensing agencies, **so with the government.** *Id.* at page 68. She was additionally asked if she "was aware of whether TI or one of its predecessor companies disposed of thorium foil strips at the Shpack Landfill" to which she definitively replied "**We did not dispose of thorium foil strips**." *Id.* at page 172. When asked whether "zirconium ash ever transferred from the Forest Street Facility to the Shpack Landfill" she responded that "**it was not**." *Id.* at page 129.[14] She was not asked about dichromate or hafnium at her deposition.

TI maintains that any request for further deposition testimony or discovery should be denied. [15]

---

[14] She was then asked if any zirconium ash was burned or disposed of at the Forest Street Facility.
Q: Is it TI's position that no zirconium ash that was burned was disposed of at the Forest Street facility?
PTE: At the Forest Street facility, we disposed of items based on the direction of AEC, so there may have been burial of zirconium under the direction of AEC at the Forest Street facility, yes.
Q: So you agree that burned zirconium ash was barreled up and shipped out, but it was also dumped or buries at the Forest Street facility under the direction of AEC?
PTE: Yes, there was disposal that happened at the site, based on direction of the AEC. It could have been based on many factors, levels of contamination, but there were burials that happened under the direction of AEC on site, yes. Exhibit 16, pages 130-131.
[15] In addition, the 104 e response, referenced above, contains detailed statements regarding nuclear materials and disposal of such. Specifically, the document states that the shipping forms that accompanied uranium specified the material balances, both before and after delivery. Exhibit 15, page 11. It describes the storage and use of U-235 and disposal of such, as well as the presence and use of thorium, zirconium, hafnium and radium in the labs. *Id.* These materials are specifically discussed in connection with "work under contract with the government," further solidifying the position that any such material should have been obtained from the government to assist with Plaintiffs' investigation. *Id.*

## CONCLUSION[16]

As is fully expressed herein, there is no basis, emergency or otherwise, that necessitates the

extension of the discovery timelines and furthermore, there are no grounds to compel additional

discovery or deposition testimony from TI.  The Plaintiffs continued discovery attempts are in

opposition to Judge Woodlock's intentions as set forth in his March 31, 2018 order.  TI asks that the

Court deny Plaintiffs' Motion and confirm that fact discovery closed on October 31, 2019 and set

deadlines for the disclosure of expert reports and dispositive motions.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), TI's respectfully requests a hearing on Plaintiffs' Motion

to Compel.

Respectfully submitted by,
TEXAS INSTRUMENTS INCORPORATED,
By its attorneys,


/s/Katharine S. Perry, Esq.
Katharine S. Perry | BBO No. 634167
Stephanie M. Chesney| BBO No. 672790
MANNING GROSS + MASSENBURG, LLP
125 High Street
Boston, MA 02110
T: 617.670.8506
F: 617.670.8801
E: kperry@mgmlaw.com
E: schesney@mgmlaw.com

---

[16] TI appends an index of Exhibits hereto for ease of the Court.

**CERTIFICATE OF SERVICE**

I, Katharine S. Perry, hereby certify that this document filed through the ECF system will be served electronically to the registered participants as identified on the Notice of Electronic Filing [NEF] on November 6, 2019.

Dated: November 8, 2019        */s/Katharine S. Perry*

                                                Katharine S. Perry

# INDEX

## Exhibit List for Opposition to Emergency Motion

Exhibit 1    -    August 1, 2019 letter from Katharine Perry, Esq. to Joseph Lipari, Esq., regarding an agreement concerning select discovery items

Exhibit 2    -    August 2, 2019 letter from Katharine Perry, Esq. to Joseph Lipari, Esq., regarding Texas Instruments' objections to certain 30(b)(6) deposition topics

Exhibit 3    -    August 30, 2019 e-mail from Katharine Perry, Esq. to Joseph Lipari, Esq., regarding a Joint Motion to Extend Fact Discovery

Exhibit 4    -    September 7, 2019 letter from Katharine Perry, Esq. to Joseph Lipari, Esq., prior deposition testimony of Texas Instruments 30(b)(6) witness

Exhibit 5    -    Plaintiff James Cauger's Second Amended Complaint

Exhibit 6    -    Selected pages from Plaintiff James Cauger's July 24, 2019 deposition transcript

Exhibit 7    -    Plaintiff Frank Torngren's Second Amended Complaint

Exhibit 8    -    Plaintiff Frank Torngren's Answers to Interrogatories

Exhibit 9    -    Selected pages from Plaintiff Frank Torngren's September 27, 2019 deposition transcript

Exhibit 10   -    Selected pages from Plaintiff Brett Torngren's July 22, 2019 deposition transcript

Exhibit 11   -    Figures 1-5 of the December 2016 US Army Corps of Engineers Final Site Closeout Report for Operable Unit 1 Radiological Remediation Shpack Landfill Superfund Site

Exhibit 12   -    Massachusetts Department of Public Health Focused Evaluation of Cancer Incidence Within One-Mile Radius Area of the Shpack Landfill Superfund Site

Exhibit 13   -    Defendant Texas Instruments Incorporated's Supplemental Responses and Objections to Plaintiff James W. Cauger's Requests for Production of Documents

Exhibit 14   -    Tables C1-C21 of the December 2016 US Army Corps of Engineers Final Site Closeout Report for Operable Unit 1 Radiological Remediation Shpack Landfill Superfund Site

Exhibit 15   -    Texas Instruments Incorporated's September 6, 2005 Response to Request for Information Pursuant to Section 104 of CERCLA

Exhibit 16   -    Selected pages from 30(b)(6) witness Patrice Tompkins-Everidge's October 9, 2019 deposition transcript

Exhibit 17   -    May 29, 2019 letter from Joseph Lipari, Esq. to Katharine Perry, Esq., regarding Texas Instruments Incorporated's Responses and Objections to the Plaintiffs' Interrogatories

Exhibit 18  -  July 24, 2019 letter from Joseph Lipari, Esq. to The Honorable M. Page Kelly regarding ongoing discovery disputes

Exhibit 19  -  September 15, 2006 Declaration of Oscar Nietzel

Exhibit 20  -  20- Plaintiffs' Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6)